1  Jeremy L. Friedman, CA Bar No. 142659
   LAW OFFICE OF JEREMY L. FRIEDMAN
2  2801 Sylhowe Road.
   Oakland, Ca. 94610
3  Tel: (510) 530-9060
   Fax: (510) 530-9087
4
   Attorney for plaintiff Lunell Gamble
5

6                  UNITED STATES DISTRICT COURT

7                 NORTHERN DISTRICT OF CALIFORNIA

8
   LUNELL GAMBLE, on behalf of herself )   Case No. 4:17-cv-06621-YGR
9  as well as a class of similarly situated )
   individuals,                          )   **AMENDED FEDERAL COURT**
10                                        )   **CLASS ACTION COMPLAINT**
          Plaintiff                       )
11                                        )   (Employment discrimination)
   vs.                                    )
12                                        )
   KAISER FOUNDATION HEALTH               )   **DEMAND FOR JURY TRIAL**
13 PLAN, INC; KAISER FOUNDATION           )
   HOSPITALS, INC.; and THE               )
14 PERMANENTE MEDICAL GROUP;              )
   all doing business as KAISER           )
15 PERMANENTE MEDICAL CARE                )
   PROGRAM                                )
16                                        )
          Defendants                       )
17 _____

18                         **INTRODUCTION**

19        1.  This is a class action against Kaiser Foundation Health Plan, Inc. ("Health Plan"),

20 Kaiser Foundation Hospitals ("Hospitals"), and The Permanente Medical Group ("Medical

21 Group"), all doing business as Kaiser Permenente ("Kaiser").  It is based upon the pattern

22 and practice of employment discrimination against African Americans throughout Kaiser's

23 Northern California region. As a class, Kaiser discriminates against African American

24 employees, including a subclass of older African American employees, by engaging in

25 gross disparities in the termination of such employees for purported cause; unlawful human

26 resources support for such discriminatory terminations, including failure to conduct

27 reasonable investigations and take steps to stop self-discernable patterns of discriminations;

28 and retaliation against African Americans who take efforts to address discrimination.

2. Although a substantial percentage of Kaiser's workforce is comprised of African American employees, due to systemic discrimination by a predominately non-African American management, Kaiser's workforce is rigidly stratified with a disparate distribution by race, with African-Americans predominantly assigned to the lowest paying positions with the least chance of advancement, and predominantly excluded from higher paying and more secure supervisory and management positions – positions with the greatest influence and decision-making authority over reviews, promotions, retention, and termination.

3. Class action treatment of plaintiff's claims of race discrimination at Kaiser is appropriate and necessary because Kaiser's racially stratified workforce is entrenched in a company-wide culture, it emerges through centralized human resources mechanisms, it is protected and perpetrated by unlawful discriminatory policies and practices applied uniformly in all facilities throughout the region, and it is ratified through knowledge and approval at the highest corporate levels. Notwithstanding the particular circumstances of employment for any particular African American employee, Kaiser generally treats all members of the class in an identical or similar manner, subjecting each to the same discriminatory and retaliatory policies and practices. Kaiser – as a wholly integrated matrix corporate entity – has instituted unlawful centralized equal employment opportunity ("EEO") policies and practices to suppress legitimate complaints of racial discrimination, create false pretexts for its systemic discriminatory conduct, retaliate against employees who raise legitimate claims of racial discrimination, conceal its discriminatory pattern and practices, and misrepresent its status as an EEO employer.

4. While employed at Kaiser, plaintiff Lunell Gamble was subjected to this pattern and practice of discriminatory treatment, and was unlawfully terminated pursuant to its company-wide discriminatory policies and practices. Plaintiff is an African American woman over the age of 40, who was employed at Kaiser for more than 16 years with an exemplary record in Kaiser's Human Resources Services Center (HRSC). By the time of her discriminatory termination, plaintiff had reached the level of HR Specialist III in the Health and Welfare Department, without a single incident of disciplinary action taken

against her. By the time of her termination, however, Ms. Gamble was subject to the pattern and practice of discrimination, based upon her race and age, including a department that employed a limited number of African American employees; an employment hierarchy that was seemingly devoid of older, African American employees; harassment, unreasonable scrutiny and hostile work environment by non-African American management; false criticism of work performance as a pretext for termination; and disparate treatment with respect to work assignments and evaluations.

5. Even though it had predetermined to terminate plaintiff, Kaiser provided Ms. Gamble a "final written warning" threatening her with termination, without prior warning or progressive discipline. After plaintiff attempted to perform her work and meet with senior management over her discipline, Kaiser set plaintiff up for ultimate termination. Consistent with the centralized control over systemic class-wide discriminatory policies and practices, Kaiser neglected to provide industry-standard human resources support to Ms. Gamble in connection with her termination; suppressed information indicating Ms. Gamble's termination was part of a larger pattern of discriminatory treatment; failed to conduct a reasonable inquiry or investigation into its discriminatory treatment of Ms. Gamble; and made, and continues to make, false representations and other unreasonable tactics in defense of its unlawful discrimination.

