**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUNELL GAMBLE AND SHEILA KENNEDY, | CASE NO. 17-cv-06621-YGR |
| Plaintiffs, | |
| | ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE; DENYING MOTION FOR RULE 11 SANCTIONS |
| vs. | |
| KAISER FOUNDATION HEALTH PLAN, INC., ET AL., | |
| Defendants. | Re: Dkt. No. 35, 44, 45 |

Plaintiff Lunell Gamble filed her complaint alleging claims of employment discrimination under the California Fair Employment and Housing Act (FEHA), Cal. Gov't Code section 12940 et seq., in the Superior Court of Alameda County, California. With a demurrer pending, Gamble filed a First Amended Complaint. When a demurrer to the First Amended Complaint was sustained with leave to amend, Gamble was permitted to file a Second Amended Complaint which added claims under 42 U.S.C. section 1981. Gamble's Second Amended Complaint was then removed to this Court on November 16, 2017 by defendants Kaiser Foundation Health Plan, Inc. ("Health Plan"), Kaiser Foundation Hospitals ("Hospitals"); and The Permanente Medical Group ("Medical Group"). (*See* Dkt. No. 1.) Gamble then filed a new amended complaint on January 12, 2018, in this Court. (Dkt. No. 18.) Defendants filed a motion to dismiss and a motion to strike. Gamble filed a motion for Sanctions under Rule 11 against defendants. (Dkt. No. 35.)

Thereafter, in April 2018 and before the Court ruled on the pending motions, Gamble sought and was granted leave to file a new iteration of the complaint, styled as a Second Amended Complaint, adding new claims and a new plaintiff, Sheila Kennedy. (Dkt. No. 38.)

Presently pending before the Court are three motions: (1) defendants' motion dismiss the complaint under Rules 12(b)(1) and 12(b)(6) (Dkt. No. 44); (2) defendants' motion to strike allegations therein under the California anti-SLAPP statute, Cal. Code of Civil Proc. section

425.16 and Rule 12(f) of the Federal Rules of Civil Procedure (Dkt. No. 45), and plaintiff Gamble's motion for Rule 11 Sanctions (Dkt. No. 35). Having carefully considered the papers filed in support of and in opposition to the motions, as well as the matters properly subject to judicial notice in connection with these motions, and for the reasons stated herein, the Court **ORDERS** as follows:

(1) Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.

On the First Cause of Action, insofar as it alleges a violation of section 1981, the motion to dismiss is **GRANTED**.

To the extent that the all the causes of action in the SAC are alleged under Title VII and/or the ADEA, those claims are time-barred as to Gamble, and the motion to dismiss on those grounds is **GRANTED**.

The motion to dismiss on all other grounds, including failure to exhaust the disparate impact claim, class-wide claims, claims as to each defendant, Gamble's claims based upon promotion and race-plus-gender, Kennedy's claims as to promotion and age discrimination in promotion; and failure to allege the class claims and disparate impact claims sufficiently, is **DENIED**.

(2) Defendants' motion to strike **GRANTED IN PART AND DENIED IN PART**. The motion to strike pursuant to the California anti-SLAPP statute is **DENIED** for failure to demonstrate that the claims are directed to protected activity.

The motion to strike under Rule 12(f) is **GRANTED WITH LEAVE TO AMEND** as to paragraphs 22a-c, 40, 53, and 90, and the Fifth Cause of Action; and **GRANTED WITHOUT LEAVE TO AMEND** as to paragraph 51.

(3) Plaintiff's motion for Rule 11 sanctions in connection with the anti-SLAPP motion is **DENIED**.

## I.    BACKGROUND

Plaintiffs Lunell Gamble and Sheila Kennedy allege that they worked for defendants Hospitals, Health Plan, and Medical Group which they allege act as a single employer, "Kaiser." (SAC, Dkt. No. 38, ¶ 12.) Plaintiffs are African-American women over the age of 40 who allege

they were denied promotions and involuntarily terminated by Kaiser. Plaintiffs seek to represent a class of African-Americans, and subclasses of female African-Americans and older African-Americans, who were employed at Kaiser in the northern California region, and (1) were denied promotion, (2) were terminated, or (3) complained internally or to a governmental entity regarding race or age discrimination.

The SAC alleges that, beginning in 1997, Gamble worked in Kaiser's Human Resources department. Gamble alleges that she was denied promotions and subjected to a pattern and practice of discrimination, despite her qualifications and excellent performance. (SAC ¶ 44.) She alleges she also was subjected to harassment and unreasonable scrutiny by the person who began supervising her in July 2012, Rosa Grajeda. (*Id*. ¶¶ 43-44.) Gamble asserts that Grajeda and Kaiser determined to terminate her under false pretenses, and ultimately terminated her on July 29, 2014. (*Id*. ¶¶ 45, 46.)

Kennedy began working at Kaiser in October of 1997, and worked in various positions in the Chemical Dependency and Rehabilitation Program. (*Id*. at ¶ 47.) Kennedy alleges she was denied promotions, transfers, pay raises, and other benefits that were given to non-African-American employees, even though her performance and qualifications were equal to or better than those employees. (*Id*. ¶¶ 48, 49.) She further alleges that she was threatened, retaliated against, and ultimately terminated because of her race and because she made complaints regarding Kaiser's non-compliance with civil rights laws. (*Id*. ¶ 49.) Ultimately, Kennedy alleges that she was subjected to disciplinary proceedings based on false information and was terminated in February 2016. (*Id*. ¶49.)

## II.    MOTION TO DISMISS

Defendants seek to dismiss certain claims brought by Gamble and Kennedy on the grounds of: (a) failure to exhaust their administrative remedies; (b) untimeliness of the charge or suit; and (c) failure to allege the claim sufficiently. The Court considers each in turn.

### A.    FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

In order to bring a civil action alleging violations of Title VII of the Civil Rights Act of 1964 (Title VII), the federal Age Discrimination in Employment Act (ADEA), of the California

United States District Court
Northern District of California

Fair Employment and Housing Act (FEHA), a plaintiff must first exhaust administrative remedies by filing a timely complaint with the appropriate government agency and receiving a right-to-sue letter. *See* 42 U.S.C. §2000e-5(e), (f)(1) (Title VII); 29 U.S.C. § 626(d) (ADEA); Cal. Gov't Code § 12965(b) (FEHA). Where federal and state law overlap, there is a work-sharing agreement under which employment discrimination charges may be filed either with the federal Equal Employment Opportunity Commission (EEOC) or the state anti-discrimination agency, which in California is the Department of Fair Employment and Housing (DFEH). *See* 42 U.S.C. § 2000e-8(b). Charges filed with either the EEOC or the DFEH are deemed filed with both agencies. *See Laquaglia v. Rio Hotel & Casino, Inc.* 186 F.3d 1172, 1175-1176 (9th Cir. 1999).[1]

As a general rule, a plaintiff may not bring suit upon discrimination claims that are not "like or reasonably related to the allegations contained in" the administrative charge. *B.K.B. v. Maui Police Dep't.,* 276 F.3d 1091, 1100 (9th Cir. 2002) (quoting *Green v. L.A. County Supt. Of Sch.,* 883 F.2d 1472, 1475 (9th Cir. 1990)); *Okoli v. Lockheed Tech. Operations Co.*, 36 Cal. App. 4th 1607, 1615 (1995) (adopting similar standard for DFEH charges). Courts construe the language of the administrative charge "with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *B.K.B.,* 276 F.3d at 1100 (quoting *Kaplan v. Int'l Alliance of Theatrical & Stage Employees,* 525 F.2d 1354, 1359 (9th Cir. 1975)).

