Jeremy L. Friedman, CA Bar No. 142659
LAW OFFICE OF JEREMY L. FRIEDMAN
2801 Sylhowe Road
Oakland, Ca. 94610
Tel: (510) 530-9060
Fax: (510) 530-9087

Attorney for plaintiffs and putative class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUNELL GAMBLE, and SHEILA KENNEDY, on behalf of themselves as well as a class of similarly situated individuals,<br><br>    Plaintiffs<br><br>vs.<br><br>KAISER FOUNDATION HEALTH PLAN, INC; KAISER FOUNDATION HOSPITALS, INC.; and THE PERMANENTE MEDICAL GROUP; all doing business as KAISER PERMANENTE MEDICAL CARE PROGRAM<br><br>    Defendants | Case No. 4:17-cv-06621-YGR<br><br>**PLAINTIFFS' RULE 16 MOTION FOR AN ORDER ADDRESSING SETTLEMENT POSTURE AND POTENTIAL CONFLICT OF INTERESTS**<br><br>(Per ECF 103, parties to be notified if a hearing will be required.)<br><br>Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

BACKGROUND FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    Plaintiffs Were Able to Retain Counsel Because of Statutory Fee Shifting . . . . . . . . 3

    Plaintiffs Assigned to Counsel Rights to Statutory Fees on Precise Terms and With
        Express Conflict Waivers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    Kaiser's Policy and Practice During Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

LEGAL AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    I.    Assignment of Rights to Statutory Fees is a Reasonable Basis to Retain
        Attorneys and Does Not In and Of Itself Create a Conflict of Interest . . . . 10

    II.   Kaiser Need Not Concern Itself with Opposing Counsel's Contractual
        Relationship with Plaintiffs over Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    III.  Counsel has No Ethical Obligation to Accept an Unreasonable Compromise
        of Statutory Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    IV.  Kaiser's Right to Determine its Global Liability Does Not Permit it To
        Engage in Settlement Tactics Designed to Pit Attorneys against Clients . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**TABLE OF AUTHORITIES**

Cases

*Andrews Farms v. Calcot, Ltd.*, 2010 U.S. Dist. LEXIS 111656 (E.D. Cal. 2010) . . . . . . . 9

*Astrue v. Ratliff,* 560 U.S. 586 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128 (9th Cir. 2002) . . . . . . . . . . . . . . . . 15

*Big Baboon Corp. v. Dell, Inc.*, 2010 U.S. Dist. LEXIS 108027 (C.D. Cal. 2010) . . . . . . . 7

*Certain v. Potter*, 330 F. Supp. 2d 576 (M.D.N.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Del Rio v. Northern Blower Co.*, 574 F.2d 23 (1st Cir. 1978) . . . . . . . . . . . . . . . . . . . 11-12

*Erickson v. Newmar Corp.*, 87 F.3d 298 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Evans v. Jeff D.*, 475 U.S. 717 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Flannery v. Prentice*, 26 Cal. 4th 572 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 10, 14

*Folb v. Motion Picture Industry Pension & Health Plans,* 16 F. Supp. 2d 1164
    (C.D. Cal. 1998), *aff'd,* 216 F.3d 1082 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Folsom v. Butte Cty. Ass'n of Gov'ts*, 32 Cal. 3d 668 (1982) . . . . . . . . . . . . . . . . . . . . . . 15

*Gordon v. City of New York*, 2015 U.S. Dist. LEXIS 44271 (E.D.N.Y. 2015) . . . . . . . . . 10

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In re Marriage of Joseph*, 217 Cal. App. 3d 1277 (1990) . . . . . . . . . . . . . . . . . . . . . . . . 14

*Jenkins v. Missouri*, 931 F.2d 470 (8th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Johnson v. District of Columbia*, 190 F. Supp. 2d 34 (D.D.C. 2002) . . . . . . . . . . . . . . . 14

*Kasza v. Browner*, 133 F.3d 1159 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ketchum v. Moses*, 24 Cal.4th 1122 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Lindelli v. Town of San Anselmo*, 139 Cal. App. 4th 1499 (2006) . . . . . . . . . . . . . . . . . . . 4

*Matsushita Elec. Indus. Co. v. Mediatek, Inc*., 2007 U.S. Dist. LEXIS 27437
    (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Moore v. Nat'l Asso. of Sec. Dealers, Inc.*, 762 F.2d 1093 (1985) . . . . . . . . . . . . . . . . . . . 8

*Panola Land Buying Asso. v. Clark*, 844 F.2d 1506 (11th Cir. 1988) . . . . . . . . . . . . . 8, 14

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568 (N.D. Cal. 2008) . . . . 7

*Quesada v. Thomason*, 850 F.2d 537 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Trust Corp. of Mont. v. Piper Aircraft Corp.*, 701 F.2d 85 (9th Cir. 1983) . . . . . . . . . . . . . 9

