1  HEATHER A. MORGAN (SB# 177425)
   AMANDA BOLLIGER (SB# 250292)
2  TARA M. DUESTER (SB# 265622)
   heathermorgan@gbgllp.com
3  amandabolliger@gbgllp.com
   taraduester@gbgllp.com
4  GBG LLP
   633 West 5th Street, Suite 3330
5  Los Angeles, CA  90071
   Telephone:  (213) 358-2810
6  Facsimile:  (213) 995-6382

7  Attorneys for Defendants
   KAISER FOUNDATION HEALTH PLAN, INC.;
8  KAISER FOUNDATION HOSPITALS; and
   THE PERMANENTE MEDICAL GROUP, INC.

9

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12

13  LUNELL GAMBLE, and SHEILA KENNEDY,      Case No. 17-cv-06621-YGR
    on behalf of themselves as well as a class of
14  similarly situated individuals,              **DEFENDANTS KAISER FOUNDATION
                                                 HEALTH PLAN, INC.; KAISER
15              Plaintiffs,                       FOUNDATION HOSPITALS; and THE
                                                 PERMANENTE MEDICAL GROUP,
16       vs.                                      INC.'S MEMORANDUM IN OPPOSITION
                                                 TO PLAINTIFFS' RULE 16 MOTION
17  KAISER FOUNDATION HEALTH PLAN,              FOR AN ORDER ADDRESSING
    INC.; KAISER FOUNDATION HOSPITALS,          SETTLEMENT POSTURE AND
18  INC.; and THE PERMANENTE MEDICAL            POTENTIAL CONFLICT OF INTERESTS**
    GROUP; all doing business as KAISER
19  PERMANENTE MEDICAL CARE
    PROGRAM,                                     Date:      TBA, per Dkt. 103
20                                               Time:      TBA, per Dkt. 103
                Defendants.                      Judge      Hon. Yvonne Gonzalez Rogers
21                                               Courtroom:  1

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     PLAINTIFFS' REQUESTS CONTRADICT BINDING PRECEDENT, MUCH
        OF WHICH PLAINTIFFS FAIL TO CITE.......................................................... 2

        A.      Plaintiffs' Motion Asks the Court to Require Defendants to Accept
                Settlement Terms To Which They Have Not Agreed In Violation of
                Binding Precedent ................................................................................... 2

        B.      Plaintiffs' Request to Presumptively Disallow Any Lump-Sum Settlement
                Contradicts Binding Precedent................................................................. 4

                1.      Plaintiffs Fail to Distinguish the Supreme Court's Holding in *Evans*.......4

                2.      In a Case that Plaintiffs Fail to Cite, The Ninth Circuit Held That a Policy
                        of Settling Claims on a Lump-Sum Basis Caused No Harm to Plaintiff's
                        Counsel.................................................................................6

                3.      California Courts Likewise Have Declined to Find Lump-Sum Settlements
                        Unlawful.....................................................................................8

        C.      Contrary to the Court's Role to Facilitate Settlement Under FRCP 16,
                Plaintiffs' Request Would Discourage Settlement Negotiations ........................... 9

III.    PLAINTIFFS ALLEGE A POTENTIAL CONFLICT OF INTEREST WITHOUT
        PROVIDING SUFFICIENT FACTS TO MAKE THE ISSUE RIPE FOR
        REVIEW ........................................................................................................... 12

        A.      Defendants Have Never Alleged Nor Sought to Create Any Conflict of
                Interest Between Plaintiffs and Their Counsel......................................... 12

        B.      If Plaintiffs' Counsel Develops an Ethical Dilemma With His Clients, It
                Would Arise From His Own Future Conduct ........................................... 14

        C.      Whether Plaintiffs' Counsel's Settlement Conduct Will Create an Actual or
                Non-Waivable Conflict of Interest Is Not Ripe for Review ................... 16

IV.     OBJECTIONS TO DECLARATION OF COUNSEL ...................................... 17

V.      CONCLUSION ................................................................................................. 21

# TABLE OF AUTHORITIES

**Cases**

*Ambat v. City & Cty. of San Francisco*,
  2011 WL 2118576 (N.D. Cal. May 27, 2011) ........................................................ 7, 11

*Apple Computer, Inc. v. Superior Court*,
  126 Cal. App. 4th 1253 (2005) ................................................................................... 9

*Berne v. Kaiser Found. Health Plan Inc.*,
  719 F. App'x 651 (9th Cir. 2018) ......................................................................... 6, 10

*Earth Island Inst. v. Ruthenbeck*,
  490 F.3d 687 (9th Cir. 2007) .................................................................................... 16

*Evans v. Jeff D.*,
  475 U.S. 717 (1986) ........................................................................................... *passim*

*Flannery v. Prentice*,
  26 Cal. 4th 572 (2001) ............................................................................................... 8

*Flast v. Cohen*,
  392 U.S. 83 (1968) .................................................................................................... 16

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................................ 1, 2

*Hill v. Kaiser Found. Health Plan*,
  2015 WL 5138561 (N.D. Cal. Sept. 1, 2015) ................................................... *passim*

*In re Michaelson*,
  511 F.2d 882 (9th Cir. 1975) ........................................................................... 2, 16, 17

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  835 F.3d 1155 (9th Cir. 2016) .................................................................................. 20

*Marek v. Chesny*,
  473 U.S. 1 (1985) ................................................................................................. 5, 10

*Mkay Inc. v. City of Huntington Park*,
  2019 WL 1751823 (C.D. Cal. Mar. 7, 2019) ........................................................... 12

*Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*,
  762 F.2d 1093 (D.C. Cir. 1985) ................................................................................. 8

*Panola Land Buying Ass'n v. Clark*,
  844 F.2d 1506 (11th Cir. 1988) ................................................................................. 7

*Pony v. Cty. of Los Angeles*,
  433 F.3d 1138 (9th Cir. 2006) ................................................................................ 6, 7

*Preiser v. Newkirk*,
  422 U.S. 395 (1975) .................................................................................................. 16

Case No. 17-cv-06621-YGR                    -ii-              DEFENDANTS' OPPOSITION TO PLAINTIFFS'
                                                             RULE 16 MOTION RE SETTLEMENT POSTURE
                                                             AND POTENTIAL CONFLICT OF INTERESTS

88691505.3

1

## TABLE OF AUTHORITIES
### (cont.)

2

**Cases**

3

*Ramirez v. Sturdevant*,
  21 Cal. App. 4th 904 (1994) ............................................................................. 9, 14

*Rio v. Northern Blower Co.*,
  574 F.2d 23 (1st Cir. 1978) .................................................................................... 15

*Sinyard v. Comm'r*,
  268 F.3d 756 (9th Cir. 2001) .................................................................................... 7

*Sream, Inc. v. Sahebzada*,
  2019 WL 2180224 (N.D. Cal. Mar. 6, 2019) ......................................................... 11

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .................................................................................. 16

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ............................................................................................... 16

*United States v. Roark*,
  288 F. App'x 182 (5th Cir. 2008) ............................................................................. 4

**Statutes**

42 U.S.C. § 1981 ............................................................................................................ 7

42 U.S.C. § 1988 ............................................................................................................ 7

**Rules**

Business & Professions Code Section 6103.5 ................................................................ 8

California Rule of Professional Conduct 3-510 ............................................................... 8

