1  Jeremy L. Friedman, CA Bar No. 142659
   LAW OFFICE OF JEREMY L. FRIEDMAN
2  2801 Sylhowe Road
   Oakland, Ca. 94610
3  Tel: (510) 530-9060
   Fax: (510) 530-9087
4
   Attorney for plaintiffs and putative class
5

6                  UNITED STATES DISTRICT COURT

7                NORTHERN DISTRICT OF CALIFORNIA

8
   LUNELL GAMBLE, and SHEILA          )   Case No. 4:17-cv-06621-YGR
9  KENNEDY, on behalf of themselves as )
   well as a class of similarly situated )   **REPLY TO OPPOSITION TO**
10 individuals,                        )   **PLAINTIFFS' RULE 16 MOTION**
                                       )   **FOR AN ORDER ADDRESSING**
11        Plaintiffs                   )   **SETTLEMENT POSTURE AND**
                                       )   **POTENTIAL CONFLICT OF**
12 vs.                                 )   **INTERESTS**
                                       )
13 KAISER FOUNDATION HEALTH            )
   PLAN, INC; KAISER FOUNDATION        )
14 HOSPITALS, INC.; and THE            )   (Per ECF 103, parties to be notified if a
   PERMANENTE MEDICAL GROUP;           )   hearing will be required.)
15 all doing business as KAISER        )
   PERMANENTE MEDICAL CARE             )   Hon. Yvonne Gonzalez Rogers
16 PROGRAM                             )
                                       )
17        Defendants                   )
   _____ )
18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

KAISER DOES NOT DISPUTE MATERIAL BACKGROUND FACTS . . . . . . . . . . . . . . . 2

       A.    Kaiser Does Not Address or Refute the Important Role of Statutory Fee
           Assignments to the Effectuation of Legislative Schemes . . . . . . . . . . . . . . . . 2

       B.    Kaiser Does Not Dispute the Terms of the Assignment, the Waiver of Conflict
           in Settlement Negotiations or the 2.0 Multiplier for Contingent Risk under
           FEHA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       C.    Kaiser Does Not Dispute that Plaintiffs and Their Counsel Do Not Wish to
           Negotiate Against Each Other During Settlement Discussions in this Case . . 5

       D.    Kaiser and the Evidence Confirm its Policy and Practice During Settlement . 6

REPLY ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

       I.     Kaiser's Opposition Shows the Dispute is Ripe for Rule 16 Relief . . . . . . . 8

       II.    Lessons Learned From the Prior Experience in *Hill* Provide Reason for this
           Motion, and Nothing from that Case Supports Kaiser's Opposition . . . . . . . . 9

       III.   It May Be Ethical to Offer Fee Waiver Settlements, but the Court Has
           Authority to Control the Conduct of Counsel During Negotiations . . . . . . . 11

       IV.   Cases Cited by Kaiser as "Controlling Law" are Not Even on Point . . . . . . 13

       V.    Kaiser Presents No Basis to Avoid Judicial Determination of
           Reasonableness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

1

**TABLE OF AUTHORITIES**

2 <u>Cases</u>

3 *Apple Computer, Inc. v. Superior Court*, 126 Cal. App. 4th 1253 (2005) . . . . . . . . . . . . . 14

4 *Berne v. Kaiser Found. Health Plan Inc.*, 719 F. App'x 651 (9th Cir. 2018) . . . . . . . . . . . 10

5 *D'Angelo v. United States*, 456 F. Supp. 127 (D. Del. 1978) . . . . . . . . . . . . . . . . . . . . . . . 4

6 *Diaz v. Trust Territory of the Pac. Islands*, 876 F.2d 1401 (9th Cir. 1989) . . . . . . . . . . . . 14

7 *Evans v. Jeff D.*, 475 U.S. 717 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12, 13, 15

8 *Flannery v. Prentice*, 26 Cal. 4th 572 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 12, 15

9 *Gordon v. City of New York*, 2015 U.S. Dist. LEXIS 44271 (E.D.N.Y. 2015) . . . . . . . . . . 8

10 *Gusman v. Comcast Corp.*, 298 F.R.D. 592 (S.D. Cal. 2014) . . . . . . . . . . . . . . . . . . . . . . . 4

11 *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . 8, 14

12 *Hill v. Kaiser Foundation Health Plan*, (ECF 121, Exh. 1) . . . . . . . . . . . . . . . . . . . . 6, 8-11

13 *In re Conagra Foods*, 2014 U.S. Dist. LEXIS 194130 (C.D. Cal. 2014) . . . . . . . . . . . . . . 14

14 *In Re Fee*, 182 Ariz. 597 (Ariz. Sup. Ct. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

15 *Indus. Eng'g & Dev. v. Static Control Components, Inc.*, 2014 U.S. Dist. LEXIS 141823

16    (M.D. Fla. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

17 *Jeff D. v. Evans*, 743 F.2d 648 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 *Ketchum v. Moses*, 24 Cal.4th 1122 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6, 11

19 *Lindelli v. Town of San Anselmo*, 139 Cal. App. 4th 1499 (2006) . . . . . . . . . . . . . . . . 2, 12

20 *Panola Land Buying Asso. v. Clark*, 844 F.2d 1506 (11th Cir. 1988) . . . . . . . . . . . . . . . . . 5

21 *Pony v. County of Los Angeles*, 433 F.3d 1138 (9th Cir. 2006) . . . . . . . . . . . . . . . . 8, 13, 14

