UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**ORIGINAL**

Before The Honorable YVONNE GONZALEZ ROGERS, Judge

| | | |
|---|---|---|
| Lunell Gamble, and Sheila | ) | **Motion to Dismiss** |
| Kenned, on behalf of | ) | **Case Management** |
| themselves as well as a class | ) | **Conference** |
| of similarly situated | ) | |
| individuals, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | NO. C 17-06621YGR |
| | ) | |
| KAISER FOUNDATION HEALTH | ) | |
| PLAN, INC.; KAISER FOUNDATION | ) | Pages 1 - 37 |
| HOSPITALS, INC.; and THE | ) | |
| PERMANENTE MEDICAL GROUP; | ) | |
| all doing business as KAISER | ) | |
| PERMANENTE MEDICAL CARE | ) | |
| PROGRAM, | ) | |
| | ) | |
| Defendants. | ) | Oakland, California |
| _____ | ) | Monday, April 22, 2019 |

### REPORTER'S TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiffs:          Law Office of Jeremy Friedman
                         2801 Sylhowe Road
                         Oakland, California  94602
                    BY:  JEREMY L. FRIEDMAN, ATTORNEY AT LAW

For Defendants:          GBG LLP
                         633 West 5th Street, Suite 3330
                         Los Angeles, CA  90071
                    BY:  AMANDA BOLLIGER,
                         HEATHER A. MORGAN, ATTORNEYS AT LAW

Reported By:        Raynee H. Mercado, CSR No. 8258

Proceedings reported by electronic/mechanical stenography; transcript produced by computer-aided transcription.

```
 1    Monday, April 22, 2019                        2:04 p.m.
 2                    P R O C E E D I N G S
 3         THE CLERK:  Calling civil action 17-6621, Lunell
 4    Gamble versus Kaiser Foundation Health Plan.
 5       Counsel, please come forward and state your appearances.
 6         MR. FRIEDMAN:  Good afternoon, Your Honor.  Jeremy
 7    Friedman for the plaintiffs.
 8         THE COURT:  Good afternoon.
 9         MS. BOLLIGER:  Good afternoon, Your Honor.  Amanda
10    Bolliger for the defendants.
11         MS. MORGAN:  And Heather Morgan for the defendants.
12         THE COURT:  I had Claire Hoffman.
13         MS. BOLLIGER:  Ms. Hoffman is no longer with our
14    firm, Your Honor.  But Ms. Morgan should be on our caption as
15    well.  Ms. Morgan and myself, Ms. Bolliger.
16         THE COURT:  Okay.
17       All right.  So if you'll submit a notice so that we can
18    take her off.
19         MS. BOLLIGER:  Of course, Your Honor.
20         THE COURT:  Thank you.
21       All right.  We're going to do a number of things today.
22    First, with respect to the outstanding motion, the motion is
23    granted.  And in the first instance, I previously struck a
24    number of allegations in the third amended -- which remain in
25    the third amended complaint.  And I can appreciate that you
```

1    put disclaimer language in there, but the issue is preserved

2    for appeal.  You don't need to put disclaimer language in

3    there.  And it implicates issues when I get to summary

4    judgment or later in proceedings.  So you're ordered, to the

5    extent you don't recognize that, to strike them and take them

6    out.  The issue remains preserved.

7        So you are directed to omit from the next complaint

8    paragraphs 51, 53, and from paragraph 59, the section -- or

9    the -- the phrase -- paragraph -- or actually, I guess it

10   should be -- it a paragraph, but it should be may be a statute

11   section 1981 from lines 7 and 8.  And then from paragraph 60,

12   quote, and section 1981, closed quote, lines 10 and 11.

13       Next, despite the revised allegations, I still believe

14   that the settlement tactics claim is precluded by the

15   Noerr-Pennington doctrine.  For that proposition, I rely on

16   Nunag, which is N-u-n-a-g, dash, Tanedo, T-a-n-e-d-o, versus

17   East Baton Rouge Parochial School Board, 711 F3d. 1136 at

18   1138, 39.  It's a Ninth Circuit case, 2013.

19       The doctrine -- this Noerr-Pennington doctrine was

20   developed to prevent claims based upon the First Amendment

21   protection petitioning activity, as well as conduct, quote,

22   incidental to the prosecution of the suit, closed quotes,

23   unless such activity is a sham.

24       For this proposition, I rely on *Theofel*, T-h-e-o-f-e-l,

25   versus *Farey-Jones*, F-a-r-e-y, dash, Jones, 359 F3d. 1066 at

1  1071, Ninth Circuit 2004; and *Kearney vs. Foley & Lardner,*

2  *LLP*, 590 F3d. 638, jump cite 634, Ninth Circuit case, 2009.

3       As I previously noted in dismissing the claims in the

4  second amended complaint, the Ninth Circuit has held that the

5  doctrine bars claims based upon decisions to accept or reject

6  a settlement, settlement demands and discovery misconduct.

7       Again, more authority, *Freeman vs. Lasky, Haas & Cohler*,

8  C-o-h-l-e-r, 410 F3d., 1180 at 1184-85, Ninth Circuit case,

9  2005; *Sosa vs. DIRECTTV, Inc.*, 437 F3d. 923 at 942, Ninth

10  Circuit, 2006; *Columbia Pictures Industries, Inc. vs.*

11  *Professional Real Estate Investors, Inc.,* 944, F2d. 1525 at

12  1528, Ninth Circuit case, 1991, which quotes and is affirmed

13  in a Supreme Court case but, effectively, the important quote

14  is that a decision to accept or reject an offer of settlement

15  is conduct incidental to the prosecution of the suit.

16  Accordingly, that kind of activity falls under

17  Noerr-Pennington, and there can be no liability.

18       In order -- as I indicated in the last order, in order to

19  fall within the limited exception, you would have to allege

20  that the activity was for an objectively baseless undertaking

21  and undertaken for an unlawful purpose.