6. Plaintiff seeks to represent a class of African Americans, and a subclass of older African Americans, who – during the maximum liability period determined for this action – were employed at Kaiser in the northern California region, and were either (1) terminated in their employment or (2) complained internally or to a governmental entity regarding race or age discrimination. Plaintiff's class claims are brought pursuant to the California Fair Employment and Housing Act (FEHA), California Government Code §12940 *et seq.*, and federal civil rights statute, 42 U.S.C. §1981. She seeks to end Kaiser's discriminatory practices and to provide monetary relief including punitive damages to those who have been affected by these practices.

## THE PARTIES

7. Plaintiff Lunell Gamble is an African American woman who resides in California. She was employed at Kaiser Permanente from for more than 16 years, until her termination in July 2014.  Ms. Gamble worked initially as a temporary employee in the Human Resources department (then known as "Peoples Solutions"), and began permanent employment in July 1998 in that department, rising to the level of HR Specialist III.

8.  Kaiser Foundation Health Plan, Inc. is a nonprofit corporation, licensed as a health care service plan, headquartered in Alameda County.  Health Plan enrolls members in individual and group plans, and in Northern California, provides hospital and medical services for its members through separate contracts with Medical Group and Hospitals.

9.  Kaiser Foundation Hospitals, Inc., is a nonprofit corporation, headquartered in Alameda County; it operates hospitals and medical centers in California.  Hospitals receives its funding from Health Plan, and provides infrastructure and facilities for the benefit of Medical Group.

10.  The Permanente Medical Group is a group of physicians organized as a professional corporation under California law.  Medical Group is privately owned and managed by its physician shareholders.  Medical Group contracts with Health Plan to provide medical services (both outpatient and inpatient) for Health Plan members in Northern California.

11.  Medical Group, Hospitals, and Health Plan work in cooperation with each other to form the integrated medical care services program with the trade name, Kaiser Permanente Medical Care Program.  This enterprise is known to the general public, and is doing business as, "Kaiser Permanente."  With respect to its labor policies and procedures, and in particular with respect to its obligations under federal and state laws and regulations to investigate and take reasonable steps to stop discriminatory practices, all three entities collectively constitute a "single employer," and are referred to herein as "Kaiser." With respect to the matters asserted here, these entities have interrelated operations, common management, centralized control of labor relations and common financial control.

# ADMINISTRATIVE PROCESS

12. Plaintiff previously and timely filed an administrative charge of discrimination against her employer with the Department of Fair Employment and Education ("DFEH"). In that process, plaintiff complained about discrimination and retaliation she experienced, leading up to her termination in July 2014. Plaintiff was issued a right to sue letter on August 10, 2015 (although she did not receive it personally until much later). This action is timely filed according to the date the letter was issued.

13. In her administrative charge, plaintiff named the division in which she was last employed, Kaiser's National HRSC, and her department, Health and Welfare Department. These entities lie within Kaiser Foundation Health Plan, Inc. As with the EEOC, DFEH knows that Kaiser's corporate entities operate as a single employer with respect to its EEO obligations, and it conducted its investigation without regard to those corporate structures. Moreover, since the three named entities act as a single employer under FEHA (and Title VII), notice to any one division or department of Kaiser of Ms. Gamble's administrative complaint put all three entities, collectively, on notice.

14. Administrative and statutory claims of Ms. Gamble were tolled as a result of a class action that was filed against Kaiser, in Hill et al. v. Kaiser Foundation Health Plan, Case No. 3:10-cv-2833 LB, Northern District of California. EEOC charges were filed by named plaintiffs in that case on September 25, 2007, and the action was pending until December 10, 2013. During that time period, all limitation periods for filing administrative charges were tolled.

# CLASS ALLEGATIONS

## *The Class at Issue*

15. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all African-Americans or persons of African descent or origin who were employed by Kaiser in the northern California region during the liability period established for this action, and who either (1) were involuntarily terminated from their position, or (2) made, or assisted in the making of, a complaint related to any

employment issue, internally with Kaiser, with any government agency (such as Equal Employment Opportunity Commission, the Department of Fair Employment and Housing, or the Office of Federal Contract Compliance Programs) or in a court of law.

16. In addition to seeking class certification for the entire group of putative class members, plaintiff will seek certification for similarly defined subclasses of older African American employees.

17. The members of the class and each subclass are sufficiently numerous that joinder of all members is impracticable.

18. There is a community of interests among members of the class and subclass, in that there are predominant questions of law and fact; Ms. Gamble's claims are representative of claims typical of the class and subclass; and plaintiff and putative class counsel can adequately represent the class.