"[U]nnamed class members in a private class action need not exhaust administrative remedies." *Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1204 (9th Cir. 2016), *cert. denied sub nom. Geo Grp., Inc. v. E.E.O.C.*, 137 S. Ct. 623 (2017). "In addition, an aggrieved employee who fails to file a timely charge . . . may still be able to pursue a claim under the piggyback or single-filing rule, in which the employee 'piggyback[s]' onto the timely charge filed by another plaintiff for purposes of exhausting administrative remedies." *Id.*, *citing Harris*, 682

---

[1] The time limit for filing FEHA claims with the DFEH is one year from the last unlawful act. Cal. Gov't Code § 12960. The time limit for filing a charge with the EEOC is 180 days from the unlawful act, unless the charge initially was filed with the DFEH, in which case it is extended to 300 days after the last unlawful act. 42 U.S.C. § 2000e-5(e)(1); *see Scott v. Gino Morena Enterprises, LLC*, 888 F.3d 1101, 1106 and n.2 (9th Cir. 2018).

4

F.3d at 1136.[2] The single filing rule is applicable even if the administrative charge did not indicate it was on behalf of a class, and even if the individual seeking to piggyback on the plaintiff's claim had filed her own administrative charge before joining in plaintiff's lawsuit. *Harris*, 682 F.3d at 1136-37; *see also Ellis v. Costco Wholesale Corp.*, No. C-04-3341 EMC, 2015 WL 2453158, at *2–3 (N.D. Cal. May 22, 2015) (plaintiff could piggyback on co-plaintiff's administrative charge, even if she had filed her own administrative charge separately before joining lawsuit).

Defendants argue that both plaintiffs failed to exhaust their: (1) disparate impact claims under Title VII and FEHA; (2) Title VII, FEHA and ADEA claims against entities other than those stated as the respondent in their charges, despite their attempt to allege a single employer theory; and (3) claims on a class-wide basis generally. In addition, defendants argue as to the individual plaintiffs that: (4) Gamble failed to exhaust "pattern and practice" claims, including those alleging gender discrimination and failure to promote; (5) Kennedy failed to exhaust any promotion claim timely in either her 2017 or 2018 charge; and (6) Kennedy failed to exhaust an age-based promotion claim. Each is addressed below.

### 1. Failure to Exhaust Disparate Impact Discrimination Claims

Defendants move to dismiss plaintiffs' first cause of action for violation of Title VII, section 1981, and FEHA on account of "disparate impact in promotion" based upon race, and upon the subcategories of race plus gender and race plus age on the grounds of failure to exhaust. (SAC at 23:16-18.) In that First Cause of Action, plaintiffs allege that Kaiser "maintained a system for making decisions about training, performance reviews, discipline, assignments, pay, classifications, transfer, retention and promotion into supervisory and management positions which is arbitrary, subjective, retaliatory, lacking in non-discriminatory processes and which has a disparate impact on African-American employees." (SAC ¶ 61.) They further allege that

---

[2] The Court requested supplemental briefing on the question of whether the Supreme Court's recent decision in *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018) affected the single-filing/piggybacking rule with respect to administrative exhaustion. Having reviewed those briefs and the authorities therein, the Court concludes that *China Agritech* does not abrogate the single-filing rule in this way, but instead is addressed to limitations on tolling of the statute of limitations for members of a putative class action once the class litigation is dismissed. *Id*. at 1804.

"Kaiser's subjective and race and race-gender-based system is not justified by business necessity or, if it could be justified, less discriminatory alternatives exist." (*Id.*)

Defendants contend the disparate impact claim should be dismissed for failure to exhaust their disparate impact theory in their administrative charges because plaintiffs did not identify a specific policy or practice in their administrative charges. Plaintiffs counter with two arguments: (1) Kennedy identified the facially neutral policies underlying the First Cause of Action in her request to DFEH even though the allegations were not included in the charge finalized by the DFEH representative; and (2) plaintiffs did not need to state their disparate impact theory expressly in the charge because it falls "within the scope of the administrative investigation which can reasonably be expected to grow out of the charge of discrimination." *Rodriguez v. Airborne Express,* 265 F.3d 890, 896–97 (9th Cir. 2001).

For purposes of alleging the disparate impact claim, the Supreme Court has explained the distinction between a disparate impact and a disparate treatment claim as follows:

> Disparate treatment is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or other protected characteristic. Liability in a disparate-treatment case depends on whether the protected trait actually motivated the employer's decision. By contrast, disparate-impact claims involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. Under a disparate-impact theory of discrimination, a facially neutral employment practice may be deemed illegally discriminatory without evidence of the employer's subjective intent to discriminate that is required in a disparate-treatment case.

*Raytheon Co. v. Hernandez*, 540 U.S. 44, 52–53 (2003) (internal citations and quotations omitted). A plaintiff cannot demonstrate disparate impact "simply by showing that at the bottom line there is racial imbalance in the work force." *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 657 (1989) (internal punctuation and emphasis omitted).

As a threshold matter, a plaintiff "must demonstrate that it is the application of a specific or particular employment practice that has created the disparate impact under attack." *Id*. However, identification of a specific employment practice is not required in all instances: "if the complaining party can demonstrate to the court that the elements of a respondent's decisionmaking process are not capable of separation for analysis, the decisionmaking process

may be analyzed as one employment practice." 42 U.S.C. § 2000e–2(k)(1)(B)(i); *see also McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 278 (5th Cir. 2008) (citing statute and finding no error in district court's determination that pervasive subjective and discretionary application of objective criteria required that company's promotion practices be analyzed as one employment practice). Further, allegations of unchecked subjective decisionmaking may support a disparate impact claim:

> disparate impact analysis is in principle no less applicable to subjective employment criteria than to objective or standardized tests. In either case, a facially neutral practice, adopted without discriminatory intent, may have effects that are indistinguishable from intentionally discriminatory practices. . . . it may be customary and quite reasonable simply to delegate employment decisions to those employees who are most familiar with the jobs to be filled and with the candidates for those jobs. It does not follow, however, that the particular supervisors to whom this discretion is delegated always act without discriminatory intent. Furthermore, even if one assumed that any such discrimination can be adequately policed through disparate treatment analysis, the problem of subconscious stereotypes and prejudices would remain. . . . If an employer's undisciplined system of subjective decisionmaking has precisely the same effects as a system pervaded by impermissible intentional discrimination, it is difficult to see why Title VII's proscription against discriminatory actions should not apply. . . . accordingly . . . subjective or discretionary employment practices may be analyzed under the disparate impact approach in appropriate cases.

*Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 990–91 (1988). Thus, courts have permitted disparate impact claims based upon allegations that managers had unchecked discretion to make employment decisions using vague, subjective, unvalidated criteria.[3]

For example, in *Stender*, the court determined that "sex discrimination was the standard operating procedure at Lucky with respect to placement, promotion, movement to full-time

---

[3] Defendants' contention that such a theory was rejected by the Supreme Court in *Wal-Mart Stores, Inc. v. Dukes*, misstates the holding in that case. While the Supreme Court rejected certification of nationwide class alleging a disparate impact claim against an entire company "of Wal-Mart's size and geographical scope," it reiterated that "'in appropriate cases,' giving discretion to lower-level supervisors can be the basis of Title VII liability under a disparate-impact theory—since 'an employer's undisciplined system of subjective decisionmaking [can have] precisely the same effects as a system pervaded by impermissible intentional discrimination.' *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 355–56 (2011) (*quoting Watson*, 487 U.S. at 990–991). Whether plaintiffs will be able to show that discrimination can be determined based upon common questions such that a class can be certified, while challenging (*see id.* at 355), is not foreclosed at the pleading stage. In *Wal-Mart*, the court was particularly concerned with the action challenged "literally millions of employment decisions at once." *Id.* at 352. Here, by contrast, plaintiffs limit the class to employers in the "Northern California region" making satisfaction of the Rule 23 requirements at least facially plausible. (*See* SAC ¶ 6.)

positions, and the allocation of additional hours." *Stender v. Lucky Stores, Inc.*, 803 F. Supp. 259, 336 (N.D. Cal. 1992). Based upon plaintiff's allegations that the "system of promotion is pervaded by a lack of uniform criteria . . . the failure to follow set procedures and the absence of written policies or justifications for promotional decisions," the court found that "Lucky's highly discretionary and subjective decision making with respect to initial placement, promotion, and selection of employees for additional training" constituted a disparate impact on promotional opportunities for women. *Stender v. Lucky Stores, Inc.*, 803 F. Supp. 259, 335–36 (N.D. Cal. 1992); *see also Butler v. Home Depot, Inc.*, No. C-94-4335 SI, 1997 WL 605754, at *13 (N.D. Cal. Aug. 29, 1997) (denying summary judgment on plaintiffs' disparate treatment claim based upon evidence of Home Depot's "near total absence of specific criteria for selection decisions about screening and hiring job applicants, initial pay, job assignment, promotion, [and] wage and salary increases . . . [but rather based] those decisions on their own subjective judgments, with virtually no written criteria for systematically evaluating the qualifications of individual candidate"); *Allen v. Seidman*, 881 F.2d 375, 381 (7th Cir. 1989) (reversing judgment on disparate impact claim, holding that plaintiffs need not pinpoint specific aspects of employment test to show it had a disparate impact on African-Americans where test was "devoid of objective standards," based on an "unstructured personal interview," and graded mostly by white evaluators).