*United States ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.*, 793 F. Supp. 2d 1260
 (D. Colo. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Kim*, 806 F.3d 1161 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Roark*, 288 F. App'x 182 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Valley Disposal Inc. v. Central Vt. Solid Waste Mgmt. Dist.*, 113 F.3d 357 (2d Cir. 1997) 10

*Venegas v. Mitchell*, 495 U.S. 82 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Xcentric Ventures, LLC v. Stanley*, 2007 U.S. Dist. LEXIS 55459 (D. Ariz. 2007) . . . . . . 9

Statutes

Fair Employment and Housing Act, Govt. Code §12900 *et seq.* . . . . . . . . 2-4, 7, 10, 12, 14

Title VII of the Civil Rights Act, 42 U.S.C. §2000e *et seq.* . . . . . . . . . . . . . . 2-4, 7, 10, 12

The Fees Act, 42 U.S.C. §1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Rules

Federal Rules of Civil Procedure, Rule 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 8

Federal Rules of Civil Procedure, Rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Other Authorities

Goldstein, Settlement Offers Contingent Upon Waiver of Attorney's Fees: A Continuing
 Dilemma After *Evans v. Jeff D.*, 20 *Clearinghouse Rev*. 693 (Oct. 1986) . . . . . . . . 8

# NOTICE OF MOTION AND MOTION

Named plaintiffs Lunell Gamble and Sheila Kennedy, by and through their attorney of record, hereby move for an Order of the Court addressing the parties' settlement posture and questions of conflict of interest which might arise during settlement negotiations. In particular, plaintiffs seek an order which holds:

1. To protect against any actual conflict of interest between plaintiffs and their attorney, during any settlement discussions attorneys for the parties should attempt to negotiate plaintiffs' damages separate from statutory attorney fees.
2. In the event that the parties reach an agreement on plaintiffs' damages, if the attorneys are unable to reach an agreement on reasonable statutory attorneys' fees, that issue should be submitted to the Court for resolution.

Plaintiffs do not seek to require the parties to enter into a settlement, or to agree to any particular settlement terms. Instead, they ask the Court to hold it unreasonable to require plaintiffs' attorney to negotiate against his own clients during settlement talks. Further, they ask the Court to hold it unreasonable for attorneys from either party to defeat or reject a settlement because of a dispute over statutory fees, unless that party also agrees to submit the fee dispute to the Court for judicial determination.

Plaintiffs' motion is brought pursuant to the Rule 16 of the Federal Rules of Civil Procedure and the Court's inherent powers to control the conduct of attorneys who appear in proceedings before it. It is predicated on Kaiser's policy and practice of requiring waiver of statutory attorneys fees during settlement negotiations while its attorneys simultaneously refuse to submit the question of fees to the Court. It is also predicated on the facts that assignment of rights to the attorney to negotiate or litigate statutory attorneys' fees is a reasonable basis to retain representation, one that does not by itself create a conflict of interest between plaintiffs and their attorney. The motion is based on the attached memorandum, the declaration of counsel, any other matter submitted with the reply or at a hearing (if one is held), and all pleadings and documents on file in this action.

## MEMORANDUM OF POINTS AND AUTHORITIES

Kaiser has a policy of requiring plaintiffs' attorneys to negotiate against their own clients during settlement discussions, to avoid or reduce its liability under Title VII, 42 U.S.C. §2000e *et seq.*, and FEHA, Govt. Code §12900 *et seq.* Among other tactics, Kaiser posits "lump sum" settlement offers simultaneously to resolve both damages and statutory attorneys' fees, and demands that plaintiffs' attorneys waive the right to pursue statutory fees with the Court. Kaiser insists on a global settlement, and argues that counsel's ethical obligations require voluntary compromise on the amount of statutory fees.

In essence, Kaiser attempts to entangle opposing parties and their counsel in an artificial conflict to serve its own financial interests. Kaiser hopes to enlist plaintiffs' counsel in efforts to lower expectations of plaintiffs in the recovery of monetary damages, on the theory that attorneys will do so to secure more money left over in the "lump sum" to pay fees. Similarly, it uses opposing counsel's ethical devotion to the clients to press for a reduction or waiver of fees, on the basis that the clients will thereby recover more – or any – in settlement damages. Kaiser's interest in pitting plaintiffs's counsel against the plaintiffs during settlement is inconsistent with the purposes of Title VII and FEHA, and it runs contrary to the Court's interest in preserving an adversary process for adjudication.

Pursuant to Rule 16 and the Court's inherent authority to control the conduct of attorneys who appear before it, plaintiffs seek an order preventing use of Kaiser's tactics in this case. In order to retain experienced counsel, plaintiffs assigned to the attorney the rights to claim, negotiate and litigate statutory fees. Such assignments are standard practice, and seen as the "usual course" for civil rights attorneys. Plaintiffs have ultimate authority on settlement, but they would be required to pay fees as specified in the agreement if they settle statutory fees without the attorney's consent. Assignments over statutory fees do not in-and-of-themselves create a conflict of interest. Pursuit of the client's claim to damages, and counsel's claim to an award of reasonable attorneys' fees, can proceed together on parallel tracks. But care must be taken so that, in settlement discussions, both claims are pressed on their own merits, against Kaiser, and not against each other.