California Rule of Professional Conduct Section 1.0.1 ................................................. 15

California Rule of Professional Conduct Section 3-310 (1992-2018) .......................... 15

Federal Rule of Civil Procedure 16 ..................................................................... 1, 9, 12

Federal Rule of Evidence 106 ...................................................................... 17, 18, 19

Federal Rule of Evidence 501 ...................................................................................... 20

Federal Rule of Evidence 602 ...................................................................................... 20

Federal Rule of Evidence 802 ...................................................................... 17, 18, 19

Federal Rule of Evidence 1002 .................................................................... 17, 18, 19

28

1

## I.     **INTRODUCTION**

2

Plaintiffs' novel and confused motion requests that the Court rule that, "In the event that

3

the parties reach an agreement on plaintiffs' damages, if the attorneys are unable to reach an

4

agreement on reasonable statutory attorneys' fees, that issue should be submitted to the Court for

5

resolution." Dkt. 110 at 19:18-20.  The Court should reject this request, and thus Plaintiffs' entire

6

motion should be denied.  Any other result would amount to the Court interposing settlement

7

terms to which Defendants have never—and will never—agree.  And as the Court well knows, no

8

court has the authority to dictate settlement terms.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

9

1026 (9th Cir. 1998) ("Neither the district court nor [the United States Court of Appeals] have the

10

ability to delete, modify or substitute certain [settlement] provisions.") (citations and internal

11

quotation marks omitted).

12

Plaintiffs attempt to justify their request by: (1) alluding that lump-sum settlement offers

13

and fee waivers are unlawful; and (2) accusing Defendants of "pitting plaintiffs' counsel against

14

the plaintiffs during settlement" (Dkt. 110 at 6:15-16) and using Plaintiffs' "counsel's ethical

15

obligations to gain a tactical advantage in the litigation" (*id.* at 13:28).  But binding precedent

16

holds to the contrary, showing Plaintiffs' claims to be hollow and misguided.  For example, the

17

United States Supreme Court noted the benefits of lump-sum settlement offers, referring to them

18

as "package offer[s]" that provide "comprehensive negotiation of all outstanding issues" without

19

which many settlements could never be reached.  *Evans v. Jeff D.*, 475 U.S. 717, 733 (1986).

20

And the record demonstrates that any conflict that Plaintiffs' counsel may have with his clients

21

has been caused not by Defendants, but by counsel's own retainer agreement.  *See* Dkt. 110 at

22

10:6-9 (Plaintiffs' counsel's retainer agreement: "Client understands that this agreement may give

23

rise to potential disputes and conflicts between Attorneys and Client[.]").

24

Moreover, Plaintiffs' request, if granted, would foreclose any possibility of settling this

25

case, because it would prohibit complete resolution of all outstanding issues.  Such an order by

26

the Court would undermine the Court's responsibility to "faciliat[e] settlement."  Fed. R. Civ.

27

P. 16.

28

Finally, to the extent Plaintiffs seek a ruling from the Court regarding whether Plaintiffs' counsel and his clients have an *actual* conflict, and not just a potential conflict, this case is in far too premature of a stage for the Court to rule one way or the other.  Courts do not have authority to issue such advisory opinions.  *See In re Michaelson*, 511 F.2d 882, 893 (9th Cir. 1975) (holding that "it would be constitutionally improper for us to reach [a] question" where "the issue lacks the necessary facts to make it concrete…This Court does not intend to, and cannot, issue an advisory opinion on a hypothetical fact situation."). Taken together, Plaintiffs' motion has no merit and should be denied.

## II.    PLAINTIFFS' REQUESTS CONTRADICT BINDING PRECEDENT, MUCH OF WHICH PLAINTIFFS FAIL TO CITE

### A.    Plaintiffs' Motion Asks the Court to Require Defendants to Accept Settlement Terms To Which They Have Not Agreed In Violation of Binding Precedent

Pursuant to binding authority from the Ninth Circuit and U.S. Supreme Court, no court has the authority to dictate settlement terms.  "Neither the district court nor [the United States Court of Appeals] have the ability to delete, modify or substitute certain [settlement] provisions.  The settlement must stand or fall in its entirety."  *Hanlon*, 150 F.3d at 1026 (citations and internal quotation marks omitted).  The fact that this is a putative class action in which the Court has power to approve or reject a class settlement does not alter the analysis.  The U.S. Supreme Court recognized long ago that "the [court's] power to approve or reject a [class] settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed."  *Evans.*, 475 U.S. at 726.  The Court specifically held that "[t]he District Court could not enforce the settlement on the merits and award attorney's fees any more than it could, in a situation in which the [plaintiff's] attorney had negotiated a large fee at the expense of the plaintiff class, preserve the fee award and order greater relief on the merits."[1]  *Id.* at 727.

Notably, Plaintiffs fail to cite *Hanlon* (or its progeny) in their Motion and likewise ignore the key holding from *Evans*.  Instead, Plaintiffs claim they "do not seek to require the parties to

---

[1] As discussed below in Section III.C., there is no proposed class settlement in this case, and the issues Plaintiffs put before the Court in their Motion are premature and not ripe for resolution.

1   enter into a settlement, or to agree to any particular settlement terms." Dkt. 110 at 5:12-13.

2   Defendants disagree. In fact, Plaintiffs ask the Court to do exactly that. Specifically, Plaintiffs

3   ask the Court to confirm that it will force a settlement to "go through" (*see id.* at 16:20) even if

4   Defendants and Plaintiffs have failed to reach an agreement as to all settlement terms. Elsewhere

5   Plaintiffs state: "[I]n the event that agreements are reached on the merits – including plaintiffs'

6   damages – it would be unreasonable for [Defendants] to reject or defeat a settlement due to an

7   unreasonably low offer for statutory fees." *Id.* at 16:16-18. In other words, the crux of Plaintiffs'

8   Motion seeks a ruling from the Court that Defendants only have the power to decide settlement

9   terms as to damages, but not other settlement terms such as attorneys' fees. Plaintiffs' request

10  would amount to modifying or substituting settlement provisions (*i.e.*, modifying the partial

11  damages settlement to substitute or add a term to dispose of attorneys' fees despite the parties

12  never agreeing to that term). That squarely violates the proposition from *Hanlon* that a settlement

13  must stand or fall in its entirety.

14      Plaintiffs also ask this Court to do exactly what *Evans* forecloses—to "hold it would be

15  unreasonable for either party to defeat or reject a settlement due to a dispute over statutory fees,

16  unless that party also agrees to determination of fees by motion with the Court." Dkt. 110 at

17  7:16-18; *id*. at 19:18-20 ("In the event that the parties reach an agreement on plaintiffs' damages,

18  if the attorneys are unable to reach an agreement on reasonable statutory attorneys' fees, that

19  issue should be submitted to the Court for resolution."). In other words, Plaintiffs ask the Court

20  to "enforce the settlement on the merits and award attorney's fees" through motion practice,

21  exactly what *Evans* found improper. *Evans*, 475 U.S. at 727. Such an order would be unlawful

22  because it would "require the parties to accept a settlement to which they have not agreed." *Id.* at

23  726. Plaintiffs ignore this key holding from *Evans* in their Motion and fail to explain how the

24  order they seek could be compatible with it. It cannot.