22 *Ramirez v. Sturdevant*, 21 Cal. App. 4th 904 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

23 *Sony Comput. Entm't Am., LLC v. HannStar Display Corp. (In re TFT-LCD (Flat Panel)*

24    *Antitrust Litig.)*, 835 F.3d 1155 (9th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

25 *United States ex rel. Depace v. Cooper Health System*, 940 F.Supp.2d 208 (D.N.J. 2013) . 9

26 *United States v. Gonzales-Benitez*, 537 F.2d 1051 (9th Cir. 1976) . . . . . . . . . . . . . . . . . . 4

27 *United States v. Ryan*, 283 F. App'x 479 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 *Venegas v. Mitchell*, 495 U.S. 82 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

*Waterloo Furniture Components, Ltd. v. Haworth, Inc.*, 467 F.3d 641 (7th Cir. 2006) . . . . 4

1 | Statutes

2 | Fair Employment and Housing Act (FEHA), Government Code §12900 *et seq.* . . . . *passim*

3 | Civil Rights Act, 42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

4 | Fees Act, 42 U.S.C. §1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

5 | Rules

6 | Federal Rules of Evidence, Rule 106 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

7 | Federal Rules of Evidence, Rule 408 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

8 | Federal Rules of Evidence, Rule 802 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

9 | Federal Rules of Evidence, Rule 1002. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

10 | Other authorities

11 | CA Bar Formal Ethics Op. No. 2009-176 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

12 | Carle, "The Settlement Problem in Public Interest Law," 29 Stanford Law & Policy

13 |        Review 1 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INTRODUCTION**

2          Plaintiffs seek an Order under Rule 16 of the Federal Rules of Civil Procedure and

3    the Court's inherent authority, addressing the parties' settlement posture in this case. Based

4    on prior experiences – including the non-starter mediation session between Kaiser and

5    Gamble – plaintiffs request that Kaiser be precluded from creating a conflict between

6    plaintiffs and their counsel over statutory fees. Although Kaiser falsely asserts it never

7    sought to create such a conflict, the employer admits in the opposition that it intends to

8    insist on a fee waiver *in this case*, while it argues that ethical obligations require counsel to

9    compromise fees without the Court's determination of what is reasonable.

10          Kaiser does not dispute: the importance of fee assignments to the rights of

11   Californians under the Fair Employment and Housing Act; heightened protection of

12   statutory fees under California law; or recognition that such assignments are the "usual

13   course" between civil rights attorneys and their clients, even in federal cases. The employer

14   raises an erroneous evidentiary objections to counsel's testimony, but it does not address –

15   let alone contest – that counsel has contracted with plaintiffs in a fashion that preserves the

16   clients' right to direct a settlement, but nonetheless protects the attorneys' right to obtain

17   reasonable attorneys' fees from the clients if they waive statutory fees without consent. Nor

18   does Kaiser contend with – or argue against – plaintiffs' counsel's stated practice of

19   refusing to negotiate against his own clients during settlement discussions..

20          Kaiser argues "controlling law" precludes fee assignments between plaintiffs and

21   their counsel, and permits it to make "lump sum" settlement offers in all cases. None of the

22   cases it cites, however, relates to fee assignments under FEHA. Kaiser also relies on

23   authorities involving challenges to statutory fee waivers that took place *after* a settlement

24   was reached and claims dismissed. Learning from prior experiences – and reacting to

25   Kaiser's claim that counsel violated ethical obligations in this case – plaintiffs here seek

26   relief *before* the parties attend the Settlement Conference pursuant to the Court's Order of

27   Reference. No doubt this Court has authority to address the parties' settlement posture and

28   protect against conflicts of interest in that process.

1

**KAISER DOES NOT DISPUTE MATERIAL BACKGROUND FACTS**

2

In its opposition, Kaiser does not take issue with most of the background facts stated

3

in the motion. *See* ECF 110, at 3-7. The only relevant factual dispute it raises is testimony

4

by defense counsel that they never told plaintiffs' counsel he has a conflict of interest, or

5

made any statement regarding counsel's ethical obligations in settlement. *See* ECF 121, ¶4.

6

This one fact issue, however, is confirmed by correspondence between plaintiffs' counsel

7

and the mediator (filed under seal along with this reply); and would not at any rate preclude

8

entry of the order sought by plaintiffs in this motion.

9

**A.    Kaiser Does Not Address or Refute the Important Role of Statutory Fee
       Assignments to the Effectuation of Legislative Schemes**

10

Kaiser does not take issue with the reasonableness of plaintiffs' assignment of rights

11

over statutory fees in order to secure representation by experienced counsel on a contingent

12

basis – particularly in a case against Kaiser, where legal fees are expected to outstrip

13

damages. ECF 111, ¶4. Nor does Kaiser dispute that assignment of rights to statutory fees

14

was contemplated by the legislature in enacting FEHA, and is essential to the effectuation

15

of FEHA's statutory scheme. *See Flannery v. Prentice*, 26 Cal. 4th 572, 582-583 (2001)

16

("Attorneys considering whether to undertake cases that vindicate fundamental public

17

policies may require statutory assurance that, if they obtain a favorable result for their

18

client, they will actually receive the reasonable attorney fees provided for by the Legislature

19

and computed by the court"); *id*, at 588 n.16 ("allowing lawyers to contract with their

20

clients for an assignment of the right to fees should enhance the public's access to

21

competent counsel") (citation omitted); *Lindelli v. Town of San Anselmo*, 139 Cal. App. 4th

22

1499, 1514-1516 (2006) (California protects the "certainty that attorneys who undertake

23

public interest cases will receive compensation").