22       The plaintiffs amended their allegations in paragraphs

23  22(a) through (c) and paragraph 40 and claim that Kaiser uses

24  settlement tactics to perpetuate discrimination and

25  retaliation.  However, the court finds that these are, again,

1    conclusory and without any specific facts alleged to support

2    them.

3         Now, the parties agree about the pleading standard

4    applicable to sham litigation exceptions.  And it appears that

5    the Ninth Circuit has not yet been as clear on the topic as it

6    could be.  I wouldn't call it a split because -- I would say

7    there's a conflict.  And each of you focus on the case law

8    that supports your view.

9         So when I looked at *Empress* Liability -- *Limited Liability*

10   *Company vs. County and City of San Francisco*, 419 F3d. 1052,

11   Ninth Circuit case, 2005, relied on by the plaintiffs, there

12   was no heightened pleading standard articulated in that case.

13        However, in the cases which have followed, namely, *Kearney*

14   and -- *vs. Foley & Lardner*, previously cited, and that case

15   also cited back to both *Boone vs. Redevelopment Agency* and

16   also *Empress* and indicated that there was a heightened

17   standard.  Given the nature of the claim, it seems to me more

18   consistent to find that the heightened standard applies,

19   although I don't think that I need to do it here as there

20   still isn't sufficient factual content.

21        But *Kearney* did not explicitly overrule *Empress*.  It just

22   found opposite of *Empress* without explicitly overruling it.

23   So if this ever get to the Ninth Circuit, perhaps they can

24   clarify that standard for the rest of us down here.

25        In any event, as I said, the motion is granted, and so the

```
 1    fifth cause of action is -- is stricken and dismissed and the
 2    additional paragraphs 22 and its subparts and -- what else is
 3    left?  Think I've struck everything else.
 4        So --
 5              MR. FRIEDMAN:  Can I --
 6              THE COURT:  Go ahead.
 7              MR. FRIEDMAN:  Question of clarification, Your Honor?
 8              THE COURT:  Yes.
 9              MR. FRIEDMAN:  Not to argue the merits of the motion,
10    but the decision to strike the paragraphs even if it doesn't
11    support a claim, the cases that we cited in the motion show
12    that these allegations, even if they don't support a claim
13    under Noerr-Pennington, still are relevant for various
14    purposes, so we'd ask that you not strike those paragraphs but
15    you simply dismiss the fifth cause of action.
16              THE COURT:  Denied.  We aren't going to have them in
17    there.  We aren't going to re-litigate these issues.  There's
18    no need to have them there.
19        If we hadn't had motion practice, fine.  But they will
20    confuse the issues and they suggest a wrongdoing.  And I can
21    understand your frustration, but the law doesn't support your
22    view, so I think that in light of that, they should be
23    stricken.
24              MR. FRIEDMAN:  The issue wasn't so much that -- that
25    we're trying to make the wrongdoing part of our case.  It's
```

```
 1       just that the testimony that we're intending to elicit on how

 2       Kaiser demands confidentiality and how it -- and how it

 3       hire -- how it insists on no rehire designations are both

 4       facts that support the underlying claim of discrimination.  So

 5       even if we're not allowed to sue on the basis of -- of a claim

 6       that's based on those facts, those facts are still relevant to

 7       the question of discriminatory intent --

 8            THE COURT:  Well, I'm not --

 9            MR. FRIEDMAN:  -- relevant to retaliation.

10            THE COURT:  I'm not sure that they are.  So at this

11       juncture, strike them.  Your request is denied.  And I don't

12       want to see them in the fourth amended complaint.

13         But let's talk about where this case is going.

14            MS. BOLLIGER:  Your Honor, if I may, just for

15       clarification, there were a couple of other paragraphs that we

16       listed in -- among those to be stricken pursuant to the

17       Noerr-Pennington doctrine, so I just wanted to be clear on the

18       record.  I -- I have the complete list if you'd like me to

19       read them.

20            THE COURT:  Well, I have -- so I have -- the fifth

21       cause of action.

22            MS. BOLLIGER:  Yes.

23            THE COURT:  In its entirety.

24            MS. BOLLIGER:  Right.

25            THE COURT:  Paragraph 22 and its subparts.
```

1          **MS. BOLLIGER:**  Yes.

2          **THE COURT:**  Paragraph 40 --

3          **MS. BOLLIGER:**  Yes.

4          **THE COURT:**  -- in case that wasn't listed.

5       Paragraph 51 was already stricken.

6          **MS. BOLLIGER:**  Correct.

7          **THE COURT:**  Paragraph 53 --

8          **MS. BOLLIGER:**  Yes.

9          **THE COURT:**  -- was already stricken.

10      And then 59 and 60 were already stricken, so what is left?

11         **MS. BOLLIGER:**  Just paragraph 90, Your Honor, was the

12      only last one.

13         **MR. FRIEDMAN:**  That's in claim five.

14         **MS. BOLLIGER:**  Oh, my mistake then.

15         **THE COURT:**  All right.

16      So, Mr. Friedman, I have to tell you, I've spent now time

17      with your case and your complaint and last fall, tried a

18      Teamsters case.  Not done very often these days.

19         In fact, we look nationwide when we were doing jury

20      instructions and found not even a handful that had been tried.

21      So when litigators bring cases, they really -- they seek to

22      litigate.  I remember.  I was there.

23         As a trial judge, I look at cases and I try to figure out

24      what am I going to try.  That's what I do.  I have to tell

25      you, I don't know how you are going to try this case.  And I

1    don't know how you are even going to certify a class given

2    *Dukes vs. Wal-Mart*.

3        I say that not to dissuade you, 'cause I know I won't, and

4    I'm not -- and I'm not prejudging.  I'm just -- I'm just not

5    sure in light of what I see how it is you're ever going to get

6    there.