19. There are questions of law and fact common to the class and these questions predominate over individual questions, including violations of §1981, Title VII and FEHA; availability of injunctive relief and other equitable remedies (including back pay and front pay), compensatory damages and punitive damages. In particular, common legal and factual questions include, among others:

    a.    Whether Kaiser has a systemic racially-stratified workforce, created through interrelated and correlated discriminatory employment decisions on promotion, discipline and termination, carried out by a group of supervisors and directors who are predominately non-African Americans, and who – year after year – perpetuate a rigid, racially-differentiated workforce.

    b.    Whether there exists patterns of statistical disparities in the discipline and termination of well-qualified African-American employees within Kaiser's centralized employment processes.

    c.    Whether Kaiser has entrenched its racially-stratified workforce by directing, authorizing and training supervisors and directors to conceal

discriminatory actions and retaliate against those employees who might
assist the disclosure of false or trivial discipline as pretext for
discrimination, without regard to the specific facts and circumstances
of the individual employee or supervisor.

d.      Whether it is the policy and practice of Kaiser's management, through
its centralized Human Resources department, to direct, authorize and
assist supervisors and directors in their discriminatory and retaliatory
employment actions, without regard to the specific facts and
circumstances of the individual employee or supervisor, and in
contravention of obligation of management through Human Resources
to protect employees from unlawful discrimination.

e.      Whether it is Kaiser's policy and practice to suppress and falsify
information supporting complaints over employment actions, made by
African American employees, including unreasonable, one-sided, pre-
determined internal investigations conducted by a select few
individuals for the purpose of permitting, perpetuating and covering up
discriminatory and retaliatory actions and patterns.

f.      Whether Kaiser has purposefully engaged in company-wide efforts to
misrepresent itself as an EEO employer, included a public relations
effort to promote a diversity department that is knowingly,
purposefully and intentionally limited to only existing managers – not
covering the intermediate and promotion position workforce – and is
responsible for only token representation of African Americans at
highly visible positions in the organization.

g.      Whether Kaiser has an unlawful policy and practice of retaliating
against African American employees who complain of discrimination,
in order to reduce its liability to employees victimized by Kaiser's
discriminatory employment decisions and to chill the exercise of rights

by such employees in the future, without regard to specific facts and circumstances of the complaint; including elimination of positions, false bases for discipline, termination, job reassignment and changes to other terms and conditions of employment.

h.    Whether Kaiser has unlawful policies and practices in designating African American employees, and in particular, those class members who may have complaints against the company, as "not eligible for rehire," without regard to the specific facts and circumstances of the individual employee's employment, and indeed, pursuant to a practice over which Kaiser, at least until March of 2013, has been unwilling to manage through clear, uniform standards.

i.    Whether Kaiser's top management has been aware of discriminatory patterns and practices, and unlawful retaliation, and deliberately failed to institute any meaningful efforts to comply with EEO laws, including the conscious refusal to appoint a director-level manager with responsibility for EEO compliance, and a refusal to inquire into and analyze its statistical patterns of discrimination against African American and older African American employees.

20.  There are additional questions of law and fact common to the class with respect to Kaiser's litigation tactics in violation of §1981 and Title VII, and these questions predominate over individual questions. In particular, common legal and factual questions related to Kaiser's litigation tactics include, among others:

a.    Whether Kaiser has an unlawful policy and practice of abusing administrative and judicial processes to further the patterns and practices of racial discrimination and retaliation, including unreasonable litigation tactics in defense of claims of discrimination regardless of the merits of the employees' claims or the substantial evidence indicating Kaiser violated the law.

b. Whether Kaiser has a policy and practice of perpetuating, protecting and concealing unlawful discrimination and patterns of disparate treatment by requiring employees who raise civil rights claims to agree to confidentiality of the terms of settlement, without bargaining for such an agreement at arms length, and without justification in work product, attorney client privilege, trade secret or other basis for confidentiality.

c. Whether Kaiser's stand-alone litigation policy and practice – adopted and applied in cases brought under anti-discrimination laws, without regard to specific facts and circumstances – of requiring, as a condition of settlement, former employees to sign agreements not to work at Kaiser in the future, is a violation of federal and state civil rights laws; including whether plaintiffs are entitled to a declaration that all such agreements are against public policy, unenforceable and null and void.

d. Whether Kaiser's stand-alone litigation policy and practice – adopted and applied by general counsel in cases brought under anti-discrimination laws – of requiring, as a condition of settlement, former employees to negotiate against their own attorneys regarding statutory attorneys' fees, through simultaneous lump sum or other devices designed to create artificially a conflict between the employees and their attorneys, in violation of anti-discrimination laws.

21. The claims alleged by plaintiff are typical of the claims of the class and subclass. Plaintiff and the members of the class and subclass have been similarly affected by defendants' wrongful conduct.

22. Plaintiff will fairly and adequately represent the interests of the class and subclass, and has retained counsel with substantial expertise and experience in the prosecution of employment litigation and class actions.

23. Class certification is appropriate pursuant to Fed. R. Civ. P. 23 (b)(2) because Kaiser has acted and/or refused to act on grounds generally applicable to the class and to the subclass making appropriate declaratory and injunctive relief with respect to plaintiff and the class(es) as a whole. The members of the class and subclass are entitled to injunctive relief to end Kaiser's common, uniform, and unfair discriminatory personnel policies and practices.

24. Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the class and subclasses, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the class and subclasses have been damaged and are entitled to recovery as a result of Kaiser's common, uniform, and unfair discriminatory personnel policies and practices.