Having alleged a practice sufficiently, the Court considers defendants' argument that the plaintiffs' administrative charges did not include a claim for disparate impact discrimination. The parties' briefs and papers indicate that factual issues exist concerning the scope of the exhausted issues which cannot be resolved in this pleading motion. "On a motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the plaintiff, taking all her allegations as true and drawing all reasonable inferences from the complaint in her favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). "Generally, a court may not consider material beyond the complaint in ruling on a [Rule] 12(b)(6) motion." *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (internal citation omitted). However, a court may take judicial notice of matters of public record "so long as the facts noticed are not subject to reasonable dispute." *Id*. Otherwise, the motion to dismiss must be converted to a

motion for summary judgment. *Id.*

Such a dispute exists here. Defendants seek judicial notice of plaintiffs' administrative charges to show that none of them identifies a facially neutral policy or alleges disparate impact. First, with respect to plaintiff Kennedy, plaintiffs offer evidence that she submitted additional allegations of systemic discrimination to the DFEH investigator, which he refused to include in the administrative charge. (Friedman Decl. ¶ 20; *see also* Oppo. to Motion to Dismiss at 11:13-14.) Those additional allegations included a contention that Kaiser maintained "policies and practices" of reliance on vague, subjective criteria for employment decisions which resulted in disadvantages to African-Americans and African-American female employees. (Friedman Decl., Exh. C at ¶ 10.)[4] In response, defendants merely argue that the "Court need not 'dig through [plaintiffs'] opposition" to find a reason to deny the motion. (Reply to Motion to Dismiss at 4:24.) In light of plaintiffs' representations about the allegations omitted in the administrative process on Kennedy's charges, the Court finds that it cannot take judicial notice of the administrative charges in connection with this issue without converting the motion to one for summary judgment, which it declines to do.

Next, Gamble does not dispute defendants' argument as it relates to her charge, but instead relies on the allegations in Kennedy's charges under the single-filing or "piggybacking" rule. "An aggrieved employee who fails to file a timely charge" may satisfy the exhaustion requirement by reference to the timely charge filed by another plaintiff *Arizona ex rel. Horne*, 816 F.3d at 1204,

---

[4] Kennedy sought to include in her charge allegations stated that Kaiser maintained policies and practices of: failing to train African-American employees, and African-American women, on how to obtain advancement; reliance on racial stereotypes in making employment decisions; "grooming" non-African-American (female) employees for advancement; maintaining segregated job categories and departments; discouraging and deterring African-American (female) employees from seeking advancement; providing unjustified or false performance reviews and discipline to African-American (female) employees as compared to non-African-American employees; and providing less training and support to African-American (female) employees and managers. (Friedman Decl., Exh. C at ¶ 10.)

*citing Harris*, 682 F.3d at 1136.[5]  The single filing rule is applicable even if the administrative charge did not indicate it was on behalf of a class, and even if the individual seeking to piggyback on the plaintiff's claim had filed her own administrative charge before joining in the co-plaintiff's lawsuit.  *Harris*, 682 F.3d at 1136-37; *see also Ellis v. Costco Wholesale Corp.*, No. C-04-3341 EMC, 2015 WL 2453158, at *2–3 (N.D. Cal. May 22, 2015) (plaintiff could piggyback on co-plaintiff's administrative charge, even if she had filed her own administrative charge separately before joining lawsuit).  To the extent that Kennedy's charge did exhaust such a claim, Gamble may also assert such a claim based upon the single filing rule.

In sum, the SAC alleges exhaustion, and factual questions as to the truth of that allegation—including whether Kennedy's administrative charge can be deemed to have identified a disparate impact claim or whether such a claim could reasonably be expected to grow out of the charge of discrimination—are not resolved properly at this juncture.  The motion to dismiss plaintiffs' disparate impact claim for failure to exhaust is therefore **DENIED**.

### 2.  *Failure to Exhaust Class Claims*

Defendants contend that plaintiffs failed to exhaust class-wide claims as part of their administrative charges.  Plaintiffs need not state specifically that the claim is brought on behalf of a class in their administrative charge.  *Paige*, 102 F.3d at 1042–43 (finding it more "consistent with the statutory purpose and the large body of case law holding that employment discrimination charges are to be construed 'with the utmost liberality'" to find that a charge not explicitly raising class claims could nevertheless support a class action when class discrimination could reasonably be expected to grow out of the allegations in the charges); *see also Harris v. Cty. of Orange*, 682 F.3d 1126, 1136–37 (9th Cir. 2012) (plaintiff need not say "on behalf of" or "class action" "as opposed to words expressing the same concept" in the administrative complaint in order for the single filing rule to apply).  "[A]n employer may be on notice of classwide allegations of

---

[5] The Court requested supplemental briefing on the question of whether *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018) affected the single-filing/piggybacking rule with respect to administrative exhaustion.  Having reviewed those briefs and the authorities therein, the Court concludes that *China Agritech* does not abrogate the single-filing rule in this way, but instead is addressed to limitations on tolling of the statute of limitations for members of a putative class action once the class litigation is dismissed.  *Id*. at 1804.

discrimination from a single charge," even where the charge alleges a single incident, if the other aggrieved employees' claims are based upon the same alleged conduct by the employer. *Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1204 (9th Cir. 2016), *cert. denied sub nom. Geo Grp., Inc. v. E.E.O.C.*, 137 S.Ct. 623 (2017) (charge alleging discrimination, harassment, and retaliation not limited to an "isolated act" of discrimination by one individual against another where employee alleged she complained about the harassment, employer did nothing to remedy it, and instead initiated an investigation against her based on false pretenses).

To the extent the motion seeks to dismiss claims for failure to exhaust any given claim on a class-wide basis, the motion is **DENIED**.

### 3. *Failure to Exhaust As to Each Respondent*

Defendants contend that plaintiffs failed to exhaust their claims because they did not name the correct employing entity in their charges, and therefore claims against defendants who did not employ them should be dismissed. Defendants argue that: (1) Gamble did not name any of the defendants in her charge, but because she was employed by Health Plan, defendants Hospitals and Medical Group should be dismissed from her claims; and (2) Kennedy did not name Health Plan or Hospitals in her charge, and was only employed by Medical Group, so the others should be dismissed. Plaintiffs counter that Kennedy amended her DFEH charge to name explicitly all three corporate entities which make up a single employer for purposes of these claims, and Gamble can piggyback on that allegation.