Plaintiffs also request the Court address contentions raised during settlement discussions over ethical obligations and the compromise of statutory fees below what would be awarded by the Court. Although parties might occasionally disagree over various calculations, the amount of reasonable attorneys' fees under Title VII and FEHA ordinarily should not result in a "second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). That is because fees law imposes application of the adjusted lodestar methodology, providing "an objective basis on which to make an initial estimate of the value of a lawyer's services." *Id*., at 433. *See also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551-552 (2010) (lodestar method "cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results").

Similarly, a dispute over the amount of fees ordinarily should not be an obstacle to settlement. If the parties are able to reach an agreement on the merits, including payment of plaintiffs' damages, any dispute over attorneys' fees should be settled by the parties or determined by the Court. There can be no issue as to the reasonableness of the amount of counsel's fee demands, or of Kaiser's offers, if the parties agree to the Court's ultimate authority to determine fees. Put another way, plaintiffs ask that the Court hold it would be unreasonable for either party to defeat or reject a settlement due to a dispute over statutory fees, unless that party also agrees to determination of fees by motion with the Court.

## BACKGROUND FACTS

**Plaintiffs Were Able to Retain Counsel Because of Statutory Fee Shifting**

As is typical in discrimination actions, plaintiffs required legal representation by experienced counsel, but they were unable to pay high legal fees to lawyers to work on an hourly basis. It was therefore necessary for them to find an attorney willing to take their cases on a contingent basis. Moreover, legal fees in these cases often outpace expected damages. There are limits to the amount of damages, with no corresponding limits on the amount of legal resources Kaiser might require of the attorneys in litigation. Plaintiffs therefore could not have secured representation on a pure-contingency fee based on a percentage of their recovery. Friedman Decl., ¶4.

Fortunately, both Title VII and FEHA include statutory fee-shifting provisions, requiring defendants to pay plaintiffs' reasonable attorneys' fees and costs whenever plaintiffs are the prevailing party. As demonstrated in key decisions by the California Supreme Court, counsel's right to claim and recover fees under FEHA are broader than those under Title VII. *E.g.*, *Flannery v. Prentice*, 26 Cal. 4th 572, 588-590 (2001) (departing from federal law, construing FEHA as vesting ownership of unassigned attorney fees in counsel rather than the litigant); *Ketchum v. Moses*, 24 Cal.4th 1122 (2001) (departing from federal law, authorizing contingent risk multipliers in the calculation of reasonable fees under California law). *See Lindelli v. Town of San Anselmo*, 139 Cal. App. 4th 1499, 1514-1516 (2006) (California protects the "certainty that attorneys who undertake public interest cases will receive compensation").

As explained by the California Supreme Court in *Flannery*: 26 Cal. 4th, at 582-583:

> The basic, underlying purpose of FEHA is to safeguard the right of Californians to seek, obtain, and hold employment without experiencing discrimination on account of race, religious creed, color, national origin, ancestry, physical disability, medical disability, medical condition, marital status, sex, age, or sexual orientation. There is no doubt that "'**privately initiated lawsuits are often essential to the effectuation of the fundamental public policies** embodied in constitutional or statutory provisions,'" and "'**without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible**.'"
>
> Attorneys considering whether to undertake cases that vindicate fundamental public policies may **require statutory assurance** that, **if they obtain a favorable result** for their client, **they will actually receive the reasonable attorney fees** provided for by the Legislature and **computed by the court**. As the high court has recognized, the aim of fee-shifting statutes is "to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific . . . laws. Hence, **if plaintiffs . . . find it possible to engage a lawyer based on the statutory assurance that he will be paid a 'reasonable fee,' the purpose behind the fee-shifting statute has been satisfied."** [Citations omitted, emphasis supplied.]

*See also id*, at 588 n.16 ("allowing lawyers to contract with their clients for an assignment of the right to fees should enhance the public's access to competent counsel") (citation omitted).

**Plaintiffs Assigned to Counsel Rights to Statutory Fees on Precise Terms and With Express Conflict Waivers**

Consistent with the holding in *Flannery*, plaintiffs expressly agreed to an assignment of rights to counsel over statutory fees. In their retainer, plaintiffs agreed:

> All attorneys' fees recovered pursuant to any statutory or common law fee-shifting provisions, Federal and California, for work done in connection with this litigation are property of the attorneys, as provided by California law (*Flannery* v *Prentice*) and shall not be regarded as property of the client. [Friedman Decl., ¶5.]