25      Instead, Plaintiffs cite a litany of cases—predominantly out of Circuit or unpublished

26  opinions (or both)—to support the proposition that, "the Court possess[es] inherent authority to

27  govern the conduct of attorneys who appear before it." *See* Dkt. 110 at 13:1-28. These cases

28

have no bearing on the issues presently before the Court.  To the extent Plaintiffs argue that "a district court is obliged to take measures against unethical conduct occurring in connection with any proceeding before it," Defendants do not disagree.  *See United States v. Roark*, 288 F. App'x 182, 186 (5th Cir. 2008) (unpublished).  However, as Defendants discuss in Section II.B., a party who offers a lump-sum settlement does nothing unlawful or unethical.  Rather, it is Plaintiffs' counsel who alleges that he has created potential conflicts with his own clients by virtue of his retainer agreement.  *See* Section III.B.

**B.**      <u>**Plaintiffs' Request to Presumptively Disallow Any Lump-Sum Settlement**</u>
            <u>**Contradicts Binding Precedent**</u>

**1.**      **Plaintiffs Fail to Distinguish the Supreme Court's Holding in *Evans*.**

Plaintiffs also ask the Court to order the parties to negotiate settlement of Plaintiffs' damages separate from statutory attorneys' fees.  Dkt. 110 at 5:6-8.  However, the Supreme Court held in *Evans* that it is not unlawful to condition settlement of civil rights claims on a plaintiff's waiver of statutory attorneys' fees:

> What the outcome of this settlement illustrates is that the Fees Act has given the victims of civil rights violations a powerful weapon that improves their ability to employ counsel, to obtain access to the courts, and thereafter to vindicate their rights by means of settlement or trial.  For aught that appears, it was the "coercive" effect of respondents' statutory right to seek a fee award that motivated petitioners' exceptionally generous offer.  Whether this weapon might be even more powerful if fee waivers were prohibited in cases like this is another question, but it is in any event a question that Congress is best equipped to answer.  Thus far, the Legislature has not commanded that fees be paid whenever a case is settled.  Unless it issues such a command, we shall rely primarily on the sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in the light of all the relevant circumstances.

*Evans*, 475 U.S. at 741-42.

Plaintiffs acknowledge the *Evans* holding that refused to bar settlements conditioned on the waiver of fees (Motion 17:14-15), but argue that holding does not apply here.  Plaintiffs' arguments lack merit.  First, Plaintiffs incorrectly assert that *Evans* did not condone "lump sum" settlement offers.  *See* Dkt 110 at 18:14-24.  In fact, the Supreme Court cited its prior opinion in

Case No. 17-cv-06621-YGR                    -4-           DEFENDANTS' OPPOSITION TO PLAINTIFFS'
                                                                        RULE 16 MOTION RE SETTLEMENT POSTURE
                                                                        AND POTENTIAL CONFLICT OF INTERESTS

88691505.3

1   *Marek v. Chesny*, 473 U.S. 1 at \*\*6-7 (1985), to discuss approvingly the benefits of lump-sum

2   settlement offers. *Evans*, 475 U.S. at 733. The Court noted that such "package offer[s]" provide

3   "comprehensive negotiation of all outstanding issues" without which many settlements could

4   never be reached.[2] *Id.*

5           Next, Plaintiffs argue that *Evans* did not "lay down a rule that fee waivers may be

6   demanded by defendants in all cases" and instead "reaffirmed the responsibility of district courts

7   to scrutinize class settlement fee waivers on a case-by-case basis." Dkt. 110 at 17:24-27.

8   Defendants have never taken such an extreme position that "fee waivers may be demanded by

9   defendants in all cases." *Id.* Rather, it is Plaintiffs who advocate an extreme position by

10   requesting an order that presumptively *disallows* any settlement offer that is conditioned upon a

11   waiver of attorneys' fees. Plaintiffs ask the Court to render this ruling *before* the parties have

12   even attended a settlement conference, at a time when no settlement offer from Defendants has

13   been presented. Given the minimal settlement history, it is not possible for the Court to

14   "scrutinize" (*see id.* at 17:26) any hypothetical fee waiver on a case-by-case basis at this time.

15           Notably, as discussed in prior briefing before this Court, Plaintiffs' counsel advanced

16   similar arguments after settling a prior case against the same Defendants and those arguments

17   were rejected by the Northern District of California and the Ninth Circuit. There, Plaintiffs'

18   counsel argued that "[Kaiser] manipulated the settlement process to deny him his reasonable fee,

19   drove a wedge between him and the plaintiffs, and induced the plaintiffs to force him to reduce

20   his fees"; and that this conduct "undermined the purpose of FEHA, violated the standards in

21   [*Evans v. Jeff D*., 475 U.S. 717 (1986), and was meant to dissuade him from representing clients

22   or reporting information gained in the litigation to the EEOC and the California's Department of

23   Fair Employment and Housing." *Hill v. Kaiser Found. Health Plan*, No. 3:10-CV-02833-LB,

24   2015 WL 5138561, at \*5, 8, 11 (N.D. Cal. Sept. 1, 2015). The Northern District of California

25   rejected his arguments: "[T]he court disagrees that Kaiser did anything inappropriate . . .

26   Mr. Friedman's allegations about Kaiser's conduct do not support the court's exercise of its

27

28

---

[2] The negative ramifications of Plaintiffs' request and the deleterious impacts on settlement possibilities are discussed below in Section II.C.

Case No. 17-cv-06621-YGR       -5-       DEFENDANTS' OPPOSITION TO PLAINTIFFS' RULE 16 MOTION RE SETTLEMENT POSTURE AND POTENTIAL CONFLICT OF INTERESTS

88691505.3

1  ancillary jurisdiction or an award of more fees." *Id.* at *11.  That decision was affirmed on appeal

2  by the Ninth Circuit.  *Berne v. Kaiser Found. Health Plan Inc*., 719 F. App'x 651, 652 (9th Cir.

3  2018) ("The magistrate judge properly concluded that the Settlement Agreement bars Friedman's

4  pursuit of additional fees and costs from Kaiser. . . .  Indeed, our controlling law acknowledges

5  that a favorable settlement for the client may sometimes come at the expense of attorneys' fees.

6  *See Evans v. Jeff D*., 475 U.S. 717, 729, 736-37, 741-42 (1986.") (unpublished).

7       In short, federal law is clear that it is not unlawful to resolve cases on a lump-sum basis,

8  and "a favorable settlement for the client may sometimes come at the expense of attorneys' fees."

9  *Berne*, 719 F. App'x at 652.  The very fact that fee waivers *may* be upheld on a case-by-case basis

10  forecloses Plaintiffs' request that the Court presumptively *disallow* any form of fee waiver from

11  being negotiated in this case.  Plaintiffs' Motion should be denied.

12       **2.**    **In a Case that Plaintiffs Fail to Cite, The Ninth Circuit Held That a**
                **Policy of Settling Claims on a Lump-Sum Basis Caused No Harm to**

13                  **Plaintiff's Counsel.**

14       Plaintiffs argue that lump-sum settlements automatically become impermissible because

15  Defendants allegedly seek to "entangle opposing parties and their counsel in an artificial conflict"

16  by "posit[ing] 'lump sum' settlement offers simultaneously to resolve both damages and statutory

17  attorneys' fees."  Dkt. 110 at 6:4-17.  Plaintiffs present no admissible evidence for this assertion

18  and their unsupported allegations are objectionable and should be stricken.  *See* Section IV.