24

**B.    Kaiser Does Not Dispute the Terms of the Assignment, the Waiver of Conflict in
       Settlement Negotiations or the 2.0 Multiplier for Contingent Risk under FEHA**

25

Kaiser does not dispute counsel's testimony as to agreements with plaintiffs on

26

assignment of statutory fees, or as to the waiver of potential conflict of interests during

27

settlement negotiations. ECF 111, ¶¶5-8. According to that undisputed testimony:

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- Plaintiffs agreed that attorneys' fees recovered pursuant to statute belonged to the attorneys, consistent with the law of the California Supreme Court, *id*, ¶¶5, 6.

- Plaintiffs were informed that the assignment of rights may raise a potential conflict of interest in the context of settlement agreements, including the attorney's right to claim, negotiate and settle any claim to statutory fees simultaneously with the representation of plaintiffs in the prosecution of their claims, *id*., ¶6.

- Plaintiffs were advised of this potential conflict and their option of seeking additional legal counsel, and they expressly agreed, *id*.

- Consistent with California law under *Ketchum v. Moses*, 24 Cal.4th 1122 (2001), plaintiffs agreed that, in light of the contingent nature of the representation, the attorney will be entitled to attorneys fees at a rate that is a multiple of then-current non-contingency hourly rate, *id*. ¶7.

- Plaintiffs retained the ultimate right to direct a settlement, but plaintiffs agreed that if they waive the right to recover attorneys' fees without the attorney's consent, plaintiffs would be responsible for paying attorneys' fees, determined by calculating a lodestar using then-current hourly rate as of the date of recovery, times a contingent-risk multiplier of 2.0, *id*., ¶8.

- Plaintiffs were again informed of potential disputes and conflicts at the time of settlement, and in particular, where Kaiser offers a settlement conditioned on the waiver, partial waiver or compromise of fees, Kaiser refuses to submit fees to the Court, and counsel is unwilling to agree. This included an understanding that the plaintiffs would have to pay the difference between to the waiver, partial waiver or compromise. Plaintiffs understood that this agreement was reasonable fees under these circumstances, even though it might limit, or even nullify their recovery, and dissuade them from agreeing to a settlement with Kaiser. They acknowledged that they were advised of the option of seeking additional legal counsel, and they agreed to the provision because they knew that otherwise counsel would have been unwilling to represent them. *Id*.

1    Kaiser poses various evidentiary objections to counsel's testimony. *See* ECF 120, at

2    17-20. None is well taken. Counsel's testimony does not present an incomplete writing

3    under FRE 106, nor violate the best evidence rule in FRE 1002. Counsel's testimony is

4    based on his own personal knowledge of the agreements he reached with his clients. He is

5    not required to submit the actual writing just because it also contains evidence of that

6    agreement.[1] Similarly, counsel's testimony is not "hearsay" under FRE 802, as the

7    testimony evidences the terms of the agreement with his clients; it does not seek to establish

8    the truth of any out-of-court statements.

9    Finally, while retainer agreements are not always privileged, their production may

10   disclose confidential information which may be privileged. When necessary to rule on an

11   issue of privilege, courts will review the writing *in camera*. For example, in *Gusman v.*

12   *Comcast Corp.*, 298 F.R.D. 592, 599-600 (S.D. Cal. 2014), the district court concluded that

13   plaintiff's "retainer and fee agreement with counsel pertaining to the instant lawsuit is

14   relevant to class certification and should be produced to the Court for *in camera* review to

15   determine whether disclosure would reveal privileged communications." However, the court

16   neither reviewed nor compelled production of retainer and fee agreements pertaining to

17   other class actions, as the defendant did not "established the relevancy or need for" such

18   agreements. *Id.* Here, if the Court so directs, plaintiffs' counsel will submit a written version

19   of the agreement *in camera* for the Court to take into consideration on the motion.

20

21   [1]*See United States v. Ryan*, 283 F. App'x 479, 482 (9th Cir. 2008) (no abuse of discretion permitting witnesses to "testify from their personal knowledge" about policy or practice); *Waterloo Furniture Components, Ltd. v. Haworth, Inc.*, 467 F.3d 641, 648-49 (7th

22   Cir. 2006) (refusing to exclude testimony on the terms of a settlement agreement based on personal knowledge of the negotiations, and stating: "If a witness's testimony is based on his

23   first-hand knowledge of an event as opposed to his knowledge of the document, however, then Rule 1002 does not apply") (citation omitted); *United States v. Gonzales-Benitez*, 537

24   F.2d 1051, 1053-54 (9th Cir. 1976) ("The appellants simply misconstrue the purpose and effect of the best evidence rule. The rule does not set up an order of preferred admissibility,

25   which must be followed to prove any fact. It is, rather, a rule applicable only when one seeks to prove the contents of documents or recordings. ... [T]estimony by the participants was

26   equally admissible [as the recordings] and was sufficient to establish what was said"); *Indus. Eng'g & Dev. v. Static Control Components, Inc.*, 2014 U.S. Dist. LEXIS 141823, at *11-12

27   (M.D. Fla. 2014) ("Determining whether testimony is being offered to prove the contents of the writing may depend on whether the witness's testimony is based on his personal

28   knowledge of the event"); *D'Angelo v. United States*, 456 F. Supp. 127, 131 (D. Del. 1978) ("The rule is not applicable when a witness testifies from Personal knowledge of the matter, even though the same information is contained in a writing").