7        So I want to talk in terms of a case schedule about the

8    following:  And that is these days, we would typically not do

9    class certification until much later in the process because

10   there has to be some measure of merits analysis; although,

11   again, we get conflicting cues from the -- from the higher

12   courts about how much merits analysis we can really do versus

13   not.

14       But as a plaintiffs' lawyer, I know that you're spending a

15   lot of time and effort into these kinds of cases, and my view

16   is that, in general, plaintiffs' lawyers should know sooner

17   rather than later if it's not going to work.

18       And you may disagree with me, but you can always take it

19   to the Ninth Circuit without having incurred the -- the level

20   of expense necessary to get to that stage.  And so I'm curious

21   whether in this case, things should be bifurcated so that you

22   can see whether or not you can actually certify a class that

23   makes -- or warrants the time and effort that you're going to

24   put into it before you go down that path.

25           **MR. FRIEDMAN:**  I appreciate that, Your Honor.  I

think, though, that the -- the merits are intertwined with the class certification.  And I don't see -- my plan, at least on how to approach this case, was not to just focus on class certification issues.  In fact, I think the class certification issues come out of broader questions about the liability.

What the plaintiffs understand and what I know to be the case is that Kaiser has a serious problem with race discrimination on a statistical basis, that they know about it because as an large employer, they're required to report to the EEOC.  As a federal contractor, they're required to self-audit and report to the Office of Federal Contract Compliance.

**THE COURT:**  So you do have some measure of statistical analysis.

**MR. FRIEDMAN:**  Oh, yes, in the prior -- in the prior class action case, we found statistical data that showed discrimination.  And -- and it's -- it's not only just that those -- that data that we got in the prior case.  It's the fact that Kaiser has complaint after complaint, investigation after investigation, and they never find that there (sic) had any discrimination at all.

And what they do is they fight every case until it gets to a point where -- every individual plaintiff is isolated, and they say, well, this is just one isolated thing.  You have to

```
 1    look at one -- one supervisor, one manager, one department.

 2         And, in fact, what happens is that racism is a real

 3    problem in our society.  I know -- I'm not lecturing to you or

 4    at least I'm not trying to.  We all know it to be the case.

 5    And Kaiser has that problem.  Kaiser's the largest employer of

 6    African Americans in Northern California.

 7         And I heard one academic say, you're -- there's no such

 8    thing as "I'm not a racist."  You're either a anti-racist or

 9    you're part of the problem.  And Kaiser does not take the

10    steps that it has to do to investigate complaints of

11    discrimination.  And what they do is they put forth a

12    narrative that -- that everything is little isolated.

13         So the purpose of this class action is to get beyond

14    their -- their strategy of just attacking and isolating each

15    individual claim.  Everybody should benefit from knowing how

16    Kaiser approaches these discrimination cases.

17         If it was a plaintiff who had sued employer after employer

18    after employer for discrimination, you bet Kaiser would want

19    to know the facts of those claims, how they ended up, what

20    happened to them.

21         It's the same thing here.  Kaiser's credibility, when it

22    stands up and says, "we're not a racist; we don't

23    discriminate," that needs to be evaluated in the context of

24    what they know in terms of their own discriminatory practices.

25         So I wasn't so interested in just reaching class
```

1    certification.  In fact, what I really wanted to do was to

2    investigate this pattern-and-practice evidence and to look

3    into what Kaiser already knows in terms of its own

4    discriminatory practices and its own failure to undertake the

5    affirmative actions that it's supposed to do and from that,

6    make a decision about whether class certification is

7    necessary.

8        And if not, it would still be something that the

9    plaintiffs would -- would plead and would be able to use that

10   pattern and practice as part of their case.  And there's Ninth

11   Circuit authority on that, that you if you bring a case as a

12   class action -- first of all, there's Ninth Circuit authority

13   saying in individual cases, you can assert pattern and

14   practice, even in an individual case.

15       But there's -- there's controversy over that.  Kaiser

16   cites cases from other jurisdictions that say, no, it has to

17   be a class action in order to be a pattern and practice, the

18   Teamsters presumption.

19       But in this case, Your Honor, there is a Ninth Circuit

20   decision directly on point that says, when there was a --

21   brought as a class but no class certification motion brought

22   or it was denied -- I can't remember which one -- that the

23   individual named plaintiffs could still bring forth a

24   pattern-and-practice case to get that *Teamsters* presumption.

25   And the *Teamsters* presumption is not a big burden.  All it

1    does is it says there's a rebuttable presumption that if an

2    adverse employment action -- if you were fired -- if you were

3    African American and you were fired or denied a promotion,

4    that it has to be justified, and that the burden is on the --

5    the employer.

6        In -- in a pattern-and-practice case, you prove that

7    that's their mode of business.  The burden is on Kaiser to

8    prove that there's a basis for it.  All it does is it reverses

9    that at will doctrine that -- that applies because Kaiser's a

10   big employer.  It discriminates as a statistical matter.  It

11   has to know what it does and what it doesn't, and so it's not

12   that big of a burden for them to be able to take on the burden

13   of proof on the reasons for the termination.

14            THE COURT:  Well, in terms of burden-shifting, just

15   so that you all know, and you should have my perspective given

16   that this is the nature of this case, the way in which I tried

17   that Teamsters case last fall, I believe that for jurors to

18   adequately do their job, they can't be confused, and

19   burden-shifting is confusing for jurors.

20       So if you look at that docket, *Slaight vs. Tata*

21   *Consultancy*.  This was a reverse discrimination case.  Docket

22   is 15-1696, I went through the *Teamsters* analysis, and even

23   though we didn't get through it all because the jury came back

24   in phase one with a defense verdict, I posted on the docket,

25   agreed-upon jury instructions for all of the burden-shifting

1    that happened in that case.  And it's not, obviously, the same

2    case as this.  There wasn't a disparate impact claim.  It was

3    only treatment.