### *The Race-Age Subclasses at Issue*

25. Plaintiff s also brings this action on behalf of subclasses consisting of all older African Americans.

26. The members of the race-age subclass are sufficiently numerous that joinder of all members is impracticable.

27. There are questions of law and fact common to the subclass and these questions predominate over individual questions, including the same common factual and legal issues identified herein.

28. The claims alleged by plaintiff are typical of the claims of the race-age subclass, and plaintiff and the members of these subclasses have been similarly affected by defendants' wrongful conduct

29. Plaintiff will fairly and adequately represent the interests of the race-age subclasses. Plaintiff has retained counsel with substantial expertise and experience in the prosecution of employment litigation and class actions.

30.  Class certification is appropriate because Kaiser has acted and/or refused to act on grounds generally applicable to the race-age subclasses, making appropriate declaratory and injunctive relief with respect to plaintiff and the subclasses as a whole.  The members of the race-age subclasses are entitled to injunctive relief to end Kaiser's common, uniform, and unfair discriminatory personnel policies and practices.

31.  Class certification is also appropriate because common questions of fact and law predominate over any questions affecting only individual members of the race-age subclasses, because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The members of these subclasses have been damaged and are entitled to recovery as a result of Kaiser's common, uniform, and unfair discriminatory personnel policies and practices.

## PATTERN AND PRACTICE ALLEGATIONS

32.  Kaiser Permanente is one of the largest health maintenance organizations of its kind, providing a system of integrated health care to more than 8 million members in eight different regions nationwide, employing over 180,000 people.  In Northern California, Kaiser serves approximately 3.2 million members at 21 medical centers and 160 offices, employing thousands of people in non-physician capacities.   Using a centralized employment opportunity system, people external to Kaiser and current employees are able to apply for open positions throughout Kaiser's operations, including by region.  Current employees are told they will be provided with opportunities for employment that are not available to external applicants, including access to job postings prior to their disclosure to the general public, and a system by which employees may post their resumes for other Kaiser departments to match to openings for hiring decisions.

33.  Kaiser maintains a unique business and organization structure, with regional oversight of Northern California non-physician operations by a single executive management hierarchy.  Within each division of Kaiser's operations, the employer has created departmental hierarchies of similar nature and structure, including: entry level positions, trained or skilled-level positions, team leaders and sub-leads, supervisors and

office-level managers, and divisional directors and assistant directors. Kaiser also maintains uniform employment and personnel policies applicable to all of its employees, with centralized human resources, general counsel, payroll services, and labor and other employment data. Regardless of the department or division, there are uniform policies and procedures for employee orientation, supervisory management, salary and incentive options, job classifications, human resources, progressive discipline, rules of conduct, and requirements for transfers, promotions and terminations.

34. Within each department or function of Kaiser's operations, the employer has developed its own unique procedures, information systems and business technologies requiring specialized training and adaptive capabilities. Employees are told they need establish in their work performances that they are trained in and proficient with those unique processes in order to be retained and/or promoted within Kaiser. Access to that training uniformly depends upon the discretion of divisional management, however, including influence and decision-making at the supervisory and team management levels. Similarly, performance reviews, job classification decisions, pay and salary structure changes, and disciplinary actions all depend upon the discretion of that same divisional management. Few objective requirements or measurements are used for employment decisions, which instead are largely based on subjective judgments of the supervisors and managers within Kaiser's operations.

35. Kaiser's executive and divisional managements for positions in EEO job groups 2F and 2G are predominately neither African-American nor older African-Americans. African-Americans are rarely promoted to supervisory or management positions capable of influencing a significant proportion of the employer's decision-making. As a result, the decisions as to which employees receive specialized training, particular assignments, job classifications, pay raises and incentives, transfer or promotions, positive performance reviews and progressive disciplinary actions are made and influenced principally by non-African-Americans. Subjective judgments of Kaiser' stratified supervisory and management system are often infected with conscious or unconscious prejudices and race

and/or race-age based stereotypes, which explains why so few African-Americans out of Kaiser's large African-American employee population advance to supervisory and management positions.

36. This pattern of unequal training, assignments, classifications, pay, discipline and advancement opportunities is not the result of random or non-discriminatory factors. Rather, it is the result of an on-going and continuous pattern and practice of intentional race and race-age discrimination in training, assignments, classifications, pay, discipline, performance reviews, terminations and promotions, and reliance on policies and practices that have an adverse impact on African-American and older African-American employees that cannot be justified by business necessity, and for which alternative policies and practices with less discriminatory impact could be utilized that equally serve any asserted justification. Plaintiff is informed and believes that such policies and practices include, without limitation:

a. Failure to consistently train African-Americans in the unique Kaiser processes and practices necessary for desirable assignments and advancement.

b. Reliance upon vague, arbitrary and subjective criteria utilized by a nearly non-African-American managerial workforce in making assignments, training, pay, performance review, discipline, promotion and termination decisions. Even where Kaiser's policy states objective requirements, these requirements are often applied in an inconsistent manner and ignored at the discretion of management.

c. Reliance on race and race-age stereotypes in making employment decisions such as assignments, promotions, pay and training.