As a general rule, Title VII plaintiffs may sue only those named in the EEOC charge, because only they had an opportunity to respond to the charges during the EEOC's investigation and conciliation efforts. *Sosa v. Hiraoka*, 920 F.2d 1451, 1458 (9th Cir. 1990). However, several exceptions exists allowing a Title VII claim to be brought against parties not named in the administrative charge: (1) if the respondent named in the EEOC charge is a principal or agent of the unnamed party, or if they are "substantially identical parties;" (2) if the unnamed party was "involved in the acts giving rise to the" Title VII claims; (3) where the EEOC or defendants themselves should have anticipated that claimant would name those defendants in the lawsuit; (4) if the unnamed party had notice of the EEOC conciliation efforts and participated in the EEOC

proceedings. *Id.* at 1458-59; *see also Lorona v. Arizona Summit Law Sch., LLC*, 151 F. Supp. 3d 978, 987 (D. Ariz. 2015) (failure to name company in her EEOC charge does not bar her Title VII claim where plaintiff alleged company had actual notice of the EEOC proceedings and company dominated business operations and shared the interests of the named respondent regarding the EEOC charge, such that they could be "substantially identical parties").

The SAC alleges:

> 12. Medical Group, Hospitals, and Health Plan work in cooperation with each other to form the integrated medical care services program with the trade name, Kaiser Permanente Medical Care Program. This enterprise is known to the general public, and is doing business as, "Kaiser Permanente." With respect to its labor policies and procedures, and in particular with respect to its obligations under federal and state laws and regulations to investigate and take reasonable steps to stop discriminatory practices, all three entities collectively constitute a "single employer," and are referred to herein as "Kaiser." With respect to the matters asserted here, these entities have interrelated operations, common management, centralized control of labor relations and common financial control.

These allegations are sufficient to state that defendants may be agents or principals of one another, or otherwise "substantially identical parties." *Cf. Sosa v. Hiraoka*, 920 F.2d at 1460 (reversing dismissal of trustees which, though they were not named in charge, governed the college district named in the charge and therefore could be "substantially identical" to the named party).[6]

The *Medix* case cited by defendants is distinguishable. That case, and the cases cited therein, concerned the issue of whether a harassment complaint, one of the limited kinds of discrimination claims that may be made against an individual, could "proceed against one not mentioned in the administrative complaint" when the administrative complaint mentioned only the employer and not the individual perpetrator, or vice versa. *Medix Ambulance Serv., Inc. v. Superior Court*, 97 Cal. App. 4th 109, 116 (2002).

Plaintiffs' allegations of common management and centralized control of labor relations among defendants are sufficient at the pleading stage to allege that the administrative charges

---

[6] Moreover, Kennedy argues that she amended her DFEH charge to name all three corporate entities expressly. (*See* Def. Request for Judicial Notice, Dkt. No. 46, Exh. K at 1.) The Court takes judicial notice of Exhibit K for purposes of noting the respondents listed therein, not for the truth of any matter asserted. In Exhibit K, respondents are Kaiser Permanente Medical Group, Kaiser Foundation Health Plan, Inc. dba Kaiser Permanente Roseville Medical Center, and Kaiser Foundation Hospitals.

sufficiently named all three defendants.  The motion to dismiss on this basis is **DENIED**.

### 4.  *Failure to Exhaust As to Gamble's Promotion-Based and Race-Plus-Gender Claims*

With respect to Gamble, defendants contend that she failed to exhaust promotion claims and gender/race subclass claims.[7]  As to the gender/race subclass claims, defendants contend that the state court's prior dismissal for failure to exhaust should bind Gamble in this action.  In addition, defendants contend that Gamble cannot piggyback on Kennedy's claims, and without piggybacking she has failed to exhaust claims based alleging failure to promote, alleging a pattern and practice of discrimination, or alleging discriminatory litigation tactics.

As referenced above, the Ninth Circuit has held that "[i]n Title VII and ADEA cases . . . so long as one plaintiff timely files an administrative complaint, a class of similarly-situated plaintiffs may 'piggyback' on that complaint, thereby satisfying the exhaustion requirement."  *Harris*, 682 F.3d 1126, 1136 (9th Cir. 2012).  This principle applies even if the administrative complaint did not indicate that it was made on behalf of a class of others similarly situated.  *Id*. at 1136-37; *see also Ellis* 2015 WL 2453158, at *2–3 (N.D. Cal. May 22, 2015) (plaintiff could piggyback on co-plaintiff's administrative charge, even if she had filed her own administrative charge separately before joining lawsuit).  While, "[a]n individual's failure to file a charge with the agency within this time frame will usually operate to bar that person from bringing a lawsuit for failure to exhaust their administrative remedies . . . . an aggrieved employee who fails to file a timely charge with the EEOC may still be able to pursue a claim under the piggyback or single-filing rule, in which the employee 'piggybacks' onto the timely charge filed by another plaintiff for purposes of exhausting administrative remedies."  *Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1202 (9th Cir. 2016), *cert. denied sub nom. Geo Grp., Inc. v. E.E.O.C.*, 137 S. Ct. 623 (2017).

---

[7] Defendants also argued that Gamble failed to exhaust class claims and "pattern and practice claims."  These arguments provide no basis for dismissal.  As stated above, class-based claims need not be alleged specifically as such in the charge.  Further, "pattern and practice" is a type of evidence, not a type of claim.  Defendants' citation to *Greer v. Lockheed Martin*, No. CV 10-1704 JF HRL, 2011 WL 3471113, at *1 (N.D. Cal. Aug. 5, 2011) is entirely inapposite.  There, plaintiff filed a charge in which she checked the boxes for retaliation and discrimination based upon age and disability, but attached a factual statement alleging negligence and premises liability based on a slip and fall accident at her workplace, not discrimination.  *Id*.

Although she did not allege promotion or gender/race subclass claims in her own administrative charge, under the single-filing rule, Gamble may rely on Kennedy's charge to the extent the SAC alleges claims by Gamble sufficiently similar to Kennedy's. Defendants' argument that a party who has filed an administrative charge cannot take advantage of the single-filing rule is not consistent with the purposes of the rule. As stated in *Ellis*, it would make little sense to allow a co-plaintiff who never filed a charge to take advantage of another plaintiff's charge for exhaustion purposes, but *not* apply that same principle to someone like Gamble who was reasonably diligent in filing a charge though she did not include everything in it that her co-plaintiff did. *Ellis* 2015 WL 2453158, at *2–3.

Here, the Court finds that the nature of the two claims is similar enough for Gamble to rely on Kennedy's charge for exhaustion purposes. Thus: (1) Gamble alleges she was denied promotions within Kaiser that were offered to non-African-Americans, despite her long tenure, qualifications, and excellent work performance (SAC ¶ 44); and (2) Kennedy alleges she was denied promotions given to other non-African American employees despite her qualifications and excellent performance (*Id.* ¶ 48). Gamble worked in Kaiser's Benefits department and Kennedy worked in Kaiser's Chemical Dependency and Rehab Program. It appears from the complaints that the offices in which they worked were in different cities and were managed by different supervisors, but were within the same system and in the same region. The Ninth Circuit directs that we construe a charge liberally. *Paige*, 102 F.3d at 1042–43. The allegations of the SAC here are essentially the same, even if locations where plaintiffs worked are not identical. On the face of the pleadings, the single-filing rule precludes dismissal of Gamble's claims for failure to exhaust.

The cases cited in defendants' motion to the contrary on this point (*Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 564-65 (2d Cir. 2006) and *Eidenbock v. Charles Schwab & Co.*, No. CV 05-2327-PHX-MHM, 2006 U.S. Dist. LEXIS 73454, at *28 (D. Ariz. Sep. 29, 2006)) precede the Ninth Circuit's decision in *Harris*, and are not persuasive in any event. Moreover, defendants' contention that piggybacking could not revive Gamble's claims because they were no longer viable at the time of Kennedy's charge likewise does not persuade. Other plaintiffs seeking to

14

piggyback on a plaintiff with a timely charge could properly include claims reaching back 300 days prior to the date the charging party filed an administrative charge. *Arizona ex rel. Horne*, 816 F.3d at 1202–03. Gamble allegedly was terminated on July 29, 2014. (SAC ¶ 46.) Kennedy filed a charge on July 11, 2014, alleging discrimination and retaliation on the basis of race (RJN Exh. F), and amended that charge on July 10, 2015, to allege a pattern and practice of discrimination and denial of advancement based upon race (RJN Exh. G). Gamble's termination falls within the 300-day window of Kennedy's charge. Defendants' reliance on *Martinez v. Victoria Partners*, No. 2:12-CV-502-JAD-VCF, 2014 WL 1268705 (D. Nev. Mar. 27, 2014), which precedes *Arizona ex rel. Horne* and relies on outdated, out-of-circuit authority for its conclusion, is misplaced.