This assignment, and the potential conflict of interest that might arise during settlement discussions, are spelled out further in the agreement:

> The Court may order, or the parties to the litigation may agree, that the defendants will pay some or all of attorneys' fees, costs, or both. Any such order or agreement will not affect Client's obligations under this agreement except as stated in this Section regarding calculation of the amount of attorneys' fees owed under this agreement and as stated in Section 6. Client agrees that any attorneys' fees that may be recovered from defendants in this case shall belong to Attorneys, to whom Client assigns her rights. Client understands that, under California law, the assignment of these rights may raise a potential conflict of interest between Client and Attorneys in the context of settlement agreements. This includes Attorneys right to claim, negotiate and settle any claim to statutory fees simultaneously with the representation of Client in the prosecution of her claims. Client has been advised of this potential conflict, of her option of seeking additional legal counsel in connection with this conflict, and Client expressly agrees to this assignment. [*Id*. ¶6.]

The retainer agreement also includes an acknowledgment of the contingent nature of the representation, and its impact on the calculation of reasonable fees.

> Client has been given the choice of paying monthly for attorneys' fees on an hourly rate basis and for costs, as an alternative to a contingent fee. Client understands that if she chooses to pay fees on an hourly rate basis, rather than a contingent fee basis, she must pay all fees and costs even if the claims are lost. Clients knowingly and voluntarily agrees to pay fees on a contingent fee basis, or have statutory fees paid at a rate that is a multiple of Attorneys' then-current noncontingency hourly rate (*Ketchum v. Moses*), because fees are not paid before any amount is recovered and Client will not owe any attorneys' fees if she does not prevail against defendants. [*Id*. ¶7.]

In Section 6 – referenced above – the retainer details the agreement between plaintiffs and counsel regarding settlement.

> It is agreed that no settlement of these claims may be made without Client's prior agreement. If, in settlement of this litigation, Client waives the right to recover attorneys' fees, costs or expenses (including partial waivers or compromises) without the consent of Attorneys, Client agrees to pay Attorneys: for waiver of fees, Attorneys' lodestar amount (their then-current hourly rate, as stated in section 5, as of the date of recovery times the number of hours expended on the case) times a contingent-risk multiplier of 2.0; and for waiver of costs, all of the costs advanced by attorneys in this case, whether or not a positive recovery is made by Client. Client understands that this agreement may give rise to potential disputes and conflicts between Attorneys and Client at the time of settlement, and in particular, where the defendants offer a settlement conditioned on the waiver, partial waiver or compromise of fees or costs and Attorneys are unwilling to agree to the waiver, partial waiver or compromise. Client understands that this agreement to pay the difference between Attorneys' statutory fees and costs and the amount of fees and costs paid in settlement may limit, or even nullify Client's recovery, and dissuade her from agreeing to a settlement with the defendants. Client has been advised of the option of seeking additional legal counsel on the topic. Client expressly agrees to this provision because she knows that otherwise Attorneys would be unwilling to enter into this agreement. [*Id*. ¶8.]

To further protect against actual conflicts of interest during settlement discussions, plaintiffs' counsel as a rule refuses to negotiate against his clients over "lump sum" offers. Instead, he first seeks to negotiate a resolution of the client recoveries, independent of the claim to fees. For planning purposes, at the start of settlement discussions counsel may inform defendants or the settlement judge about current hourly rates, time expended and expectations on risk multipliers. In some particular situations, based on specific factors, to facilitate a settlement counsel may communicate a willingness to voluntarily reduce or cap statutory fees. But by and large, he will not attempt to settle his claim to fees while simultaneously representing his clients in discussions over settlement of damages. *Id*. ¶9.

**Kaiser's Policy and Practice During Settlement**

After extensive experience litigating discrimination actions against Kaiser, as well as the failed mediation effort concerning plaintiff Gamble, plaintiffs' counsel can attest to the policy and practice of Kaiser to avoid or reduce its liability by trying to pit plaintiffs' counsel against their own clients during settlement discussions. *Id*. ¶10. Often hidden behind a non-existent veil of "settlement confidentiality," Kaiser:

- Offers "lump sum" settlements covering plaintiffs' damages and counsel's statutory attorneys' fees, insisting that opposing parties and their counsel fight between themselves as to how the "lump sum" should be split.
- Insists that plaintiffs and counsel waive the right to claim statutory attorneys' fees, arguing that counsel is in breach of ethical obligations towards the client if he holds up a settlement due to fees.
- Refuses to negotiate over attorneys' fees in good faith, consistent with the adjusted lodestar methodology required under Title VII and FEHA, while simultaneously it rejects the submission of fees to the Court for determination.

Following the failed mediation effort between Kaiser and plaintiff Gamble, counsel wrote a settlement demand on plaintiff's behalf. Friedman Decl., ¶11, Exh. A. As noted, it was made outside of mediation, and was "confidential" only to the extent required by FRE 408.[1] Therein, counsel separated the discussion over Ms. Gamble's damages and counsel's claim to reasonable fees, demanding the each component be negotiated on its own terms, including fees on then-current rates hourly rates and number of hours then accrued.