19       A plaintiff's counsel made similar arguments that a defendant's alleged policy of offering

20  lump-sum settlements created a conflict of interest for plaintiff's counsel in *Pony v. Cty. of Los*

21  *Angeles*, 433 F.3d 1138, 1141 (9th Cir. 2006).  Applying *Evans*, the Ninth Circuit still concluded

22  that "[a] prevailing party may waive her statutory eligibility for attorney's fees as a condition

23  of settlement."  *Id.* at 1142.  The court specifically noted that a lump-sum settlement offer "has

24  not directly deprived [plaintiff's counsel] of any right" because plaintiff's counsel could not

25  establish that he would have recovered more attorneys' fees in the absence of a lump-sum

26  settlement.  *Id.* at 1146.  First, "in the absence of its [lump-sum settlement] policy, the [defendant]

27  might have refused to settle [the plaintiff's] civil rights case at all . . . particularly . . . given that

28

Case No. 17-cv-06621-YGR       -6-      DEFENDANTS' OPPOSITION TO PLAINTIFFS'
RULE 16 MOTION RE SETTLEMENT POSTURE
AND POTENTIAL CONFLICT OF INTERESTS

88691505.3

1  the ultimate settlement amount . . . [was] less than the attorney's fees" that her lawyer sought.  *Id.*

2  Second, the right to seek attorney's fees . . . belongs to clients, not to attorneys."  *Id.*  "Unless and

3  until the party exercises [the right to seek attorney's fees], the attorney has

4  no right to collect fees from the non-prevailing party, and the non-prevailing party has no duty to

5  pay them."  *Id.* at 1142.

6       As in *Pony*, Plaintiffs can resolve their claims on a lump-sum basis that includes a waiver

7  of attorneys' fees, regardless of whether Defendants offer lump-sum settlements on a routine

8  basis.  Such an offer does no harm to Plaintiffs or Plaintiffs' counsel because, for the reasons set

9  forth in Section II.C, Defendants would "refuse to settle [Plaintiffs'] civil rights case at all"

10  without a global settlement option.  *Id.* at 1146.  Because Defendants are not interested in entering

11  into a settlement that left attorneys' fees open to litigation in the first instance, Plaintiffs'

12  argument that Plaintiffs' counsel "will be entitled to recover reasonable statutory attorneys' fees"

13  "[i]f plaintiffs' counsel is able to reach a settlement agreement on the merits of the case" (Dkt.

14  110 at 19:1-3) is of no moment.

15       Plaintiffs fail to cite *Pony* in their Motion.[3]  Instead, Plaintiffs rely on out-of-Circuit

16  authority that is unavailing.  While Plaintiffs rely on a dissenting opinion in *Panola Land Buying*

17  *Ass'n v. Clark*, 844 F.2d 1506, 1518-20 (11th Cir. 1988) (Dkt. 110 at 12:3-24), the majority

18  opinion contradicts Plaintiffs' argument that a settlement waiving attorneys' fees is improper.

19  The *Panola* court held that plaintiff's counsel was ***not*** entitled to intervene to pursue a statutory

20  right to fees where counsel's client had waived such fees via settlement.  *Id.* at 1511.  The court

21  stated that counsel and client do not have "independent entitlements in the same action," and if

22  they did, "conflicts of interest between attorney and client would develop."  *Id.*  The court went

23

---

24  [3] *Evans* and *Pony* addressed settlement of attorneys' fees authorized by 42 U.S.C. § 1988, the

25  statute governing recovery of attorneys' fees for 42 U.S.C. § 1981 claims, but they apply equally to Plaintiffs' Title VII and ADEA claims.  *See, e.g.*, *Ambat v. City & Cty. of San Francisco*, No. C 07-03622 SI, 2011 WL 2118576, at *7 (N.D. Cal. May 27, 2011) ("[I]t is difficult to identify a

26  principled basis on which to distinguish Title VII's fee award provision from those in § 1988[.]") (citations omitted); *Sinyard v. Comm'r*, 268 F.3d 756, 759 (9th Cir. 2001) (applying *Evans* in

27  construing the ADEA fee-shifting statute; "Under the ADEA, attorney's fees are available to prevailing plaintiffs, not to plaintiff's counsel.") (citing *Evans*, 475 U.S. at 730-32).

28

-7-

1    on to say, "Historically, the client and the lawyer make their fee arrangement, and the lawyer

2    looks to the client for payment of the legal fee.  The lawyer represents and advises, but the client

3    controls the litigation."  *Id.*  "[Fee provisions] were enacted for the benefit of the persons the

4    statutes are designed to reach."  *Id.*

5         Plaintiffs' reliance on *Moore v. Nat'l Ass'n of Sec. Dealers, Inc*., 762 F.2d 1093 (D.C. Cir.

6    1985), is similarly misguided since it was published before the U.S. Supreme Court's decision in

7    *Evans*.  In any event, *Moore* arrived at the same result as and *Evans*: "[W] conclude that . . .

8    simultaneous negotiations of merits, fees, and costs should not be prohibited completely.  We also

9    hold that a plaintiff may voluntarily waive claims to statutory fees and costs, at least where a

10   demand for such has not been made by a defendant."  *Id.* at 1099.

11        In short, Plaintiffs' out-of-Circuit cases cannot override the controlling precedent of *Pony*

12   and they reached the same conclusion in any event—*i.e.*, that a plaintiff can waive her right to

13   recover statutory fees in settlement because counsel has no independent entitlement to fees,

14   considering the relevant statutes make fees available to the prevailing *party*.

15
                    **3.    California Courts Likewise Have Declined to Find Lump-Sum
16                           Settlements Unlawful.**

17        Plaintiffs next argue that federal precedent does not apply to lump-sum settlements of

     Plaintiffs' FEHA claims.  Dkt. 110 at 18:1 (contending that "it is doubtful that . . . *Evans v.*
18
     *Jeff D.* applies to FEHA").  Plaintiffs' counsel made a similar argument in the *Hill* case and it was
19
     rejected by the Northern District of California.  *Hill*, 2015 WL 5138561, at *12 ("The court is not
20
     persuaded by Mr. Friedman's argument that the FEHA inquiry compels a different result. . . .
21
     Once awarded, the fees are his.  But the plaintiffs have the right to settle the case, not
22
     Mr. Friedman.  *See* Bus. & Prof. Code § 6103.5; Cal. R. Prof. Conduct 3-510; State Bar Standing
23
     Committee on Prof. Responsibility and Conduct, Former Opn. No. 2009-176; *Evans*, 475 U.S. at
24
     731–32*cf. Levy v. Superior Ct*., 10 Cal.4th 578, 586 (1995.").
25
          Further, Plaintiffs' reliance on *Flannery v. Prentice*, 26 Cal. 4th 572 (2001)—the only
26
     case cited in support of this argument (*see* Dkt. 110 at 18:4:8)—is misplaced.  As recognized in
27
     the *Hill* case, *Flannery* decided a "narrow question" not present here: who owns funds awarded
28

---

-8-

1    pursuant to the FEHA fee-shifting statute—the prevailing plaintiff or plaintiff's counsel—when