**C.    Kaiser Does Not Dispute that Plaintiffs and Their Counsel Do Not Wish to Negotiate Against Each Other During Settlement Discussions in this Case**

Kaiser extolls a non-existent right to demand simultaneous settlement negotiations of merits and fees because, it contends, it is more likely to agree to a settlement using that method. Indeed, Kaiser claims it will be unwilling to settle unless it is allowed to make lump sum offers with fee waivers, and that it will never agree to the submission of plaintiffs' statutory fees to the Court for a determination of what is reasonable. While it tends towards that narcissistic view, it ignores (and does not make any evidentiary objections to) testimony that – to protect against actual conflicts of interest during settlement discussions – counsel will not negotiate against his own clients during settlement discussions. Instead, plaintiffs will only seek to negotiate a resolution of plaintiffs' recoveries independent of the claim to fees. ECF 111, ¶9.

To the extent that Kaiser clings to an unfettered right in the *manner* in which it will engage in settlement discussions, to the complete exclusion of the wishes and practices of the opposing side, this briefing demonstrates the intransigence between the parties, and the need for judicial intervention under Rule 16. As Kaiser insists that it will "never" settle the merits of a case without also obtaining a waiver of attorneys' fees, and plaintiffs' counsel refuses to negotiate his fees against his clients, the result is that the parties will not engage in meaningful settlement discussions that might otherwise resolve this complex litigation to the mutual satisfaction of the clients. In such cases, "Rule 16 is perhaps the best vehicle through which a party can call the court's attention to the fact that an opposing litigant has assumed an unreasonable settlement posture ... [for example] 'If plaintiffs' counsel believes he or she is unreasonably being asked to sacrifice a fee.'" *Panola Land Buying Asso. v. Clark*, 844 F.2d 1506, 1518-20 (11th Cir. 1988) (citation omitted) (Clark, dissenting). Here, plaintiffs contend that it is unreasonable to ask them to negotiate against their own attorney with respect to statutory fees, since plaintiffs and counsel seek to press claims against Kaiser, and counsel would be entitled to reasonable statutory fees if plaintiffs prevail through settlement. Intervention by the Court in the manner in which terms are negotiated would only facilitate the ultimate fair resolution of this case.

**D.    Kaiser and the Evidence Confirm its Policy and Practice During Settlement**

Kaiser objects to the disclosure of its tactics during settlement negotiations, but it does not deny the vast majority of facts to which counsel testifies. ECF 111, ¶10. Indeed, in its opposition, Kaiser by and large confirms the very points made in the motion.

- During negotiations, Kaiser offers "lump sum" settlements covering plaintiffs' damages and counsel's statutory attorneys' fees, and it insists that opposing parties and their counsel fight between themselves as to how the "lump sum" should be split. In its opposition, Kaiser does not deny this tactic, and in fact argues that it has an unfettered right under federal and California law to do so. ECF 120, at 4:4-5 ("a party who offers a lump-sum settlement does nothing unlawful or unethical"); 4-6 (federal law); 8-9 (California law).

- Kaiser insists that, in any settlement, plaintiffs' counsel waive the right to claim statutory attorneys' fees with the Court. This is confirmed by Kaiser's own counsel, who insists that Kaiser has "no interest whatsoever in settling damages without simultaneously resolving all outstanding issues" and that, as "a result, Plaintiffs' request for an order requiring [Kaiser] to litigate attorneys' fees if they settle damages or foreclosing any lump-sum settlement offer would discourage settlement negotiations in this case." ECF 121, ¶6.

- In demanding a waiver of statutory attorneys fees, Kaiser refuses to negotiate in good faith, consistent with the adjusted lodestar methodology required under Title VII and FEHA. This too is demonstrated in the opposition. Kaiser expends much ink attempting to smear plaintiffs' counsel as one who seeks unreasonable fees – recalling incompletely the post-settlement fees litigation in *Hill*, but ignoring the decision won from the California Supreme Court in *Ketchum v. Moses*. *See* ECF 120, at 10-12. Its contention is belied by its own position on the motion. The answer to unresolvable disputes over a reasonable amount of statutory attorneys fees is found in submission to the Court. And yet, judicial scrutiny of its position on fees is exactly what Kaiser insists on avoiding. Such a position is unreasonable, and need not be adopted during settlement proceedings in this case.

1     Kaiser's attorneys do attempt to create a conflict in the evidence on one point –

2  whether Kaiser argues during settlement negotiations that counsel's ethical obligations

3  towards the client requires him to negotiate against his own client and compromise statutory

4  fees. Kaiser's attorney testifies:

5       Neither I nor any of my colleagues at GBG LLP has ever told Mr. Friedman
        that he has a conflict of interest with Plaintiffs. Neither I nor any of my
6       colleagues at GBG LLP has ever made any statement to Plaintiffs' counsel as
        to what his ethical obligations require in settlement negotiations regarding this
7       case. [ECF 124, ¶4.]