4        So like I said, not exactly the same, but you'll get a

5    sense of my view in terms of how that works in terms of burden

6    shifting.  So it's there for your edification.

7            **MR. FRIEDMAN:**  Thank you, Your Honor.

8            **MS. BOLLIGER:**  Thank you, Your Honor.

9        And I just want to point out that defendants, of course,

10   categorically disagree with plaintiffs' view of defendant's

11   operations, their investigation practices.  And I would just

12   point out that the *Hill* -- the *Hill* matter that I believe

13   plaintiff counsel is referencing far from establishing

14   class-wide discrimination, the parties reached a settlement in

15   that case that dismissed those class claims without prejudice

16   and it was just an individual settlement, so we think that

17   that undermines plaintiffs' counsel's position that there was

18   some class discrimination being demonstrated out of that

19   discovery.

20       Defendants also have many investigation procedures and

21   protocols in place to address internal complaints, and we just

22   disagree with plaintiffs' counsel's representations.

23           **THE COURT:**  Well, that's fine.  I never assume that

24   you agree.  If you did, you would have solved that case before

25   you came into my courtroom.

1          **MS. BOLLIGER:**  Thank you, Your Honor.  I just needed

2     to make my record.

3          **THE COURT:**  Okay.  So you need dates.  Let me say

4     again -- well, I don't know if I've said it again in this -- I

5     don't know if "again" is the right word.  I'm not sure I've

6     said it in this case, but I've said it every time a defendant

7     puts in their CMC statements that they reserve the right to

8     file multiple summary judgments.  That is denied.  You cannot

9     reserve what you do not have, and the federal rules allow you

10    a motion.  And I do not allow more than one.

11        That doesn't mean that I haven't on occasion allowed a

12    defendant to bring more than one.  You need to ask, and you

13    should not presume, nor should you seek to reserve what you do

14    not have.  And you do not have more than one.

15        Is that clear?

16         **MS. BOLLIGER:**  Yes, Your Honor.

17         **THE COURT:**  So you can't agree on a date for

18    disclosures?

19         **MS. BOLLIGER:**  We already actually exchanged initial

20    disclosures, Your Honor --

21         **MR. FRIEDMAN:**  Right.

22         **MS. BOLLIGER:**  -- on the 15th of April.

23         **MR. FRIEDMAN:**  We agreed on the date on initial

24    disclosures, but we haven't agreed on whether or not the

25    parties should comply with the General Order 71 for

1    disclosures in employment cases.  And --

2          **THE COURT:**  Well, it doesn't apply to class actions.

3    But with respect to the individual plaintiffs, I think it

4    would be helpful to move this case along, and you're ordered

5    to comply with it with respect to the two individual

6    complainants.

7          **MR. FRIEDMAN:**  Thank you, Your Honor.  And we were

8    asking that the -- we been served with volumes of discovery

9    requests.  I brought them with me to the courtroom, but I

10   don't -- I don't think you want to see them.  But there's 138

11   document requests.  And I'd like to not have to respond to

12   these until after their General Order 71 compliance.

13       And then if necessary, I'll make whatever objections, and

14   we can litigate whether this is overly burdensome and

15   unnecessary, but --

16       So I was asking that we not serve any written discovery --

17         **THE COURT:**  Let me see them.

18         **MR. FRIEDMAN:**  This is just one --

19         **THE COURT:**  Is it your litigation approach to paper

20   people?

21         **MR. FRIEDMAN:**  No.  Oh, sorry.

22         **MS. BOLLIGER:**  Absolutely not, Your Honor.  We -- we

23   simply seek documents that pertain to each complaint

24   allegation, and there are a lot of complaint allegations in

25   this third amended complaint.

```
 1              THE COURT:  Well, this is not going to be -- and that

 2     includes everything I've already stricken?

 3              MS. BOLLIGER:  We did not include the stricken

 4     allegations, Your Honor, no.  It is -- so we did not include

 5     the fifth cause of action in those discovery requests.  It is

 6     just seeking documents that pertain or support the other

 7     allegations in the complaint and then routine discovery

 8     requests, like plaintiffs' medical records, to the extent they

 9     sought treatment regarding defendant's alleged conduct in the

10     case; their employment records, if they are re-employed; those

11     sorts of basic things.

12          But the vast majority of the requests are simply asking

13     for documents that relate to the complaint allegations.

14              MR. FRIEDMAN:  And these would fall under General

15     Order 71.  They're going to get most if not everything, and

16     it's -- it's just an extra burden on us to have to respond to

17     this.  And if we want to oppose it and object to it, we ask

18     that we do it after the -- after the General -- General Order

19     71 exchange.

20                        (Pause in the proceedings.)

21              MR. FRIEDMAN:  The truth is -- Your Honor, is that

22     plaintiffs have very few documents in their possession.

23              THE COURT:  Yeah, I would agree.

24          If this is your approach, you're going to have problems

25     with me.  Do you understand me?
```

1          **MS. BOLLIGER:**  I understand, Your Honor.

2          **THE COURT:**  All right.  Give this back to him.

3                    (Off-the-record discussion.)

4          **MR. FRIEDMAN:**  Connected with that, Your Honor, we

5     were asking that the depositions not go forward until we have

6     this (sic) exchanges.

7          **THE COURT:**  Yeah, there will -- that order I believe

8     gives you 30 days; is that right?

9          **MR. FRIEDMAN:**  Yes, Your Honor.

10         **THE COURT:**  All right.  Productions for the two

11    plaintiffs on both sides shall be done by May 17th.  After

12    that, revised discovery requests may be promulgated and served

13    to the extent that those documents are not received before or

14    as part of the General Order 71 exchange.

15      I need a fourth amended complaint on file in one week,

16    April 29th.  You're just striking things.  That's all you're

17    doing.

18         **MR. FRIEDMAN:**  Yeah, I agree.  I understand, Your

19    Honor.  It's only that I have a major brief due on the 2nd,

20    and I have today a petition for rehearing due, so can you give

21    me an extra --

22         **THE COURT:**  It's not going to take you that long.