d. Pre-selection and "grooming" of non-African-American and younger, non-African-American employees for advancement, favorable assignments and training.

e. Maintenance of largely race and race-age segregated job categories and departments.

f. Deterrence and discouragement of African-Americans and older African-American employees from seeking advancement, training, and favorable assignments and pay.

g. Giving African-American and older African-American employees lower compensation, lower job classifications and lower pay raise incentives than similarly situated non-African-American and younger, non-African-American employees.

h. Providing unjustified negative performance reviews, false pretexts for disciplinary action, omission of positive job performance recognition and other adverse personnel actions to African-American and older African-American employees, in disproportion to the same actions taken against non-African-American employees.

i. Providing less training and support to African-American and older African-American employees and managers than that given to non-African-American employees and managers.

j. Providing less or refusing to make reasonable accommodations for disabilities and sick leave policies with respect to African-American and older African-American employees, and unlawfully discriminating against African-American-employees due to their disabilities because of both their disabilities and their race and/or race-age.

k. Harassing African-American and older African-American employees interested in advancement and subjecting them to a hostile work environment.

l. Maintaining and fostering a reputation for discriminatory conduct which deters African-Americans and older African-Americans from pursuing promotional opportunities with Kaiser;

m. Establishing and maintaining arbitrary and subjective requirements for discipline and promotions which have the effect of excluding qualified African-Americans and older African-Americans and which have not been

shown to have any significant relationship to job performance or to be necessary to the safe and efficient conduct of Kaiser's business;

n. Failing and refusing to take adequate steps to eliminate the effects of its past discriminatory practices; and

o. Retaliating against African-American and older African-American employees who complain of unequal treatment.

37. Kaiser's racially stratified workforce and discriminatory patterns and practices are propagated, entrenched and protected by centralized policies and practices directed at the highest levels of Kaiser management. Although Kaiser operates many different departments at many different locations throughout the Northern California Region, it has centralized, company-wide policies and practices concerning supervisory training, human resources, EEO reporting and compliance and Kaiser's response to EEO complaints. These company-wide policies and practices include, among others, the factual and legal matter set forth in ¶¶19 & 20 above.

38. Kaiser conceals, ratifies and protects its racially stratified workforce and discriminatory and retaliatory patterns and practices through litigation settlement tactics aimed at any individual who pursued a claim of employment discrimination, and the attorneys who would represent them in such claims. Such tactics are designed to discourage enforcement of rights under Title VII and Section 1981, by creating artificial conflicts between employees and their attorneys in the settlement of such claims. Although all meritorious claims will be resolved through a settlement, rather than a trial, as a matter of policy and practice, Kaiser refuses to make meaningful settlement offers until after the employees (and Kaiser) have incurred substantial attorneys' fees. After that point, Kaiser will make only lump sum, simultaneous settlement offers, or other offers structured to put plaintiffs and counsel in conflict. Such offers are designed to encourage the attorneys to pressure the client to reduce expectations, so there is more money in the pot for fees – an abhorrent conflict that would not arise other than through Kaiser's tactics. Kaiser's policy and practice is also designed to put pressure on the attorney, supported by threats of

1 "unethical" behavior, if the attorney does not compromise fees in order to maximize the
2 client's recovery. As a whole, the scheme is designed to discourage attorneys from
3 accepting race discrimination cases, or litigating them to a reasonable resolution.

4     39. Because of its discriminatory policies and practices, Kaiser retains, promotes,
5 disciplines and terminates African Americans and older African Americans in statistically
6 significant disproportionate rates, based on the proportion of qualified African Americans
7 and older African Americans. This in turn has the effect of diminishing the pool of eligible
8 African Americans and older African Americans for promotion to supervisory, management
9 and executive positions. Kaiser's pattern and practice of discrimination is so pervasive and
10 entrenched throughout that race and race-age discrimination and unlawful retaliation can be
11 said to be its modes of operations

12 **WRONGFUL TERMINATION**

13     40. In 1997, plaintiff Gamble began working as a temporary employee (through a
14 company called Adecco), in Peoples' Solutions, then the name of the Human Resources
15 department for Kaiser. On or about July 7, 1998, Ms. Gamble was hired as a permanent
16 employee in that department. Like many other African American employees at Kaiser, she
17 performed her work according to the employer's needs, was well qualified and tried to
18 improve her employment position over the years. By the time of her termination, she had
19 achieved the position of HR Specialist III, in the Benefits Department (the Health and
20 Welfare Department) of what had been renamed the HRSC.

21     41. In July 2012, Kaiser reorganized its Benefits Department, and plaintiff began
22 receiving supervision from a new manager – Rosa Grajeda – who had been transferred from
23 the Leaves Department.