The motion to dismiss Gamble's promotion claim and race-plus-gender claim is **DENIED**.

### 5.      Failure to Exhaust Timely As To Kennedy's Promotion Claims

With respect to Kennedy, defendants contend that she failed to exhaust the promotion claims alleged in the SAC because the last promotion she alleges she was denied occurred in August 2014. (SAC ¶ 48f.) However, Kennedy also alleges denial of promotions to better paying jobs and supervisory positions constituted a pattern of discrimination that led up to her termination in February 2016. (*Id.* ¶ 49.)

Kennedy's first charge was filed in July 2014 alleging race discrimination and retaliation. That charge was amended in July 2015 to specify that it included differential treatment and denial of advancement, promotions, transfers, pay raises and other benefits. (RJN Exh. G.) Each discrete act "starts a new clock for filing [a] charge[] alleging that act.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). The allegations of the SAC do not foreclose a discrete act concerning denial of a promotion within the proper time frame for a claim under the FEHA, Title VII, or the ADEA. Thus, defendants have not shown, on the face of the allegations, that Kennedy failed to exhaust her promotion claims timely. The motion to dismiss on these grounds is **DENIED**.

### 6.      Failure to Exhaust Kennedy's Age Discrimination in Promotion Claim

Defendants argue that the Third Cause of Action alleges termination based upon age discrimination, but incorporates Kennedy's allegations about age discrimination in promotion,

1   which she failed to exhaust. Kennedy's administrative charge filed in 2016 included age and

2   failure to promote allegations. (RJN Exh. K.) As stated above, defendants have not established

3   that Kennedy failed to exhaust promotion claims timely. Thus, the motion to dismiss on the

4   grounds that Kennedy did not exhaust a claim for age discrimination in promotion is **DENIED**.[8]

5        **B.**    **FAILURE TO FILE SUIT TIMELY**

6       Defendants contend that certain of plaintiffs' claims are untimely because they became

7   "entitled to sue" under Title VII within 180 days of filing their charges, and their 90-day clock

8   began to run at that time. As defendants concede on reply, the Ninth Circuit's recent decision in

9   *Scott v. Gino Morena Enterprises, LLC*, 888 F.3d 1101(9th Cir. 2018) has clarified that the 90-day

10   time period for filing suit begins to run only after the agency concludes its investigation, even if it

11   takes longer than 180 days. *Id*. at 1110.[9]

12       Defendants further contend that Gamble's ADEA and Title VII claims are time-barred for

13   the additional reason that she did not assert any claims alleging a violation of the ADEA or Title

14   VII until her Amended Complaint, filed January 12, 2018, with this Court. (Dkt. No. 18.) For

15   Title VII and the ADEA claims, a plaintiff must file within 90 days of receipt of a right-to-sue

16   letter, *see* 42 USC § 2000e-5(f)(1)]; 29 CFR § 1601.28(e); 29 U.S.C. § 626(e). For FEHA actions,

17   the claimant must file within one year of the date of issuance of the right-to-sue letter. Cal. Gov't

18   Code 12965(b); *see Williams v. Pac. Mut. Life Ins. Co.*, 186 Cal. App. 3d 941, 951 (1986) (DFEH

19   must notify in writing). Gamble's right to sue letter is dated August 10, 2015. (RJN Exh. B.) She

20   filed her lawsuit in state court on August 9, 2016, alleging only FEHA claims. Any claims based

21   upon that right to sue letter and underlying charge were timely with respect under FEHA's one-

22   year limit, but filed after the 90-day limit, and therefore untimely, as to Title VII and ADEA

23

24        [8] To the extent that neither plaintiff alleged the combination of age and promotion in a
charge that would permit certification of a class on that issue, that issue can be resolved at class

25   certification.

26        [9] On reply, defendants offer an alternative argument that the claims should nevertheless be
dismissed for lack of diligence. However, the *Scott* decision discussed such a laches theory as

27   being applicable in the rare case where the delay in issuance of a right to sue letter had stretched to
*62 months* after the original charge and the employer demonstrated actual prejudice in the form of

28   lost evidence. *Scott*, 888 F.3d at 1111 (discussing *EEOC v. Alioto Fish Co.*, 623 F.2d 86 (9th Cir.
1980). No such extreme delay or prejudice is established by the pleadings here.

claims. Thus, Gamble's Title VII and ADEA claims were time-barred. Therefore, to the extent that the causes of action in the SAC are alleged under Title VII and/or the ADEA, the motion to dismiss on those grounds is **GRANTED**.[10]

### C.    FAILURE TO STATE PLAUSIBLE CLAIMS

Defendants move to dismiss plaintiffs' claims for class-wide relief and disparate impact claim for failure to allege them sufficiently under Rule 8's pleading standards.

#### 1.    Class Claims

Defendants contend that plaintiffs failed to allege plausible claims for class-wide discrimination, and that their claims should be dismissed to the extent they allege a putative class. The sufficiency of the class allegations, and whether either plaintiff would be typical of the class alleged, is a question for class certification, not a pleading motion. The motion on these grounds is **DENIED**.

#### 2.    Disparate Impact Claims

The SAC identifies a first cause of action for violation of Title VII, section 1981, and FEHA on account of "disparate impact in promotion" based upon race, and upon the subclasses of race plus gender and race plus age. (SAC at 23:16-18.) In that First Cause of Action, plaintiffs allege that Kaiser "maintained a system for making decisions about training, performance reviews, discipline, assignments, pay, classifications, transfer, retention and promotion into supervisory and management positions which is arbitrary, subjective, retaliatory, lacking in non-discriminatory processes and which has a disparate impact on African-American employees." (SAC ¶ 61.) They further allege that "Kaiser's subjective and race and race-gender-based system is not justified by business necessity or, if it could be justified, less discriminatory alternatives exist." (*Id*.) Plaintiffs' First Cause of Action does not identify a specific facially neutral policy or practice. However, under the reasoning in *Watson* and cases following from it, as discussed above,

United States District Court
Northern District of California

---

[10] Defendants make a similar argument with respect to Kennedy's Title VII promotion claims. However, Kennedy filed a second charge April 21, 2016, and was issued a right to sue letter on April 4, 2018. Kennedy first alleged Title VII claims as part of the Second Amended Complaint filed herein on May 2, 2018, well within 90 days of the April 4, 2018 letter. (Dkt. No. 38.) Therefore, the Court cannot determine that Kennedy's Title VII promotion claims are time-barred from the matters properly before it in this motion.

plaintiffs' allegations of a completely arbitrary and subjective system for making employment decisions including promotions are sufficient to state a claim.

The motion to dismiss on these grounds is therefore **DENIED**.[11]

## III.    MOTION TO STRIKE

Defendants move for an order striking paragraph 51, and the FEHA claims that incorporate it, pursuant to California's anti-SLAPP law, Cal. Civ. Proc. Code § 425.16(b)(1).  Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, defendants also seek to strike plaintiffs' litigation tactics claim (Fifth Cause of Action), portions of the SAC concerning litigation and settlement conduct, and all allegations in the claims as to which Kaiser is moving to dismiss.  The motion to strike is redundant as to the matters covered in the motion to dismiss, above, and is **DENIED** as to those allegations.  The Court addresses the special motion to strike under section 425.16 first, and then turns to the Rule 12(f) motion.[12]

### A.    ANTI-SLAPP SPECIAL MOTION TO STRIKE

The anti-SLAPP grounds in the motion are directed only to plaintiffs' claims under California law, since only claims under California law are subject to a special motion to strike under California Code of Civil Procedure section 425.16.  *See Hilton v. Hallmark Cards*, 599 F.3d 894, 900-01 (9th Cir. 2010) ("a federal court can only entertain anti-SLAPP special motions to strike in connection with state law claims").  In an anti-SLAPP motion, there is a two-prong procedure for determining whether allegations may be stricken:

> At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them.