Counsel was clear that he would not be put in conflict with his client:

> Although Kaiser may have hoped otherwise, at no point will the attorney and Ms. Gamble be in conflict over settlement. Nor will I ever advise my client based upon my interest in fees, or negotiate against her over settlement funds. [Exh. A, at 3.]

Although Ms. Gamble hoped to engage Kaiser in settlement discussions, or at least obtain an offer of settlement on damages, Kaiser refused to respond. Friedman Decl., ¶11.

---

[1] Federal courts do not recognize a federal settlement privilege precluding disclosure of settlement discussions beyond Rule 408 of the Federal Rules of Evidence. *See Big Baboon Corp. v. Dell, Inc.*, 2010 U.S. Dist. LEXIS 108027, at *14-16 (C.D. Cal. 2010) ("courts in the Ninth Circuit have been reluctant to adopt" a settlement privilege); *Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 582-585 (N.D. Cal. 2008) (party failed "to put forth a persuasive case for a settlement privilege"); *Matsushita Elec. Indus. Co. v. Mediatek, Inc.*, 2007 U.S. Dist. LEXIS 27437, at *12-20 (N.D. Cal. 2007) ("any federal settlement privilege is contrary to the enactment approved by the legislature"). Some federal courts address the mediation privilege recognized in California law, however. *See Folb v. Motion Picture Industry Pension & Health Plans*, 16 F. Supp. 2d 1164 (C.D. Cal. 1998), *aff'd,* 216 F.3d 1082 (2000). Because the settlement discussions took place before a neutral prior to removal, Kaiser's statements made during mediation are not revealed here.

# LEGAL AUTHORITY

Rule 16 authorizes the Court to enter an order effecting the parties' settlement discussions when necessary to facilitate resolution. As Judge Clark stated in his dissent in *Panola Land Buying Asso. v. Clark*, 844 F.2d 1506, 1518-20 (11th Cir. 1988), "[o]nce settlement negotiations stall because of a party's intransigence on a given issue, a district judge does not remain indifferent to the settlement process." This is made clear by the 1983 amendments to Rule 16.

> The amended rule refers explicitly to settlement in two places: Rule 16(a)(5) makes "facilitating . . . settlement" an "objective" of pretrial conferences; and Rule 16(c)(7) makes "the possibility of settlement or the use of extrajudicial procedures to resolve the dispute" a "Subject to be Discussed at Pretrial Conferences." As the advisory committee notes indicate, the 1983 amendment was necessary to "meet the challenge of modern litigation." Fed.R.Civ.P. 16 advisory committee's note. Empirical studies reveal, as the committee explained, that "efficient disposition of cases by 'settlement or trial' is more likely when a trial judge intervenes personally." *Id*. Although Rule 16 does not require settlement negotiations, it does express a clear preference for encouragement and facilitation of settlements. *Id*. [*Id*.]

Rule 16 is particularly appropriate basis to inquire into one party's intransigent position regarding statutory attorneys' fees. As Judge Clark recognized, it is

> proper to invoke the court's Rule 16 powers when settlement negotiations stalled because [one party] demanded that [the opposing party] waive its right to attorney's fees. As one commentator has recognized, a pretrial conference sought pursuant to Rule 16 is **perhaps the best vehicle** through which a party can call the court's attention to the fact that an opposing litigant has assumed an unreasonable settlement posture." [*Id*. (emphasis supplied) (citing Goldstein, Settlement Offers Contingent Upon Waiver of Attorney's Fees: A Continuing Dilemma After *Evans v. Jeff D*., 20 *Clearinghouse Rev*. 693, 698 (Oct. 1986) ("If plaintiffs' counsel believes he or she is unreasonably being asked to sacrifice a fee, counsel should feel no hesitation about bringing the matter to the attention of the court. Rule 16 of the Federal Rules of Civil Procedure, the pretrial conference rule, gives the court the authority to address the issue").]

*See also Moore v. Nat'l Asso. of Sec. Dealers, Inc*., 762 F.2d 1093, 1104 (1985) (discussing the distinction between plaintiff-suggested waiver and defendant-coerced waiver of fees, and stating "any unreasonable conduct that arises will be kept in check through the district court's exercise of its Rule 16 and 23 powers if promptly brought to the court's attention).

In addition, the Court possesses inherent authority to govern the conduct of attorneys who appear before it. As explained by the Supreme Court:

> It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution" . . . . For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." These powers are "governed . . . by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." [*Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (citations omitted).]

This authority extends to measures "against conflicts of interest when they arise 'in connection with any proceedings before it." *United States v. Roark*, 288 F. App'x 182, 186-87 (5th Cir. 2008) (citation omitted). *See Erickson v. Newmar Corp.*, 87 F.3d 298, 300 (9th Cir. 1996) ("The district court has the duty and responsibility of supervising the conduct of attorneys who appear before it"); *Trust Corp. of Mont. v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983) ("The district court has the responsibility for controlling the conduct of attorneys practicing before it"); *Jenkins v. Missouri*, 931 F.2d 470, 484-85 (8th Cir. 1991) ("the district court bears responsibility for supervision of the members of its bar").