2    no contract provides for their disposition.  *Hill*, 2015 WL 5138561, at *12; *Flannery*, 26 Cal. 4th

3    at 577.  Accordingly, *Flannery* is inapplicable here for two reasons: (1) no funds have been

4    awarded pursuant to the FEHA fee-shifting statute and they never will be if Plaintiffs agree to a

5    settlement waiving statutory fees, and (2) Plaintiffs' Motion and supporting papers allege that

6    Plaintiffs *do* have a contract with Plaintiffs' counsel providing for the disposition of any statutory

7    fees.  *See* Dkt. 110 at 9:4-7.  Setting *Flannery* aside, what Plaintiffs fail to identify is *any*

8    California authority holding that a plaintiff is barred from waiving FEHA's statutory fees.

9         On the contrary, California courts have reached the same conclusion as federal courts that

10   lump-sum settlements are not unlawful.  "It is well settled that the parties to a lawsuit may

11   negotiate a settlement according to which the defendant makes a lump-sum payment embracing

12   both monetary relief to the plaintiff and attorney's fees liability. . . . The device of a lump-

13   sum settlement is normally used in class action cases governed by a fee-shifting statute which, if

14   the plaintiffs were to prevail at trial, might permit them to obtain substantial fees directly from the

15   defendant in addition to the amount of any judgment."  *Apple Computer, Inc. v. Superior Court*,

16   126 Cal. App. 4th 1253, 1269 (2005) (citations omitted); *see also Ramirez v. Sturdevant*, 21 Cal.

17   App. 4th 904, 924 (1994) (discussing the inherent conflict of interest for plaintiff's counsel in

18   negotiating attorneys' fees separately from damages, but ultimately deciding the best approach is

19   to assess each case on its own record; "[w]e therefore decline to find that the inherent conflict in

20   dual negotiations necessarily invalidates any resulting settlements.").  Accordingly, Plaintiffs'

21   Motion should be denied.

22   **C.    Contrary to the Court's Role to Facilitate Settlement Under FRCP 16,**
          **Plaintiffs' Request Would Discourage Settlement Negotiations**

23

24        Federal Rule of Civil Procedure 16 states that one of the Court's roles is "facilitating

25   settlement."  Fed. R. Civ. P. 16.  Here, ruling as Plaintiffs request would undermine the

     possibility of settlement, because it would prohibit comprehensive negotiation of all outstanding

26

27   issues.

28

1      As Plaintiffs acknowledge implicitly, Defendants' interest in negotiating a settlement is to

2  "determine [their] global liability" (Dkt. 110 at 17:1) so that any settlement fully and finally

3  resolves the matter with certainty as to the final cost and end result.  Plaintiffs' request that

4  Defendants resolve only one part of the case (damages) while leaving attorneys' fees open to

5  litigation delivers no such certainty and therefore would discourage settlement.

6      Indeed, the Supreme Court pointed out that, "a rule prohibiting the comprehensive

7  negotiation of all outstanding issues in a pending case might well preclude the settlement of a

8  substantial number of cases[.]" *Evans*, 475 U.S. at 733.  And, the Court noted that, "To promote

9  both settlement and civil rights, [it] implicitly acknowledged in *Marek v. Chesny* the possibility of

10  a tradeoff between merits relief and attorney's fees when [it] upheld the defendant's lump-sum

11  offer to settle the entire civil rights action, including any liability for fees and costs."  *Id.*

12      Plaintiffs' counsel claims that he "does not ask for any sort of unfettered license to engage

13  in unreasonable settlement demands over fees."  Dkt. 110 at 16:4-5.  Plaintiffs suggest that

14  Defendants will behave unreasonably in settlement negotiations.  *Id.* at 16:17-18 ("[I]t would be

15  unreasonable for Kaiser to reject or defeat a settlement due to an unreasonably low offer for

16  statutory fees.").  However, it is Plaintiffs' counsel who has a track record of behaving

17  unreasonably when demanding attorneys' fees in the context of a settlement.

18      In the *Hill* case that Plaintiffs' same counsel filed against the same Defendants, Plaintiffs'

19  counsel signed a settlement agreement that disposed of attorneys' fees in December 2013, and

20  then dragged that case out for another *five years* trying to recover additional attorneys' fees for

21  himself based on arguments that both the Northern District of California and the Ninth Circuit

22  rejected.  *Hill*, 2015 WL 5138561, at *1, 5, 8, 11; *Berne*, 719 F. App'x at 652.  The Northern

23  District of California held that Plaintiffs' counsel was not due additional fees over and above that

24  which he agreed to pursuant to the settlement agreement, and that much of his requested time was

25  "duplicative," "excessive," or "unnecessary."  *See Hill*, 2015 WL 5138561, at *12 ("[T]he

26  settlement agreement is more than acceptable . . .  To the extent that Mr. Friedman argues that his

27  lodestar is higher and that he is entitled to a 2.0 multiplier, the plaintiffs directed a settlement that

28

Case No. 17-cv-06621-YGR    -10-    DEFENDANTS' OPPOSITION TO PLAINTIFFS'
RULE 16 MOTION RE SETTLEMENT POSTURE
AND POTENTIAL CONFLICT OF INTERESTS

88691505.3

1    did not include the extra fees or the multiplier."); *Hill v. Kaiser Foundation Health Plan, Inc.*,

2    Case No. 10-cv-02833-LB, Order, Dkt. 341, attached as Exhibit 1 to the Declaration of Amanda

3    Bolliger ("Bolliger Decl."), at 26:21-25.  Co-counsel to Plaintiffs' counsel in the *Hill* case advised

4    the Northern District of California that Plaintiffs' counsel engaged in "many unnecessary hours

5    billed after the prospect of settlement," as well as other improper billing practices.  *Id.* at 38:5-10.

6    The court agreed and reduced Plaintiffs' counsel's requested fees accordingly, calling them

7    "unnecessary."  *Id.* at 38:10-13.

8            Setting aside the "duplicative," "excessive" and "unnecessary" attorneys' fees that

9    Plaintiffs' counsel attempted to recover in *Hill* (*Hill*, 2015 WL 5138561, at *12), a settlement that

10   leads to five more years of litigation achieves no peace or resolution for a defendant and nullifies

11   the entire purpose of settlement.  Given Defendants' prior litigation history with Plaintiffs'

12   counsel following a settlement agreement that encompassed and *disposed* of attorneys' fees,

13   Defendants should not be faulted for declining to negotiate a settlement where attorneys' fees are

14   left entirely open to further litigation.

15           Moreover, the pattern of claiming unreasonable and excessive attorneys' fees has

16   continued in this case.  The demand letter that Plaintiffs' counsel sent Defendants on October 20,

17   2017 (Dkt. 111-1) provides a preview of what Defendants could expect if attorneys' fees were

18   litigated in this case.  In his demand letter, Plaintiffs' counsel valued his time at approximately

19   $1,200 to $1,600 per hour ($240,000 / 200 hours = $1,200 per hour; $320,000 / 200 hours =

20   $1,600 per hour).  That is $415 to $815 more per hour than what Plaintiffs' counsel alleged his

21   billing rate to be just a few years ago.  *Hill*, 2015 WL 5138561, at *4 (stating Plaintiffs' counsel's

22   then-billing rate of "$785 per hour").  In the current marketplace, such a fee is exorbitant.  *See*

23   *Blum v. Stenson*, 465 U.S. 886, 895 (1984) ("[R]easonable fees under § 1988 are to be calculated

24   according to the prevailing market rates in the relevant community[.]") (internal quotation marks

25   omitted); *Sream, Inc. v. Sahebzada*, No. 18-CV-05673-DMR, 2019 WL 2180224, at *11 (N.D.