8

9     As an initial matter, the Court may not need to resolve this fact dispute to grant the

10 relief requested by plaintiffs. In the proposed order submitted by plaintiffs, ECF 118, the

11 Court is not asked to make any factual findings as to how Kaiser has engaged in settlement

12 discussions in the past. Instead, plaintiffs ask only that the Court institute some measure of

13 protection in this case going forward. Plaintiffs' counsel recounted his history of

14 discussions with Kaiser in this and other cases as background facts for this motion. To the

15 extent that Kaiser disclaims the utilization of counsel's ethical obligations in settlement

16 discussions, there should be no objection to the entry of an order precluding Kaiser from

17 claiming counsel's ethics require compromise of statutory fees during settlement.

18    Moreover, counsel's testimony is not accurate. Through its attorneys, Kaiser raises

19 counsel's ethical obligations towards the client at least once in every discussion involving

20 settlement. It occurred here at the mediation between Kaiser and Gamble before removal, as

21 revealed in correspondence with the mediator, filed here under seal; and again after

22 removal, during the telephone call with the ADR Coordinator. *See* Suppl. Friedman Decl.[2]

23 In the opposition, Kaiser expressly refers to counsel's ethical obligations in arguing against

24 the relief requested. *See* ECF 120, at 14-16.

---

25       [2]Plaintiffs did not previously include the correspondence, in light of a potential
   California mediation privilege. In its opposition, however, Kaiser cited to *Sony Comput.*
26 *Entm't Am., LLC v. HannStar Display Corp. (In re TFT-LCD (Flat Panel) Antitrust Litig.)*,
   835 F.3d 1155, 1158-59 (9th Cir. 2016), which holds the California privilege does not apply
27 to mixed federal and state law claims. Because the parties met to settle both federal and state
   law claims, the correspondence is not privileged. Under federal law, in particular FRE 408,
28 settlement communications may not be admitted "either to prove or disprove the validity or
   amount of a disputed claim" but may be admitted "for another purpose."

1

**REPLY ARGUMENTS**

2        In its opposition, Kaiser ignores key legal points and authorities raised by this motion.

3  It overlooks the distinctions between federal and California law on fees, including the

4  statutory assignment of fees to counsel who represent plaintiffs' under FEHA. *See Flannery*

5  *v. Prentice*, 26 Cal. 4th at 582-583. Similarly, it does not take issue with the court's

6  description of fee assignments as "the usual course" in *Gordon v. City of New York*, 2015

7  U.S. Dist. LEXIS 44271, *12-13 (E.D.N.Y. 2015) – where the plaintiff is "not preclude[d]

8  from granting her attorney the authority to negotiate both the amount of her damages and

9  the counsel's fees to which he would be entitled." Nor does Kaiser dispute that, under

10  *Venegas v. Mitchell*, 495 U.S. 82 (1990), counsel's contract for fees from the client is

11  irrelevant to reasonable statutory fees it must pay in settlement. *See* ECF 110, at 11. On

12  those points it does address, Kaiser fails to raise a valid reason why plaintiffs should be

13  required to negotiate against their own counsel during settlement discussions, or to insist

14  that counsel waive statutory fees without judicial determination of reasonableness.

15  **I.      Kaiser's Opposition Shows the Dispute is Ripe for Rule 16 Relief**

16        After mis-characterizing plaintiffs' Rule 16 motion as seeking an "advisory opinion,"

17  Kaiser claims it is premature to address the legality of any fee waiver in a settlement yet to

18  be negotiated. *See* ECF 120, at 16-17. This argument underscores the flaw in Kaiser's entire

19  approach. Instead of grappling with plaintiffs' request for judicial intervention *before*

20  settlement proceedings go forward, Kaiser cites only to cases involving fee disputes *after* a

21  settlement has already been reached. *See Hill v. Kaiser Foundation Health Plan*, (ECF 121,

22  Exh. 1); *Evans v. Jeff D.*, 475 U.S. 717 (1986); *Pony v. County of Los Angeles*, 433 F.3d

23  1138 (9th Cir. 2006); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); and

24  *Ramirez v. Sturdevant*, 21 Cal. App. 4th 904 (1994). None of these cases forecloses the

25  authority of this Court to institute reasonable measures to protect against actual conflicts

26  during settlement negotiations.

27        Based on Kaiser's own contentions, there can be no doubt this dispute is ripe for Rule

28  16 relief. Kaiser insists on its right to demand statutory fee waivers in lump sum offers,

even as it blames plaintiffs' counsel for the ensuing future conflict. *See* ECF 120, at 14-16.

**II.      Lessons Learned From the Prior Experience in *Hill* Provide Reason for this Motion, and Nothing from that Case Supports Kaiser's Opposition**

Kaiser repeatedly cites to the dispute over fees that grew out of the settlement in *Hill* as if those proceedings support its opposition to this Rule 16 motion. In fact, nothing from Magistrate Judge Beeler's post-settlement determination of fees, or the Ninth Circuit's unpublished affirmance on alternative grounds, supports Kaiser's position here. It was the lessons learned from the experience in *Hill* that gave rise to this Rule 16 motion.

In *Hill*, Judge Seeborg referred this case to Magistrate Judge Beeler for settlement proceedings, and Kaiser agreed to enter into staged settlement discussions – first to address programmatic relief for the benefit of the putative class, second to negotiate over named plaintiff damages, and third to address reasonable statutory attorneys' fees and costs. After reaching agreement in stages I and II, however, Kaiser reneged on its agreement, and – through the magistrate judge – insisted plaintiffs' counsel negotiate against the clients to recover a portion of statutory fees from their recoveries. When plaintiffs' counsel refused, Kaiser made a written settlement offer which purported to pay named plaintiffs every penny to which they agreed, if they signed a settlement agreement that compromised counsel's statutory fees at a fraction of counsel's fee demand.