23         **MR. FRIEDMAN:**  It won't.

24         **THE COURT:**  You have the weekend.

25         **MR. FRIEDMAN:**  Okay.

```
 1              THE COURT:  All you're doing is striking things.

 2              MR. FRIEDMAN:  Can you give me an extra -- one more

 3      extra week, just --

 4              THE COURT:  To strike things that I told you to

 5      strike last time?  No.

 6              MR. FRIEDMAN:  Okay.  Will do, Your Honor.

 7              THE COURT:  Answer to the fourth amended complaint's

 8      due a week later, May 6th.

 9          No depositions until after May 17th.  Make sure you're

10      complying with the Northern California rules on

11      professionalism in getting those things scheduled.

12          Now --

13              MS. BOLLIGER:  Your Honor, may I ask a clarifying

14      question?

15              THE COURT:  Yes.

16              MS. BOLLIGER:  When you say no depositions until

17      after May 17th, do you mean that we may not notice any -- that

18      we may not serve a deposition notice until after May 17th or

19      we may not notice the deposition until a date after May 17th?

20              THE COURT:  Let's go with the former.

21              MS. BOLLIGER:  Okay.  Thank you.

22              THE COURT:  All right.  Now your schedules are

23      totally different.

24              MR. FRIEDMAN:  Might we address the settlement

25      conference, 'cause that might impact this -- what our request
```

```
1    is, at least on the rest of the scheduling.

2              THE COURT:  Well, is there a point?

3              MR. FRIEDMAN:  Well, yes, Your Honor.  I believe that

4    a settlement conference would be very helpful in this case.  I

5    know that we have -- we had a mediation with -- with one of

6    the plaintiffs, but that's -- that's where we have these

7    problems, that we would like to bring a Rule 16 motion.

8    First, we'd like to address it here and then potentially bring

9    a separate motion under Rule 16 addressing a specific

10   question -- aspect of our settlement discussions, because

11   Kaiser will only engage in settlement discussions if we agree

12   to compromise our attorneys' fees and give them a global

13   settlement offer that involves me negotiating against my

14   clients.

15       And I can't do that and I won't do that.

16       And so what I have is I have a contract with my clients

17   that they still retain the right to demand a settlement or to

18   direct a settlement but if they do it and they waive my fees,

19   they have to pay twice my lodestar.  And that -- that just

20   simply assigns me the right to negotiate my fees along with

21   any damages.  And it allows me to not be in conflict with my

22   clients when I do that.

23       And I can't get Kaiser to stop doing this technique, but I

24   do need to have the court, if possible, look at in camera my

25   retainer terms and determine whether or not I am in conflict
```

1   with my clients as Kaiser contends.

2       And I don't want to continue with the case if I'm in

3   conflict.  I believe that this -- this contract provision

4   which is in every one of my case -- client cases is --

5   protects both my client and me from having to negotiate

6   against ourselves when we're trying to both negotiate against

7   the defendant.

8       And as long as Kaiser's contending that that creates a

9   conflict, it -- it prohibits this case from going forward.  So

10  after consultation with my own ethicists, they -- she

11  suggested to me that I ask the court to review this

12  circumstance and determine whether or not I'm in conflict with

13  my clients.

14      **MS. BOLLIGER:**  Your Honor, I just want to correct

15  that defendants have not represented to counsel that they

16  believe that there's a conflict.  We don't know if there's a

17  conflict.

18      **THE COURT:**  Well, you put in your statement that you

19  thought there could be.

20      **MS. BOLLIGER:**  There -- sure.  There could be.  I

21  think that --

22      **THE COURT:**  I've never had that in a statement

23  before.  And I've never had it because this allegation has

24  never been raised.

25      **MS. BOLLIGER:**  We've never had this come up in a

```
 1    settlement communication either, Your Honor.  We've never had
 2    a plaintiff's counsel in our combined 30 years of experience
 3    not agree or be willing to negotiate a global settlement of
 4    attorneys' fees.  This is a first for us as well.
 5        But I would not characterize the problem as a conflict for
 6    us anyway.
 7            THE COURT:  You used those words.  You used the word
 8    "conflict."
 9            MS. BOLLIGER:  I'm sorry.  I guess I'm not sure what
10    Your Honor is referring to.  In our CMC statement?
11            THE COURT:  I believe so.
12            MS. BOLLIGER:  We -- our -- our position in the CMC
13    statement, Your Honor, is simply that we don't believe that a
14    settlement conference would be fruitful at this time and
15    that -- that we don't believe the Rule 16 motion is necessary.
16        I would characterize the issue with plaintiffs' counsel
17    and the fee waiver as more of an obstacle to settlement than a
18    conflict.  It has been a -- an obstacle.
19        But -- but that's because defendant's position is that
20    they wouldn't really be able to buy any peace or bring this to
21    a resolution if plaintiffs are still insisting on being able
22    to litigate their fee petition in a settlement.
23        We've just never settled a case that way in our combined
24    years of experience.
25            MR. FRIEDMAN:  Well, I think that's exactly right.
```

 1 | They don't ever allow the court to determine what reasonable

 2 | fees are.

 3 |        **MS. BOLLIGER:**  I don't --

 4 |        **MR. FRIEDMAN:**  They insist on --

 5 |        **THE COURT:**  No, the problem -- well --

 6 |        **MS. BOLLIGER:**  And I don't mean just for Kaiser, Your

 7 | Honor.  I mean for any client.  I've settled dozens and dozens

 8 | of cases, and we've never -- I've never had a plaintiff's

 9 | counsel take this position before:

10 |        **MR. FRIEDMAN:**  There's more to say about what is said

11 | between the parties in the mediation and I don't want to

12 | intrude upon a mediation privilege.  I know the federal courts

13 | don't recognize a mediation privilege, but we did attend this

14 | mediation while the case was pending in state court, and the

15 | state court has a stronger mediation privilege.