24     42. From the beginning of her long tenure at Kaiser, and until her termination, Ms.
25 Gamble did not receive any warnings or disciplinary actions related to her exemplary
26 employment. Despite her qualifications and excellent work performance, Ms. Gamble was
27 subject to the pattern and practice of discrimination, based upon her race and age. These
28 included, but are not limited to the following:

a. Ms. Gamble was one of the few African Americans to remain employed in the department, as other African American employees in that department, in Human Resources and throughout Kaiser were terminated for discriminatory reasons or forced to quit from dead-end positions at Kaiser. Ms. Gamble witnessed their replacement with younger, non-African American employees who were equally or less qualified to perform the work.

b. Despite a pool of African American employees qualified for supervisory and management positions, Ms. Gamble was subject to an employment hierarchy that was seemingly devoid of older, African American employees at the higher levels. During her employment in Kaiser's Human Resources department, Kaiser employed no African American directors in that department, and few African Americans were given "lead" positions.

c. After the departmental reorganization, Ms. Gamble was subject to constant harassment and unreasonable scrutiny by her manager, Ms. Grajeda. In October 2012, Ms. Grajeda followed plaintiff into the department's bathroom, and criticized plaintiff for not working as she spoke through the curtain in the vanity area. Plaintiff became both fearful of the manager, and appalled at her conduct, causing plaintiff to avoid using the department's bathroom from that point forward. Plaintiff complained to senior management, but no apology was made or corrective action taken.

d. In approximately February 2013, plaintiff was subject to ridicule and embarrassment by Ms. Grajeda, who falsely accused plaintiff of receiving complaints from the entire department over her perfume. After offering to communicate with her department over the matter, Ms. Grajeda admitted it was only she that had complained.

e. In Approximately March 2014, plaintiff was singled out from non-African American employees and loudly scolded for laughing at work. This was done openly to embarrass plaintiff in front of co-workers. Even though Kaiser

officially recognizes laughter as a part of its medical focus, and even though other, non-African American employees are seen laughing, plaintiff was criticized and made to feel inferior. Plaintiff was so upset by this incident that she was required to leave her manager by the desk, and she was later called into the manager's office for further criticism.

f. Constant harassment and false criticism of work performance continued on a nearly daily basis. Ms. Grajeda lacked the knowledge and experience working in the Benefits department – knowledge and experience that plaintiff had gained. And yet, in managing plaintiff's work performance, the lack of understanding by the manager led to empty, false criticisms of the work.

g. Throughout this period, Ms. Grajeda treated plaintiff and other older African American employees with disparate treatment, including refused to assign work to plaintiff commensurate with plaintiff's knowledge and skill levels, criticisms of work by African American employees that were not made against the same or even less quality work by younger, non-African Americans, and overlooking transgressions or mistakes by younger, non-African American employees.

43. On July 18, 2014, plaintiff was given a "final written warning" threatening her with termination, even though she had not received a prior written warning or any of the progressive discipline Kaiser requires. Included in the written warning were false claims regarding Ms. Gamble's work performance, including false accusations plaintiff had "falsified" work records, and had acted with hostile aggression towards Ms. Grajeda. Each claim was mere pretext for Kaiser's discrimination against older, African Americans.

44. Pursuant to its pattern and practice of discrimination, Kaiser had already determined to terminate plaintiff's employment. Following the final written warning, plaintiff attempted to perform her work and meet with senior management over her discipline. Rather than providing an honest opportunity to perform the work, Kaiser set plaintiff up for ultimate termination, which occurred on July 29, 2014.

**DAMAGES**

45. The hostile environment grew so intolerable that plaintiff suffered mental distress. Following plaintiff's attempt to address her unequal and unlawful treatment at Kaiser, and to assert her civil rights, plaintiff was subject to Kaiser's unlawful retaliatory policies and practices, including designation of plaintiff as not eligible for rehire; unreasonable, pre-determined one-sided investigations conducted outside the standards for workplace investigations for the purpose of covering up Kaiser's violations; unreasonable and abusive litigation tactics designed to punish plaintiff for asserting her rights; and efforts by Kaiser's office of the general counsel to make sure that plaintiff, in any settlement, agree to never apply to work at Kaiser again in the future.

46. As a direct and proximate result of defendants' actions as alleged herein, defendants have breached their duties imposed on all employers as established by statute.

47. As a direct and proximate result of the refusal to promote plaintiff's employment, plaintiff has suffered and will continue to suffer lost wages, salary increases, earnings capacity and other benefits of employment, in an amount to be proven at trial.

48. As a further proximate result of defendants' unlawful actions, plaintiff has suffered emotional pain, humiliation, mental anguish, and emotional distress.

49. The conduct of all of the defendants alleged above was deliberate, wilful and malicious.  Further, the actions taken against plaintiff were carried out with reckless disregard to the truth and the rights of plaintiff, and were despicable actions taken without privilege or justification.

///
///
///

# **FIRST CAUSE OF ACTION**

(Violation of Title VII, 42 U.S.C. §2000e-2 *et seq.,* and the Civil Rights Act, 42 U.S.C. §1981, and California Fair Employment and Housing Act (FEHA), California Government Code 12940, *et seq.* – Class Race and Subclass Race-Age Discrimination in Terminations )

50. Plaintiff realleges and incorporates herein the allegations of paragraphs 1-19, 21-37, and 39-49 of this complaint, as though fully set forth herein.