---

[11] The Court notes that, with respect to an alleged disparate impact claim under section 1981, plaintiffs agree that disparate impact is not a viable theory under that statute and the section 1981 basis for the First Cause of Action should be dismissed.  (Oppo. to Motion to Dismiss 17:20-24: "To the extent plaintiffs claim liability on the basis of disparate impact without disparate treatment, plaintiffs agree §1981 may be removed from the First Claim".)  *See Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982) (section 1981 "can be violated only by purposeful discrimination"); *Lowe v. City of Monrovia*, 775 F.2d 998, 1010, n.10 (9th Cir. 1985), *amended*, 784 F.2d 1407 (9th Cir. 1986) (under section 1981 "[p]roof of disparate impact is insufficient").  Therefore, to the extent the First Cause of Action alleged a violation of section 1981, the motion to dismiss is **GRANTED**.

[12] An anti-SLAPP motion brought in federal court is not subject to the time limitations in the California statute.  *Sarver v. Chartier*, 813 F.3d 891, 900 (9th Cir. 2016).

United States District Court
Northern District of California

> When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage. If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached. There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken. Allegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing.

*Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016). *Baral* clarified that an anti-SLAPP motion may be directed to particular allegations within a cause of action, even if other parts of the cause of action do not involve protected activity, but allegations that are "merely incidental" or "collateral" to the cause of action are not subject to Section 425.16. *Id*. at 385–86, 394.

All four of plaintiffs' FEHA claims incorporate Paragraph 51, which states as follows:

> Following plaintiff [Kennedy]'s attempt to address her unequal and unlawful treatment at Kaiser, and to assert her civil rights, plaintiff was subject to Kaiser's unlawful retaliatory policies and practices, including designation of plaintiff as not eligible for rehire; unreasonable, pre-determined one-sided investigations conducted outside the standards for workplace investigations for the purpose of covering up Kaiser's violations; unreasonable and abusive litigation tactics designed to punish plaintiff for asserting her rights; and efforts by Kaiser to make sure that plaintiff, in any settlement, agree to never apply to work at Kaiser again in the future.

(SAC ¶ 51.) In other words, plaintiffs allege the following practices were undertaken by defendants in retaliation for Kennedy raising complaints of discrimination and harassment: designating Kennedy as ineligible for re-hire; conducting an unreasonable investigation to cover up Kaiser's violations; engaging in abusive litigation tactics; and requiring a "no re-hire" provision in any settlement.

Under section 425.16, "a claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity." *Park v. Bd. of Trustees of California State Univ.*, 2 Cal. 5th 1057, 1060 (2017). Section 425.16 applies only when a cause of action "arises from" protected activity. Cal. Code Civ. Pro. § 425.16(b). Thus, "a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." *Park,* 2

Cal.5th at 1060.

For instance, in *Nam v. Regents of Univ. of California*, 1 Cal. App. 5th 1176 (2016), a former medical resident alleged that she was disciplined and ultimately terminated through the university hospital's peer review process in retaliation for her complaints about patient care procedures and sexual harassment. *Id*. at 1192. Plaintiff claimed that the Regents conducted an unfair investigation, placed her on investigatory leave, and refused to permit her to return before terminating her, all in retaliation for her complaints. *Id.* The Regents sought to strike the claims, alleging that the peer review proceedings were protected activity, *i.e.* "official proceedings authorized by law." The court agreed that "a lawsuit arising out of a peer review proceeding is subject to a motion to strike the SLAPP suit." *Id*. at 1187. However, the court held that Nam's claims did not arise from the petitioning or proceedings themselves, but rather from the unlawful discrimination and retaliation that motivated them. *Id*. at 1190-91. Thus, the court concluded "the anti-SLAPP statute was not intended to allow an employer to use a protected activity as the means to discriminate or retaliate and thereafter capitalize on the subterfuge by bringing an anti-SLAPP motion to strike the complaint [; i]n that case, the conduct giving rise to the claim is discrimination and does not arise from the exercise of free speech or petition." *Id*. at 1190-91.

Defendants argue that *Park* and *Nam* are distinguishable, and that plaintiffs' allegations are more like those in *Okorie v. Los Angeles Unified Sch. Dist.*, 14 Cal. App. 5th 574 (2017), *review denied* (Nov. 29, 2017). In *Okorie*, the court of appeal considered a school district's investigation of child molestation allegations against a teacher, which included statements to parents and others about the teacher's removal from the classroom and its repeated demands that the teacher return the school district's property. The court concluded that the school district's statements were protected speech. Okorie alleged that the investigation constituted discrimination based upon his national origin (African). The court determined that the alleged investigation *itself* was the gravamen of the complaint and source of Okorie's injury, and therefore was subject to an anti-SLAPP motion. *Id*. at 593. The court held that "the gravamen of Plaintiffs' theory is discrimination via [the] humiliation" of being subject to an investigation, and "that theory of humiliation is meaningless outside the context of the protected speech to which anti-SLAPP

1  protection applies." *Okorie*, 14 Cal. App. 5th at 595.

2  Defendants' analogy of the allegations here to the facts in *Okorie* is unpersuasive. In

3  *Okorie*, the alleged harm arose solely from the employer's manner in conducting the investigation.

4  Here, as in *Park* and *Nam*, Kennedy alleges that defendants' conduct in investigating plaintiff and

5  in designating her as ineligible for rehiring was undertaken as a means for carrying out its intent to

6  discriminate or retaliate. Thus, defendants have not established that the allegations in paragraph

7  51, or the FEHA claims incorporating it, arise from protected activity, and the anti-SLAPP motion

8  is **DENIED**.[13]

9  In their opposition, plaintiffs' sought sanctions for the filing of a frivolous motion under

10  section 425.16. *See* Cal. Code Civ. Proc. §425.16 ("If the court finds that a special motion to

11  strike is frivolous or is solely intended to cause unnecessary delay, the court *shall award* costs and

12  reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5")

13  (emphasis supplied). "A determination of frivolousness requires a finding . . . that any reasonable

14  attorney would agree [the anti-SLAPP] motion is totally devoid of merit." *Moore v. Shaw*, 116

15  Cal. App. 4th 182, 199 (2004), *as modified* (Mar. 26, 2004). The Court does not so find, and the

16  request is **DENIED**.

17  **B.     STRIKE AS IMPROPER MATERIAL UNDER RULE 12(F)**

18  Defendants move under Rule 12(f) to strike certain allegations as being improper.

19  Defendants argue that the litigation- and settlement-related allegations in the SAC should be

20  stricken under the federal *Noerr-Pennington* doctrine, or under the California litigation privilege

21  stated in California Civil Code section 47. Motions to strike are granted sparingly and only to

22  excise "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

23  Fed. R. Civ. P. 12(f). As set forth below, the Court's analysis of the federal and state authorities

24

25  _____

26  [13]  Defendants' reply brief clarified that the anti-SLAPP motion is directed only to
Paragraph 51 and the FEHA claims incorporating it. (Reply at 6:22-24.) The Court notes,
however, that defendant's motion argued paragraph 21f (and the claims incorporating it) also were
subject to striking under the anti-SLAPP statute. (*See* Motion at 16:8-17:24.) The Court
understands the argument with respect to paragraph 21f to be withdrawn. To the extent defendants
27  contend that paragraph 21f is subject to an anti-SLAPP motion, the Court finds that the allegations
are collateral to the claims of discrimination and retaliation in each of the causes of action, and
28  therefore not subject to striking under section 425.16. *Baral*, 1 Cal. 5th at 394.

returns differing results.