Such authority arises most often in motions to disqualify counsel – a request not made by plaintiffs or Kaiser. Indeed, while non-clients may under limited circumstances seek to disqualify opposing counsel because of an alleged "conflict," those circumstances are absent from this putative class action here. *See Andrews Farms v. Calcot, Ltd.*, 2010 U.S. Dist. LEXIS 111656, at *5-7 (E.D. Cal. 2010) ("Eadie has not shown how counsel's representation of the class detrimentally affects Eadie's interest in a just and fair determination of this case"); *Xcentric Ventures, LLC v. Stanley*, 2007 U.S. Dist. LEXIS 55459, at *6 (D. Ariz. 2007) ("The Ninth Circuit has indicated that it has 'difficulty seeing how [an opposing party] has standing to complain about a possible conflict of interest . . . having nothing to do with her own representation'") (citing *Kasza v. Browner*, 133 F.3d 1159, 1171 (9th Cir. 1998)). That same inherent authority empowers the Court to enter lawful orders to protect against actual conflicts during settlement discussions, and to curb the use of counsel's ethical obligations to gain a tactical advantage in the litigation.

# ARGUMENT

## I. Assignment of Rights to Statutory Fees is a Reasonable Basis to Retain Attorneys and Does Not In and Of Itself Create a Conflict of Interest

As set forth above, under *Flannery* and California law, plaintiffs are encouraged to assign rights over statutory fees to retain qualified attorneys, and absent a written agreement between client and attorney, the FEHA statute itself assigns those rights to the lawyer. Even under federal law, such written assignments are the "usual course." *Gordon v. City of New York*, 2015 U.S. Dist. LEXIS 44271, *12-13 (E.D.N.Y. 2015). In *Gordon*, the district court recognized the federal rule (contrary to *Flannery*) that prevailing *parties* – not counsel – are entitled to seek fees, but it still went on to hold: "this principle does not preclude plaintiff from granting her attorney the authority to negotiate both the amount of her damages and the counsel's fees to which he would be entitled. Plaintiff is entitled to attorney's fees solely for the purpose of compensating her attorney."

> [I]n the usual course, the stipulation of settlement provides – as it did in this case – for the payment of the entire amount of the settlement to the attorney, and directs him to deliver payment to the plaintiff in the amount she agreed to accept. As the Supreme Court observed in Astrue v. Ratliff,[2] "attorneys are the beneficiaries, and, almost always, the ultimate recipients of the fees that the statute awards to 'prevailing parties.'" This is particularly true where, as here, the attorney is entitled to payment under a retainer agreement. Consequently, this line of cases does not preclude a plaintiff from authorizing her attorney to enter into an agreement to settle her claims for a set amount of damages and attorney's fees that he separately negotiates. [*Id*. (citation omitted).

Thus, whether assignment of rights is by statute or contract, there is no conflict for the attorney to gain an interest in the fee-shifting remedy set up by Title VII and FEHA for the purpose of attracting him in the first instance to take the cases. *See also Valley Disposal Inc. v. Central Vt. Solid Waste Mgmt. Dist.*, 113 F.3d 357, 362 (2d Cir. 1997) (fee-shifting statutes may "implicitly grant[] the prevailing party's attorney[] a lien on the fee award").

---

[2] *Astrue v. Ratliff,* 560 U.S. 586 (2010) – like *United States v. Kim*, 806 F.3d 1161 (9th Cir. 2015) – involved attorneys fees awarded against the government under the Equal Access to Justice Act (EAJA). In such cases, the Anti-Assignment Act, 31 U.S.C. § 3727, invalidates assignment of statutory fee awards to the attorney, quashing the right "to be paid directly from the United States Treasury." *Kim*, 806 F.3d at 1164-65. That is not the case here, where the fees would be recovered against Kaiser, a private entity.

## II. Kaiser Need Not Concern Itself with Opposing Counsel's Contractual Relationship with Plaintiffs over Fees

In an effort to pit plaintiffs' attorney against his own clients, Kaiser insists that counsel looks to plaintiffs' recoveries to obtain partial or complete compensation for fees. In essence, rather than negotiate reasonable attorneys' fees according to the adjusted lodestar methodology, Kaiser seeks to diminish its own liability for fees by taking into account any contingency percentage agreement between plaintiffs and the attorney.

Such a tactic during settlement discussions is misguided, and it underscores Kaiser's unwillingness to submit disputes over fees to the Court for fair resolution. As found by every court to consider the question since *Venegas v. Mitchell*, 495 U.S. 82 (1990), defendants' obligation to pay reasonable fees is not impacted by the contractual relationship between opposing counsel and their clients. As one district court put it:

> The existence of a contingent fee agreement between [plaintiff] and his counsel does not justify reducing the lodestar amount of attorneys' fees owed by the Defendant ... By its nature, fee-shifting is designed to shift all of the costs (including attorney fees) to the loser in an action. The fact that the winner's attorneys receive compensation from another source is irrelevant to the fee award. [*United States ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.*, 793 F. Supp. 2d 1260, 1264-65 (D. Colo. 2011).]