26   Cal. Mar. 6, 2019) ("The AIPLA report stated that the first quartile, median and third-quartile

27   hourly rates for a partner in the San Francisco Bay Area are $500, $680, and $825,

28

respectively[.]") (internal quotation marks omitted); *Mkay Inc. v. City of Huntington Park*, No. CV 17-01467 SJO (AFM), 2019 WL 1751823, at *4 (C.D. Cal. Mar. 7, 2019) ("[C]ourts in this district have declined to award fees at rates over $800 dollars in connection with civil rights actions.").

Moreover, Plaintiffs' counsel's claim of having billed "slightly over 200 hours" (Dkt. 111-1 at 2) is called into question by the early procedural stage of the then-single-plaintiff case, which up to then was in the pleading stage with zero depositions and zero document productions by plaintiff.  Bolliger Decl. ¶ 5.  Plaintiffs' counsel's request for up to $320,000 in fees—even at that early stage of the litigation—dwarfed the claimed damages of $190,000.  Dkt. 111-1 at 2. Taken together, the pattern of claiming excessive fees continues, and Defendants have *no interest* in any settlement that leaves open the possibility that Plaintiffs' counsel will further litigate fees.

In short, Plaintiffs' request for an order requiring Defendants to litigate attorneys' fees if they settle damages or foreclosing any lump-sum settlement offer would *discourage* settlement negotiations in this case contrary to the Court's role to "faciliat[e] settlement."  Bolliger Decl. ¶ 6; Fed. R. Civ. P. 16.  As the Supreme Court explained in *Evans*: "parties to a significant number of civil rights cases *will refuse to settle if liability for attorney's fees remains open*, thereby forcing more cases to trial, unnecessarily burdening the judicial system, and disserving civil rights litigants."  *Evans*, 475 U.S. at 736-37 (emphasis added).  For this additional reason—that Plaintiffs' proposed rule would undermine the possibility of settlement—Plaintiffs' request should be denied.

## III.   PLAINTIFFS ALLEGE A POTENTIAL CONFLICT OF INTEREST WITHOUT PROVIDING SUFFICIENT FACTS TO MAKE THE ISSUE RIPE FOR REVIEW

### A.   Defendants Have Never Alleged Nor Sought to Create Any Conflict of Interest Between Plaintiffs and Their Counsel

Plaintiffs have repeatedly stated in Court filings that Defendants accused Plaintiffs' counsel of having a conflict of interest with his clients.  *See, e.g.*, Joint Case Management Conference Statement (Dkt. 91) at 12:26-13:1) ("Kaiser claims that these contractual provisions create a conflict between plaintiffs and their attorneys, and that counsel is obligated to offer a

Case No. 17-cv-06621-YGR                    -12-            DEFENDANTS' OPPOSITION TO PLAINTIFFS' RULE 16 MOTION RE SETTLEMENT POSTURE AND POTENTIAL CONFLICT OF INTERESTS

88691505.3

1   compromise of statutory fees in any settlement negotiations."); Dkt. 110 at 6:7-8 (Defendants

2   "insist[] on a global settlement, and argue[] that counsel's ethical obligations require voluntary

3   compromise on the amount of statutory fees."); Decl. of Counsel ISO Rule 16 Motion (Dkt. 111)

4   at 5:5-7 (alleging that Defendants "insist that plaintiffs and counsel waive the right to claim

5   statutory attorneys' fees, arguing that counsel is in breach of ethical obligations towards the client

6   if he holds up a settlement due to fees").  In a similar vein, Plaintiffs argue that Defendants have

7   an "interest in pitting plaintiffs' counsel against the plaintiffs during settlement" (Dkt. 110 at

8   6:15-16) or that Defendants are using Plaintiffs' "counsel's ethical obligations to gain a tactical

9   advantage in the litigation" (*id.* at 13:28).

10          To be clear, Defendants ***never*** told Plaintiffs' counsel that he has a conflict of interest with

11   Plaintiffs.  Bolliger Decl. ¶ 4.  Nor have Defendants made any statement to Plaintiffs' counsel as

12   to what his ethical obligations require in settlement negotiations.  *Id.*  Defendants also have no

13   motive or objective to create an ethical dilemma between Plaintiffs and their counsel.  *Id.*

14   Plaintiffs' unsupported conclusory assertions to the contrary are objectionable and should be

15   stricken.  *See* Section IV.  As discussed in Section II.C, it is to protect *Defendants*' interests that

16   they have declined to negotiate any settlement of damages without it being contingent upon

17   reaching a settlement of attorneys' fees.

18          Moreover, the premise underlying Plaintiffs' argument is faulty.  As the Supreme Court

19   explained in *Evans*, a defendant's settlement offer that conditions settlement of damages on the

20   plaintiffs stipulating to waive any fee award does not create an ethical dilemma for plaintiffs'

21   counsel because plaintiffs' counsel does not have an ethical obligation to seek a statutory fee

22   award:

23          Although [plaintiffs] contend that [plaintiffs' counsel], as counsel
            for the class, was faced with an "ethical dilemma" when

24          [defendants] offered him relief greater than that which he could
            reasonably have expected to obtain for his clients at trial (if only he

25          would stipulate to a waiver of the statutory fee award), and
            although we recognize [plaintiffs' counsel's] conflicting interests

26          between pursuing relief for the class and a fee for the [plaintiffs'
            counsel's firm], **we do not believe that the "dilemma" was an**

27          **"ethical" one** in the sense that [plaintiffs' counsel] had to choose
            between conflicting duties under the prevailing norms of

28

Case No. 17-cv-06621-YGR                    -13-         DEFENDANTS' OPPOSITION TO PLAINTIFFS'
                                                                 RULE 16 MOTION RE SETTLEMENT POSTURE
                                                                 AND POTENTIAL CONFLICT OF INTERESTS

88691505.3

professional conduct.  **Plainly, [plaintiffs' counsel] had
no *ethical* obligation to seek a statutory fee award.**

*Evans*, 475 U.S. at 727-28 (emphasis added).  Thus, if Defendants elect to offer a reasonable

settlement amount, they do not create an ethical dilemma for Plaintiffs' counsel by electing to

make the settlement contingent on a fee waiver.

### B.   If Plaintiffs' Counsel Develops an Ethical Dilemma With His Clients, It Would Arise From His Own Future Conduct

As set forth above in Section III.A., Defendants have not alleged or created a conflict of

interest between Plaintiffs and their counsel.  Rather, it is *Plaintiffs' counsel* who repeatedly has

advised the Court (and apparently his own clients) that he has a potential conflict of interest.  *See*

Dkt. 110 at 9:13-18, 10:6-9 ("Client understands that this [retainer] agreement may give rise to

potential disputes and conflicts between Attorneys and Client[.]").  It also is clear from Plaintiffs'

Motion and supporting documents that the source of this potential conflict of interest is not any

settlement offer by Defendants, but rather Plaintiffs' own retainer agreement.  *Id.*

Case law confirms that Plaintiffs' counsel is right to be concerned about a potential

conflict of interest.  For instance, the California Court of Appeal recognized an "inherent conflict

of interest" where a plaintiff's attorney in a wrongful termination case insisted on separately

negotiating the amount of damages payable to the plaintiff from his award of fees to himself.