*Hill* was the first time when an employer was able to force undersigned counsel to negotiate against clients against their will. Counsel's retainer at the time limited his remedy for non-consented fee waiver to a single lodestar amount. Kaiser was allowed to address plaintiffs directly over counsel's objections, and convinced them they would recover their demands without consequence to their waiver of fees. Counsel followed his legal obligations, and consummated the settlement when so directed.

After settlement, the case was reassigned to Judge Beeler for all purposes, without undersigned counsel's consent. In a motion, counsel requested that the court determine his reasonable fees, and assess them against Kaiser on a finding that the fee waiver was void for misconduct. In the alternative, he asked that his lodestar be assessed against the plaintiffs pursuant to contract. *See United States ex rel. Depace v. Cooper Health System*, 940 F.Supp.2d 208, 212 (D.N.J. 2013).

1    In *Hill*, Judge Beeler denied the request to void the fee waiver, finding that plaintiffs'

2  counsel waited too long after the settlement and dismissal to raise the statutory fee waiver.

3  She also found that Kaiser did "nothing wrong" communicating directly to plaintiffs in a

4  judicially-supervised settlement proceeding. Subsequently, she ordered further briefing on

5  the claim to fees against named plaintiffs. Ultimately, she denied the request for additional

6  fees, finding that counsel's entitlement was controlled by the terms of the settlement

7  between plaintiffs and Kaiser. In the alternative, the magistrate judge ruled that counsel

8  recovered an amount that was equivalent to his lodestar, after various reductions to the

9  hours and rates billed against the clients.

10    Counsel appealed these rulings to the Ninth Circuit. Although he was unable to

11  recover any additional fees, the Ninth Circuit affirmed the judgment on alternative grounds.

12  Where the magistrate judge found that the Court lacked jurisdiction due to the fact that

13  counsel had not sought relief earlier, the panel affirmed the denial of fees against Kaiser on

14  the grounds that the waiver was valid. *Berne v. Kaiser Found. Health Plan Inc.*, 719 F.

15  App'x 651, 652 (9th Cir. 2018) ("Friedman is bound by this commitment, and neither

16  California law nor public policy requires a different result"). The panel did not reach the

17  contention that Kaiser's counsel engaged in improper *ex parte* communications with his

18  clients., because the contention "is disputed and would not, in any event, render the

19  Settlement Agreement unenforceable absent additional evidence, not present here, that the

20  communications improperly influenced the clients' decision to settle." *Id*. The panel did not

21  address issues raised over the use of ethical conflicts during settlement discussions.

22    Although the panel also denied additional fees against the clients, it did not adopt the

23  rule that the terms of the settlement overrode the contract. To the contrary, the panel held:

24    The attorney-client Fee Agreement obligated Friedman's clients to pay
     Friedman's "lodestar fee" if the clients "waive [Friedman's] right to recover
25    attorneys' fees, costs or expenses" in a settlement agreement. Although the
     clients instructed Friedman to sign the Settlement Agreement, which waived
26    Friedman's right to collect additional fees from Kaiser, the clients owe
     Friedman nothing further because, as the magistrate judge meticulously
27    determined, Friedman had already received his lodestar fee through the
     settlement. [*Id*.]
28

Based on lessons learned from the experience in *Hill*, here,

- Counsel has modified retainer terms, including additional language on the assignment rights, the waiver of conflicts, and consequences of a breach.

- The retainer expressly includes a 2.0 multiplier of the lodestar to account for contingent risk under *Ketchum v. Moses*.

- Kaiser was not able to pit Gamble against her attorney at mediation, and both plaintiffs and counsel are united in their approach to the settlement conference with Magistrate Judge Spero.

- Plaintiffs raise this issue now under Rule 16, rather than wait for Kaiser's tactics to play out during confidential post settlement proceedings.

Although Kaiser hopes to prejudice the Court by complaining about the amount of time and effort to resolve the fee dispute in *Hill*, the lessons learned from that experience militate in favor of this Rule 16 motion, not against it. Taking a proactive posture, plaintiffs seek to institute measures to prevent the artificial conflicts from arising in the first place.[3]

## III.   It May Be Ethical to Offer Fee Waiver Settlements, but the Court Has Authority to Control the Conduct of Counsel During Negotiations

As Kaiser argues, there is no ethical bar to fee waiver settlement offers. *See* CA Bar Formal Ethics Op. No. 2009-176. Nonetheless, the Court has an interest to protect against the tactic uniformly used by Kaiser. As the Arizona Supreme Court stated:

> We wish to discourage the previously-described tactic of "driving a wedge" between lawyer and client in negotiations. Although nothing in our ethical rules expressly prohibits separate offers of attorneys' fees, we agree with the New York City Bar ethics committee that they frequently pose a serious dilemma for lawyers. New York City Bar Association Committee on Professional Ethics, formal op. 80-94. Quite simply, such offers are often intended to place attorneys in the uncomfortable position where they may be caught between their own need to be compensated for legal services and what might otherwise be in their clients' best interests. We therefore urge judges to carefully scrutinize attempts to employ this practice. [*In Re Fee*, 182 Ariz. 597, 601-602 (Ariz. Sup. Ct. 1995).]