16 |    I don't need to invade any sort of communications -- the

17 | privacy of communications between me and Kaiser in the context

18 | of the mediation to make the point that I'm making or to bring

19 | the Rule 16 motion, which simply would look at whether or not

20 | we're in conflict and determine that.

21 |        **THE COURT:**  Well, I don't know that I can stop you

22 | from bringing a motion.  Bring the motion.

23 |        **MR. FRIEDMAN:**  Okay.

24 |    Well --

25 |        **THE COURT:**  But in terms of settlement, it sounds to

1    me like, especially given the nature of this case, that until

2    this issue is resolved, there's no point in wasting the time

3    of a magistrate judge or anyone else to have a conference.

4         **MR. FRIEDMAN:**  Well, we would bring the motion -- I

5    think both the -- the defendants and the plaintiffs here in

6    this case have suggested that we -- we could have a -- work

7    towards a settlement conference with a magistrate judge in --

8    by September.  And I could bring the motion in advance of that

9    so that when we went to a settlement conference, which I

10   believe the ADR coordinator recommended that we do in this

11   case, and both parties are agreeing it -- in this statement to

12   it.

13       So I -- I think that it would be advisable to have a

14   reference -- order of reference to a magistrate judge, and

15   I'll bring a motion before that proceeding.

16        **THE COURT:**  Do you all want to go to a particular

17   magistrate judge or off the wheel?

18        **MS. BOLLIGER:**  Your Honor, Judge Beeler was involved

19   in the -- in the *Hill* matter and resolving that, so she has

20   some institutional knowledge of the parties, but we would be

21   open to being assigned to any magistrate judge.

22        **MR. FRIEDMAN:**  Only because that magistrate judge

23   was -- Beeler -- proceedings in the other case ended up with

24   an appeal on the settlement terms, so I -- I mean, what I

25   suggest is that we -- is that I confer with counsel for Kaiser

1    and see whether we can come up with specific names.

2              **THE COURT:**  Now is your opportunity.  Who are you

3    interested in?  If not, I'll put you on the wheel.  I don't

4    wait around to issue my orders.

5              **MR. FRIEDMAN:**  Okay, your Honor.  I'd be happy to go

6    on the wheel.

7              **THE COURT:**  All right.

8         I'll refer you to a magistrate judge to have a conference

9    completed by September -- you didn't give me -- beginning of

10   September, end of September, middle of September.

11             **MR. FRIEDMAN:**  Maybe end of September would be best.

12             **MS. BOLLIGER:**  That's fine with us, Your Honor.

13             **THE COURT:**  September 30th, 2019.

14        All right.  Given that we've been through multiple rounds

15   of amendments to pleadings, there are going to be no more

16   amendments to pleadings without a court order.  It is not

17   allowed per right.  You must make a motion.

18        In terms of motions for class certification -- this case

19   will not go on forever, folks.  I mean, defendants are

20   suggesting we don't get to class certification until April of

21   2020, and the plaintiff is -- is asking for March of 2021.

22   That's ridiculous in my view.  I'm setting trials in a year.

23             **MR. FRIEDMAN:**  I understand, Your Honor.  In order to

24   handle this case, I was hoping to first focus on the

25   individual plaintiffs and get through a settlement conference,

1    and I was suggesting in the papers that if we could come back

2    in six months -- after the settlement conference, we could set

3    any date after that, would be easier.

4         But if the court is going to set the dates now, then I'm

5    looking to start my intensive class -- you know, class-wide --

6    company-wide discovery including asking about other complaints

7    of discrimination and the documents to support that.

8         And I imagine there's going to be fighting over it, so

9    that's going to start in September.  And I -- and before I can

10   get my experts, I'm going to need to have responses.  I'm

11   probably going to have to litigate some discovery motions.

12   And I would like a year of discovery before I have to disclose

13   experts.

14        It's not unreasonable given the breadth of this case and

15   the amount of work that we've all put into it, but that still

16   needs to get done.

17            THE COURT:  Well, I don't know -- again, I don't know

18   how it is you think that your clients are entitled to -- I

19   mean, and maybe I don't know what the nature of the evidence

20   is but all of the complaints ever filed?

21            MR. FRIEDMAN:  In the Northern -- Northern -- for

22   race discrimination in the Northern District of California.

23   That's -- in the northern region, Northern California region.

24   Sorry.

25            THE COURT:  What about all of the privacy issues.

1          **MR. FRIEDMAN:**  Those are issues that we're going to

2    have to deal with.  And I think that in the context of the

3    motions, that we're going to pry into whether or not those

4    privacy objections that other African Americans have over

5    their employment records should stop this class action from

6    inquiring into them.

7          I mean, basically Kaiser knows what it does in response to

8    all of the different claims of discrimination.  But we don't.

9    And every individual plaintiff should be entitled to know what

10   Kaiser's pattern of responding to complaints are, what they

11   know about it, what they investigate on their own.

12         So that is why some of these things require discovery and

13   require time.  And I can't get those experts until I have the

14   documents.

15         **THE COURT:**  Well, you have to have a view of what it

16   is that exists and/or that you need.

17         This is what I'm going to do.  I still -- I still think

18   that -- you know, discovery is not a fishing expedition.

19         **MR. FRIEDMAN:**  I understand.

20         **THE COURT:**  And it is not clear to me that you have

21   really formulated how it is you want to approach this.  And we

22   are not -- we're not waiting forever.  So this is what I'll

23   do.  I will give you the year to file your motion.  But --

24                (Pause in the proceedings.)

25         **THE COURT:**  March 31st to file the motion for class

1    cert.  You are referred to Magistrate Judge Ryu for all

2    discovery.  You are ordered to have a discovery conference

3    with her within the next 90 days.