51. This claim is brought on behalf of plaintiff and the entire class and subclass.

52. All three Kaiser entities acting together as a single employer comprise an entity subject to suit under Title VII, ¶1981 and FEHA, and defendant regularly employs five or more persons.

53. Plaintiff is a member of a protected class as set forth in Title VII, FEHA and §1981, based on her race, and color, as she is an African-American. Plaintiff is also a member of a protected subclass based on race, and color, as she is an African American over the age of 40.

54. Kaiser has engaged in a pattern and practice of intentional discrimination against plaintiff and the class, as described herein, in that it has denied plaintiff and class members of the same retention and opportunities for retention afforded to similarly situated non-class employees, and it subjects plaintiff and class members to retaliation when they complain about the unlawful conduct.

55. Kaiser has engaged in a pattern and practice of intentional discrimination against the Ms. Gamble and the class and has terminated them in disparate rates when compared to the proportion of African Americans incumbent in the workforce.

56. The harms alleged herein occurred within the jurisdiction of this Court and the amount in controversy, exceeds the minimum jurisdictional amount required by this Court.

57. The discriminatory treatment of plaintiff's employment and harassment, as set forth herein, were done with discriminatory motive, based on race, as well as a racial subclass of race/age, in violation of Title VII, FEHA and public policy.

## SECOND CAUSE OF ACTION

(Violation of Age Discrimination in Employment Act, (ADEA), 29 U.S.C. §621, *et seq.*, and FEHA – Age Discrimination in Termination)

58. Plaintiff realleges and incorporates herein the allegations of paragraphs 1-19, 21-37, and 39-57 of this complaint, as though fully set forth herein.

59. All three Kaiser entities acting together as a single employer comprise an entity subject to suit under ADEA and FEHA, and defendant regularly employs five or more persons.

60. Plaintiff is a member of a protected class as set forth in ADEA and FEHA based on her age, as she is over the age of 40.

61. The harms alleged herein occurred within the jurisdiction of this Court and the amount in controversy, exceeds the minimum jurisdictional amount required by this Court.

62. The discriminatory treatment of plaintiff's employment and harassment, as set forth herein, were done with discriminatory motive, based on age, in violation of ADEA, FEHA and public policy.

## THIRD CAUSE OF ACTION

(Tile VII, FEHA, ADEA and §1981 – Class Claims for Disparate and Retaliatory Treatment for Making or Assisting in Complaints)

63. Plaintiff realleges and incorporates herein the allegations of paragraphs 1-19, 21-37, and 39-62 of this complaint, as though fully set forth herein.

64. This claim is brought on behalf of plaintiff and the entire class and subclass

65. All three Kaiser entities acting together as a single employer comprise an entity subject to suit under Title VII, ADEA and FEHA, and defendant regularly employs five or more persons.

66. Plaintiff is a member of a protected class as set forth in Title VII, ADEA, FEHA and §1981, based on her efforts and anticipated efforts to remedy the discrimination set forth in this complaint, as well as her membership in the protected classes and subclass of African Americans, and older individuals, as described herein. Such efforts include

complaints regarding her treatment by Kaiser, her efforts to remedy the hostile environment that Kaiser creates for protected employees, and the filing, and/or anticipated filing, of this lawsuit.

67. Kaiser has engaged in a pattern and practice of intentional discrimination against plaintiff and the class, as described herein, in that it has denied plaintiff and class members of the same retention and opportunities for retention afforded to similarly situated non-class employees, and it subjects plaintiff and class members to retaliation when they complain about the unlawful conduct.

68. The harms alleged herein occurred within the jurisdiction of this Court and the amount in controversy, exceeds the minimum jurisdictional amount required by this Court.

69. The discriminatory treatment of plaintiff's employment and harassment, as set forth herein, were done with discriminatory motive, based on race, as well as a racial subclass of race/age, and retaliation, in violation of Title VII, ADEA, FEHA, §1981, and public policy.

## FOURTH CAUSE OF ACTION

(Tile VII, ADEA and §1981 – Class Claims for Unlawful Litigation Tactics
to Further Discrimination and Retaliation)

70. Plaintiff realleges and incorporates herein the allegations of paragraphs 1-69 of this complaint, as though fully set forth herein.

71. This claim is brought on behalf of plaintiff and the entire class and subclass

72. All three Kaiser entities acting together as a single employer comprise an entity subject to suit under Title VII, ADEA and §1981, and defendant regularly employs five or more persons.

73. Plaintiff is a member of a protected class as set forth in Title VII, ADEA and §1981, based on her race, age, race/age and efforts and anticipated efforts to remedy the discrimination set forth in this complaint.

74. Kaiser has engaged in a pattern and practice of intentional discrimination against plaintiff and the class, as described herein, in that it has denied plaintiff and class members

of the same retention and opportunities for retention afforded to similarly situated non-class employees, and it subjects plaintiff and class members to retaliation when they complain about the unlawful conduct.