### *1. The* **Noerr-Pennington** *Doctrine*

Plaintiffs allege liability based on defendants' "litigation tactics against individuals who assert claims of discrimination," as well as allegations that Defendants "require" certain terms "as a condition of settlement." (SAC ¶¶ 22a-c, 53, 90.)  Defendants argue that plaintiffs' claims are barred by the *Noerr-Pennington* doctrine in two ways: (*i*) the litigation tactics claim (Fifth Cause of Action) and litigation allegations seek to predicate liability for defendants' "litigation tactics against individuals who assert claims of discrimination" (SAC ¶ 90); and (*ii*) the allegations regarding defendants' imposition of confidentiality, no re-hire, and fee waivers terms when employees sue them for race discrimination are conduct "incidental to the prosecution" of a lawsuit and likewise covered by the doctrine.  Plaintiffs respond that their claims do not seek to assign liability based solely on protected petitioning speech, but upon defendants' discriminatory and retaliatory actions.  Plaintiffs further contend that *Noerr-Pennington* provides no basis for striking allegations regarding settlement negotiations, as that conduct does not constitute "petitioning activity" or matters incidental to it.[14]

The *Noerr–Pennington* doctrine protects the First Amendment right to petition.  *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 711 F.3d 1136, 1138–39 (9th Cir. 2013).  Under *Noerr–Pennington*, "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (citing *Empress LLC v. City & Cnty. of S.F.*, 419 F.3d 1052, 1056 (9th Cir. 2005)).  "Although the doctrine was developed in the antitrust context, it has since been extended to other statutory schemes."  *Nunag-Tanedo*, 711 F.3d at 1139.  Thus *Noerr–Pennington*

---

[14] Plaintiffs also argued that *Noerr-Pennington* is an affirmative defense and cannot be decided in a pleading motion.  The argument is unavailing.  The Ninth Circuit has held that "a plaintiff's complaint [must] contain specific allegations demonstrating that the *Noerr–Pennington* protections do not apply." *Boone v. Redevelopment Agency of City of San Jose*, 841 F.2d 886, 894 (9th Cir. 1988) (affirming dismissal of claims pursuant to *Noerr-Pennington* where plaintiff failed to allege facts to support sham exception and claims were otherwise barred by doctrine); *see also Empress LLC v. City & Cty. of San Francisco*, 419 F.3d 1052, 1057 (9th Cir. 2005) (affirming dismissal under 12(b)(6) where plaintiffs failed to allege facts to establish sham exception and avoid *Noerr-Pennington* bar).

United States District Court
Northern District of California

requires courts to "construe federal statutes so as to avoid burdening conduct that implicates the protections afforded by the Petition Clause unless the statute clearly provides otherwise." *Sosa*, 437 F.3d at 931. Litigants are immune from liability that arises out of their petitioning activity, *i.e.* the filing of a lawsuit, as well as conduct "incidental to the prosecution of the suit," unless such activity is a "sham." *Theofel v. Farey-Jones*, 359 F.3d 1066, 1071 (9th Cir. 2004); *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 644 (9th Cir. 2009).

As initial matter, a court must determine whether a claim arises from petitioning activity or conduct incidental to it. "[C]ommunications between private parties are sufficiently within the protection of the Petition Clause to trigger the *Noerr-Pennington* doctrine, so long as they are sufficiently related to petitioning activity." *Sosa*, 437 F.3d at 935, 942 (applying *Noerr-Pennington* doctrine to "a prelitigation demand to settle legal claims"). The Ninth Circuit has been careful to state that the *Noerr-Pennington* doctrine does not immunize "litigation conduct generally." *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184-85 (9th Cir. 2005). It nevertheless has held that the doctrine bars claims based upon decisions to accept or reject a settlement, settlement demands, and discovery misconduct. *See id.*; *Sosa*, 437 F.3d at 942; *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Inv'rs, Inc.*, 944 F.2d 1525, 1528 (9th Cir. 1991) ("A decision to accept or reject an offer of settlement is conduct incidental to the prosecution of the suit"), *aff'd*, 508 U.S. 49 (1993). The portions of the SAC that defendants seek to strike allege that they engaged in "unlawful and unreasonable litigation tactics" and demanded certain settlement terms in response to claims of race discrimination. These allegations are directed at the petitioning activity or actions incidental to petitioning activity so as to bring them within the scope of *Noerr-Pennington*.[15]

Next, the court must consider whether the alleged petitioning activity falls within the sham

---

[15] Citing *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 635 (E.D. Mich. 2000), plaintiffs contend that conduct in the negotiation of terms of a private settlement agreement is not "petitioning activity," since it is not filed with or approved by a court. However, *Sosa* specifically extended the reach of *Noerr-Pennington* to claims based upon pre-lawsuit communications between private parties. *Sosa*, 437 F.3d at 935, 942; *see also EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1082 (C.D. Cal. 2010) ("[u]nder *Sosa,* all communications between private parties related to litigation—including presuit demand letters and settlement offers—are entitled to immunity").

exception. *Noerr-Pennington* does not protect litigation-related activity that is "objectively baseless" and brought for an unlawful purpose. *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61 (1993). To establish the sham exception in the context of conduct in defensive petitioning activity, as here, the Ninth Circuit has required a plaintiff to show that defendant's conduct lacked both objective merit and subjective good faith. *Freeman*, 410 F.3d at 1185. Plaintiffs have alleged that the conduct at issue was undertaken for an improper purpose, namely unlawful discrimination and retaliation for protected activity. Plaintiffs allege that defendants manufactured false pretexts for workplace investigations and engaged in the negotiation tactics with a purpose of unlawful discrimination or retaliation. Arguably, this meets at least the unlawful purpose factor for the sham exception.[16] However, the Ninth Circuit has

---

[16] There is no clear Supreme Court or Ninth Circuit authority as to whether *Noerr-Pennington* applies to a claim of retaliation under Title VII, section 1981, or the ADEA. However, the Ninth Circuit has applied *Noerr-Pennington* in the context of claims under the Fair Housing Act and section 1983. *Sanghvi v. City of Claremont*, 328 F.3d 532, 543 (9th Cir.2003). Further, district courts in this Circuit have found that *Noerr-Pennington* precluded alleged claims of retaliation and discrimination. *Nazir v. United Air Lines*, No. CV 09-01819 CRB, 2009 WL 2912518, at *2, 5 (N.D. Cal. Sept. 9, 2009) (*Noerr-Pennington* precluded claims under Title VII and Section 1981 against former employer for retaliation because former employer's actions, as alleged, were not objectively baseless or made in bad faith); *Uribe v. Sherman Way Gardens, LTD.*, No. CV 08-4124-VBF(X), 2008 WL 11336669, at *2 (C.D. Cal. Nov. 24, 2008) (claims by evicted tenant against the landlord's attorney alleging that the eviction and related correspondence was a violation of the Fair Housing Act and FEHA on account of her disability were barred by *Noerr-Pennington*); *Ungureanu v. A. Teichert & Son*, No. 11 Civ. 316(LKK), 2012 WL 1108831, at *8–9 (E.D. Cal. Apr.2, 2012) (dismissing plaintiff's Title VII retaliation claim as barred by *Noerr-Pennington* where court found alleged retaliatory actions by employer during workers' compensation proceedings were not objectively baseless).