*See also Quesada v. Thomason*, 850 F.2d 537, 543 (9th Cir. 1988) (defendant "should not benefit from the private [contingency fee] agreement by being permitted to pay anything less than . . . an otherwise reasonable lodestar fee"); *Certain v. Potter*, 330 F. Supp. 2d 576, 589 (M.D.N.C. 2004) (that counsel "might ultimately receive both the fee award and a contingency fee is not relevant to the question before this Court").

## III. Counsel has No Ethical Obligation to Accept an Unreasonable Compromise of Statutory Fees

Plaintiffs's counsel asks the Court to address and reject Kaiser's contention that counsel is ethically required to effectuate settlements to which Kaiser and the plaintiffs might agree, by compromising and waiving fees. By negotiating plaintiffs' damages separate and independent from the claim to statutory fees, plaintiffs' counsel can engage in conflict-protected negotiations. But respect should still be given to counsel's assignment, and his right to negotiate fees with no duty to compromise to facilitate settlement. *See Del*

*Rio v. Northern Blower Co.*, 574 F.2d 23, 26 (1st Cir. 1978) ("There is no duty, however, to settle cases, or to reduce one's claims. Nor does the orderly administration of justice require a party to contribute to someone else's settlement").[3]

Although the point is valid, it should not be overstated. Counsel does not ask for any sort of unfettered license to engage in unreasonable settlement demands over fees. The potential for actual conflict exists in the assignment and settlement context, and it is on that basis that counsel seeks an order which limits the manner of settlement discussions in this case. One could conceive of facts where plaintiffs' counsel demands excessive fees, and refuses either to approve of a settlement or submit the matter of fees to the Court for judicial determination. While the Court may address and reject Kaiser's contention regarding counsel's purported ethical obligations to compromise, the Court may also hold it would be unreasonable for counsel to reject or defeat a settlement due a dispute over fees, if counsel is not also willing to submit the matter of fees by motion.

The same applies to Kaiser and its attorneys. In settlement discussions, Kaiser is free to negotiate with plaintiffs over amounts for damages as it sees fit, with no obligation to settle the case or increase its offers. However, in the event that agreements are reached on the merits – including plaintiffs' damages – it would be unreasonable for Kaiser to reject or defeat a settlement due to an unreasonably low offer for statutory fees. If Kaiser believes that its offers on fees are reasonable, and that counsel's fee demands are unreasonable, the settlement should go through, and the matter of fees should be determined by the Court.

In sum, it would be unreasonable for counsel on either side to defeat a settlement in this case due to a dispute over fees, unless that party is also willing to carve out the issue of fees, and submit the dispute to the Court for resolution consistent with Title VII and FEHA.

---

[3]This point may be too obvious to make. While a settlement judge might encourage an attorney to examine flaws and weaknesses in a fee claim, no directive should be given that the attorney be paid less to make way for a larger, or any, settlement for the client. Reduced or discounted fees in order to increase plaintiffs' recoveries are not demanded of defense counsel, or of mediators, both paid to participate in settlement discussions. Counsel may choose voluntarily to reduce or cap fees in particular cases, but attorneys participating in the judicial settlement process should not demand discounted fees by the very counsel which the legislature sought to attract by way of the statutory fee-shifting provision.

## IV. Kaiser's Right to Determine its Global Liability Does Not Permit it To Engage in Settlement Tactics Designed to Pit Attorneys against Clients

As support for its effort to negotiate simultaneously a settlement of both merits and fees, Kaiser relies on the decision in *Evans v. Jeff D*., 475 U.S. 717 (1986). There, the Supreme Court held district courts are not required to reject all fee waivers in class action settlements under federal civil rights laws, and it was not an abuse of discretion for the district court to approve of the waiver there. 475 U.S. at 729-730. This ruling was predicated on the policy of encouraging settlements. As the high court noted, defendants are more likely to settle when they can determine fees liability through a global settlement.

> If fee waivers cannot be negotiated, the settlement package must either contain an attorney's fee component of potentially large and typically uncertain magnitude, or else the parties must agree to have the fee fixed by the court. Although either of these alternatives may well be acceptable in many cases, there surely is a significant number in which neither alternative will be as satisfactory as a decision to try the entire case. *Id*., at 734.

As such, the Court refused to interpret the Fees Act as embodying a general rule barring settlements conditioned on the waiver of fees. *Id*., at 737-738.

At least three reasons exist why *Evans v. Jeff D.* is inapposite here. First, that case was decided on its particular facts, which distinguish it from this case. In its ruling, the Court did not permit negotiation of fee waivers in all cases. To the contrary, the Court considered arguments by the parties and *amici* – finding them stated "remarkably [with] little disagreement" – that fee waivers adopted as a uniform policy or practice, imposed for vindictive purposes or required in cases where the defendant is without a "realistic defense" should be disapproved. *Id*., at 739. Because respondents had not offered sufficient proof on petitioner's "tactics" *in that case*, the Court reversed the Ninth Circuit and reinstated the district court's approval of the settlement. *Id*., at 740. Rather than lay down a rule that fee waivers may be demanded by defendants in all cases, the high court reaffirmed the responsibility of district courts to scrutinize class settlement fee waivers on a "case-by-case basis." *Id*., at 742.

Second, it is doubtful that the holding in *Evans v. Jeff D.* applies to FEHA. *Jeff D.* was based upon an interpretation of §1988, where the majority refused to recognize the important public policy of attracting competent counsel to accept federal civil rights litigation. The California Supreme Court in *Flannery,* 26 Cal. 4th at 588-590, however, noted state law departs from federal law when it comes to attorneys' fees. In *Flannery*, the Court refused to follow the logic of *Jeff D.*, and it held that fees paid pursuant to FEHA's fee-shifting statute belong to the attorney, not the client, even in the absence of a fee agreement assigning statutory fees to the attorney.

As applied to FEHA, fee waivers required in settlement agreements must be scrutinized to ensure they are not negotiated in a fashion which undermines the purposes of the Act. Because the underlying lawsuit – initially filed in state court but removed here by Kaiser – contains FEHA claims, and counsel's fee claim would be predicated in part on the state statute, the ruling in *Jeff D.* simply does not control.[4]

Third, even if the holding in *Evans v. Jeff D.* applied to counsel's fee claim under FEHA, the majority in that case condoned only *simultaneous* settlement negotiations, not "lump sum" settlement offers. While Kaiser might reasonably want to know its ultimate liability in a global settlement, it cannot be permitted under rules of ethics and reasonable conduct to pit plaintiffs' counsel against plaintiffs. Parties may sometimes be able to negotiate damages and fees in a global settlement, so long as each component is negotiated on its own merit, preferably in a sequential fashion. But Kaiser's legitimate interest in simultaneous global resolution should not be equated with its illegitimate motive in paying unreasonably low fees. As with plaintiffs' counsel, Kaiser's attorneys should not be permitted to demand an unreasonable compromise of counsel's attorneys' fees without also agreeing to the Court's judicial determination of those statutory fees.

---

[4] In post-*Jeff D.* cases not involving §1988 fees, courts have voided fee waivers when it is necessary to do so to protect the statutes. *See*, *e.g.*, *Johnson v. District of Columbia*, 190 F. Supp. 2d 34 (D.D.C. 2002) (policy or practice of requiring fee waiver violates IDEA); *Panola Land Buying Asso. v. Clark*, *supra* (evaluating fee waivers under EAJA); *In re Marriage of Joseph*, 217 Cal. App. 3d 1277, 1280 (1990) (invalidated fee waiver in settlement agreement on dissolution of marriage).

Rule 16 Motion re Settlement Posture – Page 14

If plaintiffs' counsel is able to reach a settlement agreement on the merits of the case – including damages to named plaintiffs – he will be entitled to recover reasonable statutory fees. *See Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002) ("Under applicable Ninth Circuit law, a plaintiff 'prevails' when he or she enters into a legally enforceable settlement agreement against the defendant"); *Folsom v. Butte Cty. Ass'n of Gov'ts*, 32 Cal. 3d 668, 671 (1982) ("a claimant settling a lawsuit may be a 'successful party'" entitled to recover fees). At that stage, the parties should attempt to settle any claim to fees, according to the adjusted lodestar methodology laid out in settled law. Failing a mutual resolution on amounts, the dispute over fees should be submitted to the Court for resolution. In this case, it would be unreasonable for either party to foreclose a merits settlement based upon an unresolvable disagreement over attorney fees.

## CONCLUSION

For the foregoing reasons, plaintiffs request that the Court issue an order concerning the parties' settlement posture, and hold:

1. To protect against any actual conflict of interest between plaintiffs and their attorney, during any settlement discussions attorneys for the parties should attempt to negotiate plaintiffs' damages separate from statutory attorney fees.
2. In the event that the parties reach an agreement on plaintiffs' damages, if the attorneys are unable to reach an agreement on reasonable statutory attorneys' fees, that issue should be submitted to the Court for resolution.

Respectfully submitted,

Dated: May 22, 2019　　　　　　LAW OFFICE OF JEREMY L. FRIEDMAN

By: /s/Jeremy L. Friedman
Jeremy L. Friedman
Attorney for plaintiff Lunell Gamble

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed with the Clerk of the Court for the Northern District of California, by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<span style="margin-left:3em">/s/ Jeremy L. Friedman</span>
<span style="margin-left:3em">Jeremy L. Friedman</span>