*Ramirez*, 21 Cal. App. 4th at 923, 925-26.  The court held that such a conflict of interest imposed

on the trial court the obligation to determine whether the plaintiff's interests were "reasonably

protected" in the settlement negotiations and/or whether the plaintiff's attorney's "interest in

obtaining a settlement of attorney fees may have caused him to seek less for [his client] than he

otherwise would have attempted to obtain."  *Id.*

However, Defendants are aware of no case that resolved such an actual or potential

conflict of interest by forcing a defendant to settle the case on terms to which the defendant would

not otherwise agree.  On the contrary, as Plaintiffs' own cited case recognized, "[t]here is no duty

. . . to settle cases . . . [n]or does the orderly administration of justice require a party to contribute

to someone else's settlement."  Dkt. 110 at 16:1-3 (quoting *Rio v. Northern Blower Co.*, 574 F.2d

23, 26 (1st Cir. 1978).  Instead, if Plaintiffs' counsel's interest in recovering attorneys' fees places

him in an actual and unwaivable conflict of interest with his clients, he has the option to withdraw

from this case.  California State Bar Formal Opn. No. 98-0001, available at

http://www.calbarjournal.com/portals/0/documents/publicComment/2005/Prop-Ethics-Opin-Atty-

Fees.pdf.  ("[U]pon Client's statement that he wishes to accept [a lump-sum] settlement,

Attorney A has the normal obligation to advise Client of the alternatives and their foreseeable

consequences, while being mindful of the obligation to put Client's interests first"; "if Client

insists on accepting the settlement" and "Attorney A is unwilling to agree to the settlement terms,

he could also foresee that he would be opposing the client's position on settlement, justifying, if

not requiring, his request to withdraw.").

     Plaintiffs' counsel argues that Plaintiffs waived any potential conflict of interest by

signing retainer agreements.  *See* Dkt 110 at 9:1-10:13.  Plaintiffs have not submitted their actual

retainer agreements and the selectively quoted sections are not admissible.  *See* Section IV.

Consequently, it is impossible to assess whether Plaintiffs waived such a conflict of interest

through their retainer agreements.

     However, under the current ethical rules that became effective November 1, 2018,

"[i]nformed consent" means a person's agreement to a proposed course of conduct after the

lawyer has communicated and explained (i) the relevant circumstances and (ii) the material risks,

including any actual and reasonably foreseeable adverse consequences of the proposed course of

conduct."  Cal. R. of Prof'l Conduct § 1.0.1  Former Rule 3-310 required "the client's or former

client's written agreement to the representation following written disclosure," which was defined

as "informing the client or former client of the relevant circumstances and of the actual and

reasonably foreseeable adverse consequences to the client or former client."  Cal. R. of Prof'l

Conduct § 3-310 (1992-2018).  The selectively quoted portions of the retainer agreements do not

appear to discuss any specific circumstances or any specific foreseeable adverse consequences.

     Regardless, even if Plaintiffs effectively waived a conflict of interest for purposes of their

own representation, a conflict of interest between Plaintiffs' counsel and the putative class still

could implicate the adequacy of Plaintiffs' counsel to represent the putative class.  *See Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (stating that the two critical questions that class counsel must satisfy are: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?").

### C.     Whether Plaintiffs' Counsel's Settlement Conduct Will Create an Actual or Non-Waivable Conflict of Interest Is Not Ripe for Review

Though Plaintiffs' counsel rightly alleges that a potential conflict of interest exists, Defendants' position is that the issue of whether Plaintiffs' counsel has an actual or non-waivable conflict of interest with his clients is not yet ripe for review.  "The jurisdiction of federal courts is defined and limited by Article III of the Constitution.  In terms relevant to the question for decision in this case, the judicial power of federal courts is constitutionally restricted to 'cases' and 'controversies.'"  *Flast v. Cohen*, 392 U.S. 83, 94 (1968).  "Courts must refrain from deciding abstract or hypothetical controversies and from rendering impermissible advisory opinions with respect to such controversies."  *Earth Island Inst. v. Ruthenbeck*, 490 F.3d 687, 694 (9th Cir. 2007), *aff'd in part, rev'd in part sub nom. Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) (citing *Flast*, 392 U.S. at 96).  "[A] federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them. Its judgments must resolve a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (internal quotation marks omitted).  "An advisory opinion results if the court resolves a question of law that is not presented by the facts of the case."  *Earth Island*, 490 F.3d at 694; *see also In re Michaelson*, 511 F.2d at 893 ("[I]t would be constitutionally improper for us to reach this question since the issue lacks the necessary facts to make it concrete.  This issue is not only unripe, the case is non-existent.  This Court does not intend to and cannot, issue an advisory opinion on a hypothetical fact situation.").

Case No. 17-cv-06621-YGR                    -16-       DEFENDANTS' OPPOSITION TO PLAINTIFFS' RULE 16 MOTION RE SETTLEMENT POSTURE AND POTENTIAL CONFLICT OF INTERESTS

88691505.3

Here, Plaintiffs fail to attach their actual retainer agreements, instead providing selected excerpts that should be stricken. *See* Section IV.  The parties have not yet attended any settlement conference, nor have Plaintiffs presented evidence of any settlement negotiations in this case that can be considered in evaluating any potential conflict of interest between Plaintiffs and their counsel.  As a result, Defendants do not have sufficient facts to form an opinion as to whether the potential conflict of interest Plaintiffs have identified rises to the level of an actual conflict of interest.  Defendants likewise do not have sufficient information to opine on whether such a conflict of interest has been—or can be—waived by Plaintiffs.  Defendants' position is that these issues are not yet ripe for review.  Instead, Plaintiffs improperly invite the Court to "issue an advisory opinion on a hypothetical fact situation." *In re Michaelson*, 511 F.2d at 893. Plaintiffs' Motion should be denied for this reason as well.

## IV.   OBJECTIONS TO DECLARATION OF COUNSEL

Defendants submit the following evidentiary objections to the Declaration of Counsel in support of Plaintiffs' Motion ("Friedman Declaration") (Dkt. 111).  Defendants respectfully request that the Court sustain its objections and strike as inadmissible the following statements in the Friedman Declaration.

| No. | Statement at Issue | Defendants' Objections | Ruling |
|---|---|---|---|
| 1. | "As expressly discussed and agreed upon orally, and as written into the retainer agreements, I agreed to represent plaintiffs as clients, conditioned on their assignment of rights to recover any and all statutory fees which may be awarded by judgment or settlement in the action."<br><br>**Paragraph 5, page 2, Lines 4-7.** | **Incomplete Writing** (Fed. R. Evid. 106); **Original Writing Required** (Fed. R. Evid. 1002); **Inadmissible Hearsay** (Fed. R. Evid. 802); | ☐ **Sustained**<br>☐ **Overruled** |
| 2. | "In the written agreement, plaintiffs agreed:<br>"All attorneys' fees recovered pursuant to any statutory or common law fee-shifting provisions, Federal and California, for work done in connection with this litigation are property of the | **Incomplete Writing** (Fed. R. Evid. 106); **Original Writing Required** (Fed. R. Evid. 1002); **Inadmissible Hearsay** (Fed. R. Evid. 802); | ☐ **Sustained**<br>☐ **Overruled** |

Case No. 17-cv-06621-YGR                -17-                DEFENDANTS' OPPOSITION TO PLAINTIFFS' RULE 16 MOTION RE SETTLEMENT POSTURE AND POTENTIAL CONFLICT OF INTERESTS

88691505.3

| | | | |
|---|---|---|---|
| | | attorneys, as provided by California law (*Flannery v Prentice*) and shall not be regarded as property of the client."<br><br>**Paragraph 5, page 2, lines 7-10.** | | |
| 3. | "Each agreement contained the following clause concerning assignment and the potential conflict of interest that might arise during settlement discussions:<br><br>"The Court may order, or the parties to the litigation may agree, that the defendants will pay some or all of attorneys' fees, costs, or both.  Any such order or agreement will not affect Client's obligations under this agreement except as stated in this Section regarding calculation of the amount of attorneys' fees owed under this agreement and as stated in Section 6.  Client agrees that any attorneys' fees that may be recovered from defendants in this case shall belong to Attorneys, to whom Client assigns her rights. Client understands that, under California law, the assignment of these rights may raise a potential conflict of interest between Client and Attorneys in the context of settlement agreements. This includes Attorneys right to claim, negotiate and settle any claim to statutory fees simultaneously with the representation of Client in the prosecution of her claims. Client has been advised of this potential conflict, of her option of seeking additional legal counsel in connection with this conflict, and Client expressly agrees to this assignment."<br><br>**Paragraph 6, page 2, lines 11-20.** | **Incomplete Writing** (Fed. R. Evid. 106); **Original Writing Required** (Fed. R. Evid. 1002); **Inadmissible Hearsay** (Fed. R. Evid. 802) | ☐ **Sustained**<br>☐ **Overruled** |
| 4. | "The retainer agreements also included an acknowledgment of the contingent nature of the representation, and its impact on the calculation of reasonable fees. | **Incomplete Writing** (Fed. R. Evid. 106); **Original Writing Required** (Fed. R. Evid. 1002); | ☐ **Sustained**<br>☐ **Overruled** |

-18-

88691505.3

| | | | |
|---|---|---|---|
| | "Client has been given the choice of paying monthly for attorneys' fees on an hourly rate basis and for costs, as an alternative to a contingent fee.  Client understands that if she chooses to pay fees on an hourly rate basis, rather than a contingent fee basis, she must pay all fees and costs even if the claims are lost. Clients knowingly and voluntarily agrees to pay fees on a contingent fee basis, or have statutory fees paid at a rate that is a multiple of Attorneys' then-current noncontingency hourly rate (*Ketchum v. Moses*), because fees are not paid before any amount is recovered and Client will not owe any attorneys' fees if she does not prevail against defendants."<br><br>**Paragraph 7, page 2, lines 21-28.** | **Inadmissible Hearsay** (Fed. R. Evid. 802) | |
| 5. | "In Section 6, the retainer agreements detailed the arrangement between plaintiffs and counsel during settlement:<br><br>"It is agreed that no settlement of these claims may be made without Client's prior agreement.  If, in settlement of this litigation, Client waives the right to recover attorneys' fees, costs or expenses (including partial waivers or compromises) without the consent of Attorneys, Client agrees to pay Attorneys: for waiver of fees, Attorneys' lodestar amount (their then-current hourly rate, as stated in section 5, as of the date of recovery times the number of hours expended on the case) times a contingent-risk multiplier of 2.0; and for waiver of costs, all of the costs advanced by attorneys in this case, whether or not a positive recovery is made by Client.  Client understands that this agreement may give rise to potential disputes and conflicts between Attorneys and Client at the time of settlement, and in particular, | **Incomplete Writing** (Fed. R. Evid. 106); **Original Writing Required** (Fed. R. Evid. 1002); **Inadmissible Hearsay** (Fed. R. Evid. 802) | ☐ **Sustained**<br><br>☐ **Overruled** |

Case No. 17-cv-06621-YGR     -19-     DEFENDANTS' OPPOSITION TO PLAINTIFFS' RULE 16 MOTION RE SETTLEMENT POSTURE AND POTENTIAL CONFLICT OF INTERESTS

88691505.3

| | | | |
|---|---|---|---|
| | where the defendants offer a settlement conditioned on the waiver, partial waiver or compromise of fees or costs and Attorneys are unwilling to agree to the waiver, partial waiver or compromise.  Client understands that this agreement to pay the difference between Attorneys' statutory fees and costs and the amount of fees and costs paid in settlement may limit, or even nullify Client's recovery, and dissuade her from agreeing to a settlement with the defendants. Client has been advised of the option of seeking additional legal counsel on the topic.  Client expressly agrees to this provision because she knows that otherwise Attorneys would be unwilling to enter into this agreement."<br><br>**Paragraph 8, page 3, lines 1-14.** | | |
| 6. | "After extensive experience litigating discrimination actions against Kaiser, as well as the failed mediation effort concerning plaintiff Gamble, I can attest to the policy and practice of Kaiser to avoid or reduce its liability by trying to pit plaintiffs' counsel against their own clients during settlement discussions.  Often hidden behind a non-existent veil of "settlement confidentiality," Kaiser often will<br><br>"– Offer "lump sum" settlements covering plaintiffs' damages and counsel's statutory attorneys' fees, insisting that opposing parties and their counsel fight between themselves as to how the "lump sum" should be split.<br><br>"– Insist that plaintiffs and counsel waive the right to claim statutory attorneys' fees, arguing that counsel is in breach of ethical obligations towards the client if he holds up a settlement due to fees. | **Erroneous**; **Speculative** (Fed. R. Evid. 602); **Lacks Personal Knowledge** (Fed. R. Evid. 602); **Violates Federal Mediation Privilege** (Fed. R. Evid. 501; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 835 F.3d 1155, 1158 (9th Cir. 2016) ("[F]ederal common law generally governs claims of privilege.")) | ☐ **Sustained**<br><br>☐ **Overruled** |

Case No. 17-cv-06621-YGR                    -20-                    DEFENDANTS' OPPOSITION TO PLAINTIFFS' RULE 16 MOTION RE SETTLEMENT POSTURE AND POTENTIAL CONFLICT OF INTERESTS

88691505.3

| | | |
|---|---|---|
| "– Refuse to negotiate over attorneys' fees in good faith, consistent with the adjusted lodestar methodology required under Title VII and FEHA, while simultaneously it rejects the submission of fees to the Court for determination."<br><br>**Paragraph 10, page 3, line 25 through page 4, line10.** | | |

## V.    <u>CONCLUSION</u>

For the reasons stated above, Defendants respectfully request the Court deny Plaintiffs' Motion for an Order Addressing Settlement Posture and Potential Conflict of Interests.

DATED:  June 5, 2019                               GBG LLP


By:  /s/ *Amanda Bolliger*
                    AMANDA BOLLIGER


Attorneys for Defendants
KAISER FOUNDATION HEALTH PLAN, INC.; KAISER FOUNDATION HOSPITALS; and THE PERMANENTE MEDICAL GROUP, INC.