---

[3]Kaiser's arguments about the purported unreasonableness of counsel's fee demands in *Hill* and at mediation of Gamble's claims are undercut by its stated position that it wants to preclude the Court from determining reasonable statutory fees.

1    Prior to the Supreme Court's decision in *Evans v. Jeff D.*, it was an open question

2  whether defendants could require simultaneous negotiations of the merits and fees under

3  federal fee-shifting statutes. In the Ninth Circuit, they could not. In *Jeff D.*, the district court

4  denied fees following a settlement with a fee waiver, but the Ninth Circuit reversed, holding

5  the attorney entitled to statutory fees notwithstanding the waiver.

6    > These considerations take on greater force in civil rights cases. The
       > Congress expressed approval of attorney's fees awards in such cases. ... [A]
7      > successful section 1983 claimant "should ordinarily recover an attorney's
       > fee unless special circumstances would render such an award unjust." Thus,
8      > a district court is normally obliged to award fees to a successful section
       > 1983 plaintiff, and successful plaintiffs include those who have negotiated
9      > successful settlements. [*Jeff D. v. Evans*, 743 F.2d 648, 651 (9th Cir.
10     > 1984).]

11    While the High Court reversed, its decision does not control. *Jeff D.* was based upon

12 §1988, with the majority refusing to recognize the important public policy of attracting

13 competent counsel to accept federal civil rights litigation. That majority opinion would not

14 have prevailed over the dissent by Justice Brennan, as applied to FEHA. *See* 475 U.S. at

15 754 (Brennan, dissenting) ("An independent examination leads me to conclude: (1) that

16 plaintiffs should not be permitted to waive the "reasonable fee" provided by the Fees Act;

17 but (2) that parties may undertake to negotiate their fee claims simultaneously with the

18 merits so long as whatever fee the parties agree to is found by the court to be a "reasonable"

19 one under the Fees Act). As pointed out in the moving papers – and not refuted by Kaiser –

20 California departs from federal fees law directly on point. *See Flannery*, 26 Cal. 4th at

21 588-590; *Lindelli*, 139 Cal. App. 4th at 1514-1516 (2006) (rule based on *Jeff D.* "cannot be

22 the law in California after *Flannery*").

23    More importantly, the majority did not restrict the attorney's right to contract with the

24 client on assignment. As pointed out by Justice Brennan,

25    > it may be that civil rights attorneys can obtain agreements from their clients not
       > to waive attorney's fees. Such agreements simply replicate the private market
26     > for legal services (in which attorneys are not ordinarily required to contribute to
       > their client's recovery), and thus will enable civil rights practitioners to make it
27     > economically feasible -- as Congress hoped -- to expend time and effort
       > litigating civil rights claims. [*Evans v. Jeff D.*, 475 U.S. at 766.]
28

Reply re Rule 16 Motion re Settlement Posture – Page 12

1    This contractual right to assignment nullifies the effect of *Jeff D.*, at least when the

2  action includes monetary relief. As recently noticed by one scholar, the problems created by

3  the decision in *Jeff D.* may be solved by the decision in *Venegas*. *See* Carle, "The

4  Settlement Problem in Public Interest Law," 29 Stanford Law & Policy Review 1, 22-30

5  (2018). Here, counsel followed the practice in the private marketplace, and contracted with

6  plaintiffs to reduce their recoveries to account for unpaid attorneys' fees if they waive

7  statutory fees without consent. Plaintiffs and their counsel in *Jeff D.* sued for injunctive

8  relief, only; and plaintiffs were not seeking a monetary benefit that they would have to

9  forego in the event of a fee-waiver settlement. For that reason, it is absurd for Kaiser here to

10  argue, as it does, that the majority in *Jeff D.* approved of "lump sum" settlement offers. The

11  defendant there engaged in a "no sum" settlement offer, one which left counsel unpaid.

12  **IV.   Cases Cited by Kaiser as "Controlling Law" are Not Even on Point.**

13    In its opposition, Kaiser cites a number of cases that are not on point, arguing that they

14  are "controlling law" which plaintiffs' counsel failed to cite.

15    In *Pony*, 433 F.3d at 1141-1142, the defendant and plaintiff settled a claim under

16  §1983, including a waiver of fees under the Fees Act, §1988. Plaintiff's prior attorney –

17  who had already been substituted out – had a contract for a complete assignment of the right

18  to claim attorneys' fees, such that it would have precluded the client from directing a

19  settlement of fees notwithstanding the unyielding right of clients to settle claims. After the

20  case had settled and the action dismissed, the attorney sought relief from judgment, and for

21  statutory fees notwithstanding the waiver. Relying on *Jeff D.,* the Ninth Circuit held that the

22  client possessed the right to claim fees under §1988, one that could not be transferred in

23  whole to the attorney. *Id.*, at 1144-1145. Further, because the retainer transferred the client's

24  entire interest in claiming (and therefore settling fees) – as opposed to an agreement to pay

25  reasonable fees according to specified provisions if the fee claim is settled without consent

26  – the Ninth Circuit distinguished the solution provided in *Venagas*. *Id*.

27    Here, counsel would be entitled to claim fees under FEHA – not just §1988 – and

28  California has rejected the fundamental holding of *Evans v. Jeff D.* that the right to claim

1    statutory fees belongs to the client, not the attorney. More importantly, unlike counsel in

2    *Pony*, the assignment here requires plaintiffs to pay reasonable fees *out of their recovery* if

3    they waive statutory fees, it does not assign counsel the right to claim fees or refuse a

4    settlement on the client's direction. Indeed, the contract here specifically refers to clients'

5    right to direct a settlement, and the consequences of doing so in terms of their recovery.

6         Kaiser completely mis-cites *Hanlon v. Chrysler Corp.*, 150 F.3d at 1026, when it

7    claims this case to be "binding authority" that the Court cannot dictate the terms of

8    settlement, including ruling on the reasonableness of counsel's statutory fees. *Hanlon*

9    involved the district court's approval of a class action over consumer protections, and did

10   not involve a waiver of statutory fees. There is nothing in the Ninth Circuit's decision to

11   preclude or even dissuade the Court from protecting against conflicts during settlement

12   negotiations. *Id.*, at 1027. Unlike this case, *Hanlon* had to do with approval *after* a

13   settlement had taken place. Contrary to Kaiser's suggestion of a minimal role for the Court,

14   the Ninth Circuit scrutinized terms, holding "settlement approval that takes place prior to

15   formal class certification requires a higher standard of fairness." *Id.*, at 1026.[4]

16        Finally, Kaiser cites to *Apple Computer, Inc. v. Superior Court*, 126 Cal. App. 4th

17   1253, 1278 (2005) for the proposition that California law recognizes "lump sum" settlement

18   offers. That case, however, was a consumer class action, where fees were to be awarded out

19   of a common fund, not pursuant to statute. Moreover, it involved disqualification of a firm

20   acting as both class counsel and class representative; it did not involve a contract which

21   protected rights to statutory fees. *Id*. In *dicta*, the court referred to permissive "lump sum"

22   agreements, but it did not address problems that arise when one side expressly disavows

23   engaging in such an inherently conflicting practice, or the authority of courts to protect

24   against conflict during settlement discussions. *See* 126 Cal.App.4th at 1269.

25

26        [4]The law of this circuit requires court approval of pre-certification dismissals. *See
Diaz v. Trust Territory of the Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989). "Although

27   *Diaz* was decided prior to the 2003 amendments to Rule 23(e) - which now explicitly states
that it applies only to certified classes - courts in this circuit have generally concluded that

28   *Diaz* remains binding precedent subsequent to those amendments." *In re Conagra Foods*,
2014 U.S. Dist. LEXIS 194130, at *13-16 (C.D. Cal. 2014).

1    **V.    Kaiser Presents No Basis to Avoid Judicial Determination of Reasonableness**.

2           Independent of the request that the Court order the parties to separate negotiations

3    over damages and statutory fees, plaintiffs ask for an order which directs the parties to

4    submit any dispute over statutory fees to the Court for judicial determination rather than

5    reject or defeat a settlement reached on the merits. Kaiser purposefully conflates judicial

6    determination of reasonable fees with judicial control over settlement terms. Ordering the

7    parties to submit unresolved disputes over statutory fees to the Court is not a judicial

8    dictation of settlement terms. Instead, plaintiffs' counsel seeks to invoke FEHA which, in

9    the words of the California Supreme Court in *Flannery*, 26 Cal. 4th at 582-583, provides

10   "assurance" to attorneys considering cases under FEHA that "if they obtain a favorable

11   result for their client, they will actually receive the reasonable attorney fees provided for by

12   the Legislature and computed by the court."

13          In its opposition, Kaiser offers no reasoned basis to avoid judicial determination of

14   statutory fees. In fact, it undercuts its own position. Kaiser claims that plaintiffs' counsel

15   seeks "unreasonable and excessive attorneys' fees." ECF 120, at 11:15. It asserts he claims

16   too many hours for work on the case, and at rates that are higher than those permitted under

17   fees law. *Id*., at 11-12. Kaiser's false and unsupported assertions about counsel's fees could

18   not possibly be believed on this record. Plaintiffs seek a rule on judicial determination of

19   fees that would apply equally to both sides. Counsel has nothing to gain by making

20   unreasonable demands for statutory fees while simultaneously requesting the Court's

21   determination. Similarly, Kaiser cannot make a claim that its negotiations over fees is in

22   good faith if it refuses to submit the matter to the Court absent an agreement.

23          Finally, Kaiser's claim at 5:8-9 it has "never taken such an extreme position that 'fee

24   waivers may be demanded by defendants in all cases'" is flatly contradicted by its statement

25   at 1:6-7 submission of fees to the Court constitutes "settlement terms to which Defendants

26   have never—and will never—agree." It admits it demands fee waivers "adopted as a

27   uniform policy or practice," a settlement tactic expressly disapproved by the majority in *Jeff*

28   *D.* under federal fees law. 475 U.S. at 739.

**CONCLUSION**

For the foregoing reasons, plaintiffs request that the Court issue plaintiffs' proposed order (ECF 118) concerning the parties' settlement posture.

Respectfully submitted,

Dated: June 12, 2019                LAW OFFICE OF JEREMY L. FRIEDMAN

By:   /s/Jeremy L. Friedman
      Jeremy L. Friedman
      Attorney for plaintiff Lunell Gamble

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed with the Clerk of the Court for the Northern District of California, by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Jeremy L. Friedman
Jeremy L. Friedman