4        At that conference, you shall outline for her the nature

5    of the discovery that you seek or will seek, and defendants

6    shall respond, so that she can get a head start on managing

7    what it is you all are doing.  Otherwise, it's like an amoeba.

8        I will check in on you in November.  So we'll have another

9    case management conference November 16th, 2019 at 2:00 p.m.

10   You're required under the local rules to file an updated case

11   management statement.  Make sure that you do.

12       **MS. BOLLIGER:**  Your Honor, I may be mistaken about

13   this, but we had the impression that there may be a prior

14   relationship between plaintiffs' counsel and Judge Ryu, that

15   they may have been colleagues before.

16       **THE COURT:**  Is that true?

17       **MR. FRIEDMAN:**  That's true, Your Honor.

18       **THE COURT:**  Oh, I did not know that.

19       **MS. BOLLIGER:**  Thank you, Your Honor.

20       **THE COURT:**  All right.  Judge Hixon.

21       **MS. BOLLIGER:**  Thank you, Your Honor.

22       **THE COURT:**  In November, I'll give you the rest of

23   your schedule.  At least you know that that motion needs to be

24   filed then, so you should operate under that --

25       **MR. FRIEDMAN:**  Understanding.  Understood.

1          **THE COURT:**  Right, with that deadline.

2          **MR. FRIEDMAN:**  Okay.

3          **THE COURT:**  Okay.

4      If there are any arguments over the protective order, you

5  use the Northern California district protective order.

6      Is that going to be an issue?

7          **MS. BOLLIGER:**  Your Honor, our only -- our concern

8  with the -- the model order is that it would allow the

9  plaintiffs to review confidential documents and information

10  that is produced in this case.  And given that it is a

11  discrimination class action, plaintiff has already indicated

12  that they intend to seek discovery of other employees'

13  employment records, also complaints.

14      And so our concern is that normally in these types of

15  cases, we have a two-tiered protective order so that employees

16  cannot be reviewing each others' private employment records

17  and --

18          **THE COURT:**  Is there any objection?

19          **MR. FRIEDMAN:**  Yes, Your Honor.  We have objections

20  over the protective order that they seek in this case, that

21  they -- that it's based on the Northern District model.  And

22  the Northern District model allows the defendants to simply

23  say anything they want to be secret is confidential even if

24  there's no basis in privilege, there's no basis in privacy,

25  if -- it's all just because they don't like information coming

1   out that makes them look like they discriminate or that

2   they're not taking the actions necessary to stop the

3   discrimination.

4       And so what happens is -- is that as part of the process

5   by which Kaiser suppresses the information about their

6   discriminatory actions so as a class -- as putative class

7   counsel, there are people calling, there are potential

8   plaintiffs that want to come in, there are potential putative

9   class members that want to come in.  And -- and I don't want

10  defendants to be able to stop the sharing of information that

11  has no basis in privilege.

12      Now, if there is a basis in privacy and privilege --

13          THE COURT:  I'm not -- look, privilege is easy to

14  deal with.

15          MR. FRIEDMAN:  Yes.

16          THE COURT:  The question is individuals' privacy.

17  And I don't know why one employee's privacy should be

18  infringed by someone who they don't know.

19          MR. FRIEDMAN:  There's a question as to whether or

20  not what they ascribe as privacy rights is justi- -- justified

21  and whether there's a actual basis.  And if there is a privacy

22  concern, there are ways that we can address them to be able to

23  get the information necessary to litigate this case and also

24  to expose what Kaiser is doing in terms of how they treat

25  African Americans.

1   So I have no problem agreeing to keeping things

2   confidential and private when there's a real basis.  I just

3   don't want that handed (sic) over the defendants to just

4   unilaterally say this is private, when really it's not

5   private.  What it is, is it shows the statistical patterns,

6   for example.

7   And -- or any of the reports that they make to the EEOC.

8   They claim that all of those -- even though there's no names

9   on them, they claim all of those are private, and there's --

10   if there was a proprietary interest, that's something that we

11   would have to litigate as part of a privilege.

12   But -- and I don't mind making specific issues over

13   specific documents, either agreeing to them or litigating

14   them.  But -- but the problem with the protective order is it

15   hands over to Kaiser the right to just simply keep secret what

16   it doesn't want talked about.  And I was hoping to address

17   that early on rather than go through the process of --

18   **THE COURT:**  Well, not only will you address the

19   nature of discovery with Judge Hixon, but you will discuss

20   the -- any special provisions in a protective order.

21   In the meantime, there shall not be any delay in -- in the

22   exchange of documents under General Order 71 on the basis that

23   you don't have a protective order.

24   And if that is the claim, then you use the Northern

25   District one for those purposes, because all of that

1    information should not be too debatable.

2            **MR. FRIEDMAN:**  Thank you, Your Honor.

3            **THE COURT:**  And if you need to do it -- if you need

4    to go to him sooner, that's fine.

5        All right.  What else can we achieve today.

6            **MR. FRIEDMAN:**  The other issue, Your Honor, is the

7    related cases.  We're troubled that Kaiser seems to -- doesn't

8    want to inform the court or plaintiffs about other claims in

9    the administrative process and in the civil courts that would

10   be tolled by the pendency of this case.

11       It's like that they are arguing that they're allowed to

12   mislead other people and other courts about this and it's up

13   to --

14           **THE COURT:**  I don't understand what you're saying.

15           **MR. FRIEDMAN:**  Oh, sorry, Your Honor.

16       Under -- under the case law, when you have --

17           **THE COURT:**  What section of the -- where was this

18   outlined in the statement?

19           **MR. FRIEDMAN:**  In the "Related Cases" section.

20   There's a -- where there's a discussion --

21           **THE COURT:**  I see it.

22           **MR. FRIEDMAN:**  Sorry.

23       And what we ask is -- we ask -- I asked Kaiser if they

24   would tell us what other related cases exist in terms of other

25   people who have administrative claims or court claims about

1   race discrimination.

2          THE COURT:  We're not going to do this here.

3          MR. FRIEDMAN:  Okay.

4          THE COURT:  This is, in fact, the -- the crux of your

5   discovery problem.

6          MR. FRIEDMAN:  Hmm.

7          THE COURT:  Right?  Our understanding of what a

8   related case is -- I am not, for instance, about to relate to

9   this case every discrimination case in the district that was

10  filed before yours -- or anywhere else in Northern California

11  that was filed before yours that relates to Kaiser and

12  discrimination of African Americans.  I'm not going to do it.

13     I would have -- well, I don't know how many I'd have.  But

14  that's not how we -- that's not how we understand that rule.

15  And there's no indication that any of those individuals want

16  to be part of this case in any event or want to be transferred

17  or somehow want changes made to what it is they're doing.

18     So I understand that's your theory.  But we are not there

19  yet.

20          MR. FRIEDMAN:  I misspoke, then, Your Honor.  It's --

21  it's -- and then you're absolutely correct, if that's -- if

22  you're asking whether or not all these cases should be brought

23  into this court, that's not what we're asking at all.  At all.

24     The question has to do with -- and I've seen this in other

25  class actions when I'm dealing with administrative

1    proceedings, and I get a letter from the -- either from the

2    defendant or from the EEOC saying there is a pendent -- there

3    is a class action pending that might impact your deadlines.

4        So it's just so that other people who have administrative

5    claims are not faced with this timeliness question that

6    doesn't exist.  If they're saying, listen, you have to file

7    your claim with the EEOC within a certain number of days or

8    you have to file your lawsuit within a certain number of days

9    after the right-to-sue letter, those rules actually don't

10   apply to anybody else who has a claim against the Kaiser for

11   race discrimination and retaliation.

12       And all I'm asking for is that we identify who has made

13   those complaints.  And we inform them that the -- or at least

14   stop Kaiser from arguing timeliness objections in those cases,

15   'cause otherwise, they'll -- they'll be subject to Kaiser's

16   timeliness arguments that are frivolous but they don't know it

17   because this case is pending.

18           **MS. BOLLIGER:**  Your Honor --

19           **THE COURT:**  Response?

20           **MS. BOLLIGER:**  We -- we disagree with the analysis,

21   and I think the fundamental flaw in the analysis is, in our

22   view, that plaintiffs' position that a statute of limitations

23   defense would be frivolous if plaintiffs have a potential

24   tolling argument.  That doesn't make the statute of limitation

25   defense frivolous.  It just means that plaintiffs have the

1    ability to argue an exception to the statute of limitations,

2    and these things happen all the time in cases.

3        This case is a matter of public record so other plaintiffs

4    can easily find it.  And we would also point out that Rule 23

5    provides the clear method for providing notice to putative

6    class members.  It doesn't contemplate this.  Certainly the

7    advisory committee, if they thought this kind of a notice was

8    necessary for putative class members, they could have provided

9    this type of notice that plaintiffs are asking for.  They did

10   not.

11       And so our position is that this is just not necessary.

12           THE COURT:  It is --

13               (Simultaneous colloquy.)

14       THE COURT:  -- almost that request for a

15   pre-notice -- precertification notice, and there is no class

16   yet.

17           MR. FRIEDMAN:  That's right, Your Honor.  We're not

18   asking for class notice per Rule 23.  Most definitely, we're

19   not there yet.

20           THE COURT:  But that's in effect what you're asking

21   for.

22           MR. FRIEDMAN:  No, what we're asking for, Your

23   Honor --

24       Sorry.  What we're asking for is that -- it has -- it's

25   not about notification of a class certification motion or a

1  certified class.  What it is, is it's notification -- it's --

2  it's stopping Kaiser from making -- from telling those other

3  parties that --

4          THE COURT:  If --

5          MR. FRIEDMAN:  -- their claims are late.  So it's

6  about -- it's about figuring out which cases have tolled

7  statute of limitations and -- and acting appropriately on

8  that.

9          THE COURT:  Mr. Friedman, I -- frankly, I don't know

10  where you're coming from.

11          MR. FRIEDMAN:  Okay.

12          THE COURT:  So if you want me to issue an order,

13  especially given that I don't know what the basis is of your

14  order (sic), and I don't know specifically what you are asking

15  me to order --

16          MR. FRIEDMAN:  Um-hmm.

17          THE COURT:  -- make a motion.

18          MR. FRIEDMAN:  Make a motion.

19          THE COURT:  And lay out your authority, because it

20  just --

21          MR. FRIEDMAN:  That makes sense, Your Honor.

22          THE COURT:  Yeah, I just don't -- I don't see how

23  that operates in the framework of rules in an instance where

24  right now, you represent two individuals and you may one day

25  represent more but you don't yet.

1        **MR. FRIEDMAN:**  I appreciate all of that, Your Honor.

2        **THE COURT:**  Okay.

3    Anything else?

4        **MS. BOLLIGER:**  Not from defendants, Your Honor.

5    Thank you.

6        **MR. FRIEDMAN:**  No, thank you.

7        **THE COURT:**  All right.  Have a good day.  We're

8    adjourned.

9        **MS. BOLLIGER:**  Thank you, Your Honor.

10       **MR. FRIEDMAN:**  Thank you, Your Honor.

11       (Proceedings were concluded at 3:04 P.M.)

12                    --o0o--

13

14            **CERTIFICATE OF REPORTER**

15

16       I certify that the foregoing is a correct transcript

17   from the record of proceedings in the above-entitled matter.

18   I further certify that I am neither counsel for, related to,

19   nor employed by any of the parties to the action in which this

20   hearing was taken, and further that I am not financially nor

21   otherwise interested in the outcome of the action.

22

23   _____

24   Raynee H. Mercado, CSR, RMR, CRR, FCRR, CCRR

25                Tuesday, June 4, 2019