75.  Kaiser has engaged in a pattern and practice of intentional discrimination and intentional retaliation against the class and subclass, including unlawful and unreasonable litigation tactics against individuals who assert claims of discrimination against it. Such policies and practices, as described in ¶20 and ¶38 herein, include the manufacture of false pretexts for discrimination; propagation of false claims and false information during required workplace investigations; abuse of administrative and judicial processes without probable cause or for improper purposes; demands that persons who exercise their rights under EEO laws agree to not apply for work at Kaiser in the future, a demand that is not negotiated at arms length, is unconscionable and is void as against public policy; and the unlawful demand of statutory fee waivers or other tactics described herein designed to pit plaintiffs against their attorneys, and attorneys against their plaintiffs, in settlement negotiations.

76. The harms alleged herein occurred within the jurisdiction of this Court and the amount in controversy, exceeds the minimum jurisdictional amount required by this Court.

77. The discriminatory treatment of plaintiff's employment and harassment, as set forth herein, were done with discriminatory motive, based on race, as well as a racial subclass of race/age, and retaliation, in violation of Title VII, ADEA, FEHA, §1981, and public policy.

## RELIEF ALLEGATIONS

78.  Plaintiff and the class and subclasses she represents have no plain, adequate or complete remedy at law to redress the wrongs for which they seek injunctive relief, and the injunctive relief sought in this action is the only means of securing complete and adequate relief. Plaintiff and the class she represents are now suffering and will continue to suffer irreparable injury from defendants' discriminatory acts and omissions.

79. Defendants' actions have caused and continue to cause plaintiff and all class and subclass members substantial damages – including losses in earnings, promotional opportunities and employment benefits – in an amount to be determined according to proof.

80. Defendant acted or failed to act as herein alleged with malice or reckless indifference to the protected rights of plaintiff and class and subclass members. Plaintiff, class members and subclass members are thus entitled to recover punitive damages in an amount to be determined according to proof.

## PRAYER FOR RELIEF

Wherefore, plaintiff and the class and subclasses pray for relief as follows:

1. Certification of the class and subclasses as a class action on behalf of the proposed plaintiff class and subclasses and designation of plaintiff as representatives of the class and subclasses and counsel of record as Class Counsel;

2. All damages which plaintiff, the class and the subclass have sustained as a result of defendants' conduct, including back pay, front pay, general and special damages for lost compensation and job benefits that they would have received but for the discriminatory practices of defendant, and for emotional distress, humiliation, embarrassment, and anguish, according to proof;

3. For plaintiff, all damages sustained as a result of defendant's conduct, including back pay, front pay, general and specific damages for lost compensation and job benefits they would have received but for the discriminatory practices of defendants, and damages for emotional distress, according to proof;

4. Exemplary and punitive damages in an amount consistent with the law;

5. A preliminary and permanent injunction against defendants and its partners, officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, that requires the following:

a.  desisting from engaging in each of the unlawful practices, policies, customs, and usages set forth in this complaint;

b.  creating a transparent and non-discriminatory employment policies and practices for the open, non-discriminatory retention to positions within the Northern California region;

c.  instituting an affirmative action policy to insure that African-Americans and older African-Americans receive the share of retention and promotion to positions they would have obtained were it not for Kaiser's discriminatory practices; and

d.  creating a monitoring and reporting system to insure that injunctive relief is fully implemented.

6.  A declaratory judgment that the practices complained of herein are unlawful and violative of Title VII, ADEA, §1981, and FEHA;

7.  An order assigning plaintiff and the class and subclasses to those jobs they would have held but for defendant's discriminatory practices;

8.  An adjustment of the wage rates, benefits, and seniority rights for plaintiff and the class and subclasses to that level which plaintiffs and the class would be enjoying but for defendant's discriminatory practices;

9.  For prejudgment interest to the extent permitted by law;

10. For costs and expenses of suit incurred herein, including reasonable attorneys' fees to the extent available by law; and

11. For such other and further legal and equitable relief as the Court may deem just and proper.

Respectfully submitted,

Dated: January 12, 2018          LAW OFFICE OF JEREMY L. FRIEDMAN

By: /s/Jeremy L. Friedman
Jeremy L. Friedman
Attorney for plaintiff Lunell Gamble

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues.

Dated: January 12, 2018                    LAW OFFICE OF JEREMY L. FRIEDMAN

By: /s/Jeremy L. Friedman
Jeremy L. Friedman
Attorney for plaintiff Lunell Gamble

# PROOF OF SERVICE

Jeremy L. Friedman declares and states:

I have an office in Alameda county. I am over the age of eighteen years. My business address is 2801 Sylhowe Road, Oakland, CA, 94602.

I declare that on January 12, 2018, I did or will serve a copy of:

**Amended Federal Court Class Action Complaint**

by electronic transmission through the Court's ECF system, to:

Grube Brown & Geidt LLP
Heather A. Borgan
Amanda Bolliger Crespo
601 Montgomery Street, Suite 1150
San Francisco, CA 94111
Kaiser Permanente _ Gamble_ Lunell E_Mails
<{F5300}.GBGLLP@bb6f1.imanage.work>

I declare under penalty of perjury that the foregoing is true and correct. Executed this 12th day of January, 2018, in Oakland, CA.

/s/Jeremy L. Friedman
Jeremy L. Friedman