At least one other circuit court has held that *Noerr-Pennington* does not apply to a retaliation claim under Title VII because that statute's "prohibition on retaliation is so explicit and the public policy behind the retaliation provision so compelling." *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 157 (3d Cir. 1999). Following from that Third Circuit authority, district courts have found *Noerr-Pennington* will not bar a claim for retaliation under Title VII and similar state anti-discrimination laws that is otherwise sufficiently stated. *See Lin v. Rohm & Hass Co.*, No. 2:11-CV-3158-WY, 2014 WL 1414304, at *10 (E.D. Pa. Apr. 14, 2014), *aff'd sub nom. Lin v. Rohm & Haas Co.*, No. 16-1887, 2017 WL 4764798 (3d Cir. Apr. 14, 2017) (declining to extend a *Noerr–Pennington*–type defense to employee's Title VII and state law retaliation claims alleging that former employer's trade secrets suit was brought in retaliation for plaintiff's EEOC-mediated settlement of her discrimination claims and ongoing antagonism against her); *Spencer v. Int'l Shoppes, Inc.*, 902 F. Supp. 2d 287, 296–97 (E.D.N.Y. 2012) (rejecting application of *Noerr-Pennington* in the employment discrimination context since "Courts in this Circuit evaluate allegedly retaliatory litigation by conducting a fact-specific inquiry into the employer's intent . . . rather than focusing solely on the merits of the litigation" as under the *Noerr-Pennington* sham exception). While the Court finds the reasoning of these out-of-circuit authorities persuasive, it is bound by Ninth Circuit authority indicating that *Noerr-Pennington* applies regardless of the nature of the claim.

required a plaintiff seeking to establish the sham exception to *Noerr-Pennington* to plead around the defense with specificity. *Boone*, 841 F.2d 886, 894; *Empress LLC*, 419 F.3d at 1057. Plaintiffs have not done so here.

The motion to strike the allegations in paragraphs 22a-c, 40, 53, and 90, and the Fifth Cause of Action is therefore **GRANTED WITH LEAVE TO AMEND** to permit plaintiffs to allege, if possible, a basis for establishing a sham exception to *Noerr-Pennington*.[17]

### 2. *California Litigation Privilege*

Defendants next argue that California's litigation privilege bars any FEHA claim arising from communications made in the course of litigation, specifically targeting paragraph 51. Plaintiffs' only argument in opposition is that the privilege is an affirmative defense and not a proper basis for striking a portion of the complaint.

The California litigation privilege, California Civil Code 47(b)(2), "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990). The

---

[17]  In their motion, defendants also moved to strike certain allegations on the grounds that their prior settlement negotiations with third parties are confidential and immaterial to plaintiffs' Title VII, Section 1981 and ADEA claims, citing Rule 408 of the Federal Rules of Evidence and "the mediation privilege embodied in N.D. Cal. ADR L.R. 6-12." (Mtn. to Strike, Dkt. No. 45, 5:21-22; *see also* 19:18-21:13.)  Neither of these grounds is a proper basis for striking portions of the pleading.  *See* Fed. R. Evid. 408(b) ("the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution"); *Peek v. Nationstar Mortg., LLC*, No. 17-CV-230-SM, 2017 WL 7039179, at *1 (D.N.H. Sept. 22, 2017) ("Rule 408 . . . applies to the admissibility of evidence, not the sufficiency of pleadings.  It therefore does not serve as a basis to challenge a complaint under a Rule 12 motion."); *Asics Am. Corp. v. Lutte Licensing Grp. LLC*, No. SACV131993JGBJPRX, 2014 WL 10538912, at *6 (C.D. Cal. Apr. 28, 2014) ("[e]vidence relating to settlement negotiations 'has [ ] been admitted by courts for additional purposes other than establishing liability, including . . . to show knowledge and intent . . . .'") (quoting *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 689 (7th Cir. 2005)).

On reply, for the first time, defendants indirectly raised California's mediation privilege, citing *Foxgate Homeowners' Ass'n, Inc. v. Bramalea California, Inc.*, 26 Cal. 4th 1 (2001) and *Harman v. Golden Eagle Ins. Co.*, No. 17-CV-2328-AJB-MDD, 2018 WL 1791915, at *3 (S.D. Cal. Apr. 16, 2018).  This privilege would appear to have no bearing on the federal claims.  *Cf. Milhouse v. Travelers Commercial Ins. Co.*, 982 F. Supp. 2d 1088, 1105 (C.D. Cal. 2013), *aff'd*, 641 F. App'x 714 (9th Cir. 2016)(acknowledging conflict between California Evidence Code § 1119 and FRE 408 and expressing "doubts that the Federal Rules of Evidence intended themselves to be subordinated to the application of state evidence law" even in the context of a state law claim brought in diversity).

privilege "applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved." *Id.* at 212. The litigation privilege is "absolute," *Silberg,* 50 Cal.3d at 215, and extends to any communication, whether or not it amounts to a publication. *Id.* at 212. Furthermore, the privilege has an "an expansive reach." *Rubin v. Green,* 4 Cal.4th 1187, 1194 (1993), and "[a]ny doubt as to whether the privilege applies is resolved in favor of applying it." *Comstock v. Aber,* 212 Cal.App. 4th 931, 952 (2012) (citing *Adams v. Superior Court,* 2 Cal.App. 4th 521, 529 (1992)). California courts have given "judicial proceeding" an expansive definition and have found that settlement negotiations fit within the litigation privilege. *See, e.g., Torres v. Unum Life Ins. Co. of Am.,* No. C 08–1940 MHP, 2009 WL 69358, at *12 (N.D. Cal. Jan. 9, 2009) (citing *Home Ins. Co. v. Zurich Ins. Co.,* 96 Cal.App. 4th 17, 23 (2002)). Moreover, the litigation privilege applies even where the communications at issue are alleged to be false or pretextual. *Gallanis-Politis v. Medina*, 152 Cal. App. 4th 600, 604, 615–17 (2007) (litigation privilege barred FEHA retaliation claim alleging supervisors obstructed employee's efforts to obtain bilingual bonus pay by conducting a pretextual investigation and preparing a false report in response to employee's discovery requests). On these grounds, the motion to strike paragraph 51 is **GRANTED**. These allegations therefore cannot support any FEHA claim.

## IV.    PLAINTIFF'S MOTION FOR SANCTIONS UNDER RULE 11

Plaintiffs separately moved for award of sanctions against defendants in connection with their filing of the anti-SLAPP motion, pursuant to Rule 11 of the Federal Rules of Civil Procedure. Court. (Dkt. No. 35.)[18] Plaintiff argues defendants' motion to strike is frivolous because: (1) because the California anti-SLAPP statute applies only to state law claims, not federal claims; (2) it is untimely; and (3) Gamble's claims under FEHA do not arise from petitioning activity. For the reasons stated in the Court's Order on the anti-SLAPP motion, *supra* section III, the Court

---

[18] Plaintiffs filed their motion April 24, 2018, prior to the filing of the SAC. Plaintiffs maintain that the motion was not mooted by the filing of the SAC and the order determining the prior anti-SLAPP motion was moot. (*See* Rule 11 Motion Reply, Skt. No. 43 at 7-8.)

finds that the motion to strike, while not entirely successful, was not frivolous. The Rule 11 Motion is **DENIED**.

## IV.     CONCLUSION

For the foregoing reasons:

(1) Defendants' motion to dismiss (Dkt. No. 44) is **GRANTED IN PART AND DENIED IN PART**.

On the First Cause of Action, insofar as it alleges a violation of section 1981, the unopposed motion to dismiss is **GRANTED**.

To the extent that the all the causes of action in the SAC are alleged under Title VII and/or the ADEA, those claims are time-barred as to Gamble, and the motion to dismiss on those grounds is **GRANTED WITH LEAVE TO AMEND**. Plaintiffs are granted leave to amend to allege facts to avoid the time bar on these claims.

The motion to dismiss on all other grounds is **DENIED**.

(2) Defendants' motion to strike (Dkt. No. 45) **GRANTED IN PART AND DENIED IN PART**. The motion to strike pursuant to the California anti-SLAPP statute is **DENIED** for failure to demonstrate that the claims are directed to protected activity.

The motion to strike under Rule 12(f) is **GRANTED WITH LEAVE TO AMEND** as to paragraphs 22a-c, 40, 53, and 90, and the Fifth Cause of Action; and **GRANTED WITHOUT LEAVE TO AMEND** as to paragraph 51.

(3) Plaintiff's motion for Rule 11 sanctions (Dkt. No. 35) in connection with the anti-SLAPP motion is **DENIED**.

Plaintiffs shall file any amended complaint no later than **January 15, 2019**. Defendants shall file any response within 21 days thereafter.

This terminates Docket Nos. 35, 44, 45.

**IT IS SO ORDERED.**

Dated:   December 18, 2018

_____
**YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE**