Jeremy L. Friedman, CA Bar No. 142659
LAW OFFICE OF JEREMY L. FRIEDMAN
2801 Sylhowe Road
Oakland, Ca. 94610
Tel: (510) 530-9060
Fax: (510) 530-9087

Attorney for plaintiffs and putative class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUNELL GAMBLE, and SHEILA KENNEDY, on behalf of themselves as well as a class of similarly situated individuals,<br><br>    Plaintiffs<br><br>vs.<br><br>KAISER FOUNDATION HEALTH PLAN, INC; KAISER FOUNDATION HOSPITALS, INC.; and THE PERMANENTE MEDICAL GROUP; all doing business as KAISER PERMANENTE MEDICAL CARE PROGRAM<br><br>    Defendants | Case No. 4:17-cv-06621-YGR<br><br>**STATEMENT OF COMPLIANCE WITH JULY 19, 2019, ORDER ON PLAINTIFF'S RULE 16 MOTION**<br><br>Date: August 29, 2019<br>Time: 9:01 a.m.<br>Courtroom 1<br><br>Hon. Yvonne Gonzalez Rogers |

    Pursuant to the Court's July 19, 2019, Order (ECF 134), plaintiffs Lunell Gamble and Sheila Kennedy file this statement regarding their plan to proceed with this action, along with a certification of counsel regarding compliance with the Court's Order.

    Plaintiffs brought their Rule 16 Motion in order to address, up front, potential conflict of interests that might arise during settlement discussions in this case, particularly in the event defendant seeks to pit plaintiffs against their counsel over statutory fees during negotiations. The motion was based in part on excerpts of the terms from the retainer agreement, which itself is modeled on standard practices in the industry since the Supreme Court's ruling in *Evans v. Jeff D.*, 475 U.S. 717 (1986). As was stated at the conference, counsel requested the Court's review of the potential conflict issue early on, as ethically he would not want to continue in the case in conflict with his clients.

Plaintiffs' counsel promptly provided a copy of the Court's July 19, 2019, order to the plaintiffs, and since then counsel has spoken several times with each on the telephone and in person to discuss it. In addition, plaintiffs were advised to obtain advice from independent counsel regarding the Order and the retainer agreement, and both appreciated that the Court was addressing their interests in the matter.

In response to the Court's order, plaintiffs state that they wish to continue in the litigation if possible under a revised retainer agreement that will satisfy the Court's Order concerning the potential conflict during settlement negotiations. Plaintiffs' counsel has prepared a proposed revised retainer agreement for the plaintiffs, with redline markings showing the additions and changes to the original retainer agreement. Counsel attests to the terms of the proposed revised agreement, as described below:

## PROPOSED CLARIFICATIONS AND MODIFICATIONS

**1. No Assignment of the Right to Claim or Waive Statutory Fees.** In the original agreement, plaintiffs agreed any "attorneys' fees *that may be recovered* from defendants in this case shall belong to Attorneys, to whom [they] assign[ed] their rights" (emphasis supplied). Counsel intended, and plaintiffs understood, that the assignment went to fees recovered – *i.e.*, the right to collect those fees – but that the clients did not assign the right to claim or waive counsel's statutory fees during negotiations. In addition, as the Court ruled, the original agreement did not distinguish between federal and state statutes, which may be governed differently. To address the Court's concerns, the proposed revised retainer agreement includes the following changes:

**Prior agreement:** "all attorneys' fees recovered pursuant to any statutory or common law fee-shifting provisions, Federal and California, for work done in connection with this litigation are property of the attorneys, as provided by California law (*Flannery v Prentice*) and shall not be regarded as property of the client.

**Proposed agreement:** "The right to collect all attorneys' fees recovered pursuant to any statutory or common law fee-shifting provisions, Federal and California, for work done in connection with this litigation are property of the attorneys, as provided by California law (*Flannery* v *Prentice*) and shall not be regarded as property of the client."

**Prior agreement:**

The Court may order, or the parties to the litigation may agree, that the defendants will pay some or all of attorneys' fees, costs, or both. Any such order or agreement will not affect Client's obligations under this agreement except as stated in this Section regarding calculation of the amount of attorneys' fees owed under this agreement and as stated in Section 6. Client agrees that any attorneys' fees that may be recovered from defendants in this case shall belong to Attorneys, to whom Client assigns her rights. Client understands that, under California law, the assignment of these rights may raise a potential conflict of interest between Client and Attorneys in the context of settlement agreements. This includes Attorneys right to claim, negotiate and settle any claim to statutory fees simultaneously with the representation of Client in the prosecution of her claims. Client has been advised of this potential conflict, of her option of seeking additional legal counsel in connection with this conflict, and Client expressly agrees to this assignment.

**Proposed agreement:**

The Court may order, or the parties to the litigation may agree, that the defendants will pay some or all of attorneys' fees, costs, or both. Any such order or agreement will not affect Client's obligations under this agreement except as stated in this Section regarding calculation of the amount of attorneys' fees owed under this agreement and as stated in Section 6. Client agrees that any attorneys' fees that may be recovered from defendants in this case shall belong to Attorneys. ==Client assigns to Attorneys the right to collect any statutory fees awarded by the court or determined during settlement. Consistent with the law (which may vary between federal and state claims), client assigns to attorneys all other rights with respect to statutory fees, except that, consistent with California law and rules of ethics, Client retains the right to direct Attorneys to accept a written settlement offer without Attorneys' consent. As stated in Section 7 below, however, Client agrees that if she waives or compromises Attorneys' right to claim statutory fees against the defendant without the Attorneys' consent, she will have a dispute with Attorneys over fees that must be addressed and resolved after the settlement, between themselves, by a neutral third party, or the Court.== Client understands that, under California law, the assignment of these rights may raise a potential conflict of interest between Client and Attorneys in the context of settlement agreements. This includes Attorneys right to claim, negotiate and settle any claim to statutory fees simultaneously with the representation of Client in the prosecution of her claims. Client has been advised of this potential conflict, of her option of seeking additional legal counsel in connection with this conflict, and Client expressly agrees to this assignment.

## 2. Clients Do Not Expect or Desire Contingent to Fees Be Paid as a Percentage.

In the original agreement, plaintiffs acknowledged that they were retaining counsel on a contingent basis, but they understood that to mean the nature of the representation, not the payment of a "contingency fee" as a percentage of their damages. Under the contract, if – as was expected – attorneys fees determined by hours, rates and consideration of contingent risk exceeded the percentage of the plaintiffs' damages, then plaintiffs and attorney understood that prevailing party fees would be paid by defendants, negotiated or determined by the Court separate from the damage award. Under the structure of the original retainer agreement, once substantial amount of attorney effort was required, it is in the plaintiffs' interest to have counsel's fees determined separately, as those fees do not reduce the plaintiffs' recovery.

In the proposed revised agreement, this is made express:

> Client acknowledges that Attorneys' time, market rates and expenditures on her behalf may have no relation to the amount of her damages, and that in this case may have already exceeded 1/3 the amount that Client anticipates she might recover for her individual damages by way of settlement or judgment.

Further, the prior agreement read:

> Client has been given the choice of paying monthly for attorneys' fees on an hourly rate basis and for costs, as an alternative to a contingent fee. Client understands that if she chooses to pay fees on an hourly rate basis, rather than a contingent fee basis, she must pay all fees and costs even if the claims are lost. Clients knowingly and voluntarily agrees to pay fees on a contingent fee basis, or have statutory fees paid at a rate that is a multiple of Attorneys' then-current noncontingency hourly rate (*Ketchum v. Moses*), because fees are not paid before any amount is recovered and Client will not owe any attorneys' fees if she does not prevail against defendants.

The proposed revised agreement adds:

> In light of the acknowledgment regarding the amount of attorneys' fees in this case, Client acknowledges fees will not be determined as a percentage of her recovery. Client prefers that Attorneys fees are determined separate from any settlement or judgment on her damages, such that she will not have to pay any fees out of her recovery.

**3. No Penalty for Exercising Right to Direct a Settlement With Waiver**. In the original agreement, counsel included a provision to protect the right to recover a reasonable attorney fees from defendant under the California Fair Employment and Housing Act if plaintiffs prevail in the litigation. *See Flannery v. Prentice*, 26 Cal. 4th 572, 582-583 (2001) ("Attorneys considering whether to undertake cases that vindicate fundamental public policies may require statutory assurance that, if they obtain a favorable result for their client, they will actually receive the reasonable attorney fees provided for by the Legislature and computed by the court"); *id*, at 588 n.16 ("allowing lawyers to contract with their clients for an assignment of the right to fees should enhance the public's access to competent counsel") (quoting State Bar Standing Com. on Prof. Responsibility and Conduct, Formal Opn. No. 1994-136 (1994), at 3); *Lindelli v. Town of San Anselmo*, 139 Cal. App. 4th 1499, 1514-1516 (2006) (California protects the "certainty that attorneys who undertake public interest cases will receive compensation").

Although California law differs from federal law on this point, even in *Evans v. Jeff D.*, the Supreme Court addressed assignment by statute, not assignment by contract. As pointed out by Justice Brennan in his dissent:

> it may be that civil rights attorneys can obtain agreements from their clients not to waive attorney's fees. Such agreements simply replicate the private market for legal services (in which attorneys are not ordinarily required to contribute to their client's recovery), and thus will enable civil rights practitioners to make it economically feasible -- as Congress hoped -- to expend time and effort litigating civil rights claims. [*Evans v. Jeff D.*, 475 U.S. at 766.]

Since *Evans v. Jeff D.*, such written assignments are the "usual course." *Gordon v. City of New York*, 2015 U.S. Dist. LEXIS 44271, *12-13 (E.D.N.Y. 2015). In *Gordon*, the district court recognized the federal rule (consistent with *Evans v. Jeff D.*) that prevailing *parties* – not counsel – are entitled to seek fees, but it still went on to hold: "this principle does not preclude plaintiff from granting her attorney the authority to negotiate both the amount of her damages and the counsel's fees to which he would be entitled. Plaintiff is entitled to attorney's fees solely for the purpose of compensating her attorney."

> [I]n the usual course, the stipulation of settlement provides – as it did in this case – for the payment of the entire amount of the settlement to the attorney, and directs him to deliver payment to the plaintiff in the amount she agreed to accept. As the Supreme Court observed in [*Astrue v. Ratliff*, 560 U.S. 586 (2010)] "attorneys are the beneficiaries, and, almost always, the ultimate recipients of the fees that the statute awards to 'prevailing parties.'" This is particularly true where, as here, the attorney is entitled to payment under a retainer agreement. Consequently, this line of cases does not preclude a plaintiff from authorizing her attorney to enter into an agreement to settle her claims for a set amount of damages and attorney's fees that he separately negotiates. [*Id*. (citation omitted).]

Plaintiffs' counsel understands that this Court – in the July 19, 2019, Order – did not so much take issue with the existence of a contractual provision protecting the right to negotiate or compromise statutory fees, as it concluded that the requirement of a 2.0 multiplier would be a "penalty" for the client's exercise of her settlement authority. Plaintiffs' counsel respectfully submits that he intended no penalty by this provision. Counsel included provisions in the agreement to reflect the value of statutory fees under California law. In *Ketchum v. Moses*, 24 Cal.4th 1122 (2001), the California Supreme Court expressly departed from federal law, and held that "reasonable attorneys' fees" under California fee-shifting statutes should be determined in consideration of substantial contingent risk multipliers. In the event that the lodestar calculation is made on the basis of market non-contingent rates – *i.e.,* rates that are paid to attorneys for every hour worked, without much delay and without regard to the outcome of the litigation – the market demands, and courts employing California law award, an enhanced fee. Plaintiffs' counsel represented the fee claimant in *Ketchum v. Moses*, and won a 2.0 contingent risk multiplier from the trial court. He then represented petitioner in the California Supreme Court, which preserved the right to such multipliers for those who litigate California claims. As a result, civil rights litigators have been discouraged from bringing actions based solely on federal rights, but plaintiffs such as Gamble and Kennedy here are able to find counsel willing to undertake the lengthy, risky litigation needed to vindicate their rights. In light of all of this, the original retainer agreements stated the calculation not as a penalty, but to set forth the formula for determining the reasonable value of the statutory fees.

Nevertheless, it is plaintiffs' counsel's intention to modify the agreement to meet the Court's concerns. To that end, he has proposed a revised agreement. Under the proposed terms, any dispute between plaintiffs and counsel over the value of statutory fees would be submitted in the first instance to the Court. Whereas the previous agreement read:

> It is agreed that no settlement of these claims may be made without Client's prior agreement. If, in settlement of this litigation, Client waives the right to recover attorneys' fees, costs or expenses (including partial waivers or compromises) without the consent of Attorneys, Client agrees to pay Attorneys: for waiver of fees, Attorneys' lodestar amount (their then-current hourly rate, as stated in section 5, as of the date of recovery times the number of hours expended on the case) times a contingent-risk multiplier of 2.0; and for waiver of costs, all of the costs advanced by attorneys in this case, whether or not a positive recovery is made by Client. Client understands that this agreement may give rise to potential disputes and conflicts between Attorneys and Client at the time of settlement, and in particular, where the defendants offer a settlement conditioned on the waiver, partial waiver or compromise of fees or costs and Attorneys are unwilling to agree to the waiver, partial waiver or compromise. Client understands that this agreement to pay the difference between Attorneys' statutory fees and costs and the amount of fees and costs paid in settlement may limit, or even nullify Client's recovery, and dissuade her from agreeing to a settlement with the defendants. Client has been advised of the option of seeking additional legal counsel on the topic. Client expressly agrees to this provision because she knows that otherwise Attorneys would be unwilling to enter into this agreement.

In the proposed revised agreement, the section has been revised to read:

> It is agreed that no settlement of these claims may be made without Client's prior agreement. If, in settlement of this litigation, Client waives the right to recover attorneys' fees, costs or expenses (including partial waivers or compromises) ==in dispute with Attorneys over amounts, Client agrees to pay Attorneys: for waiver of fees, out of her recovery the reasonable value of Attorneys' statutory fees, as determined according to the legal standards applicable for those statutory fees==; and for waiver of costs, all of the costs advanced by attorneys in this case, whether or not a positive recovery is made by Client. ==Attorneys and Client agree that if a dispute over waiver or compromise of statutory attorneys' fees arises in this case, and if Client directs Attorneys to accept a settlement which waives or compromises fees, Attorneys will consummate the settlement on Client's behalf, and Attorneys and Client will thereafter jointly submit to the district court's supplemental jurisdiction for a determination of reasonable Attorneys' fees. If the Court declines to determine the matter, the dispute may be submitted to a neutral third-party with the parties' consent, or filed in the Superior Court.==

Client understands that this agreement may give rise to potential disputes and conflicts between Attorneys and Client at the time of settlement, and in particular, where the defendants offer a settlement conditioned on the waiver, partial waiver or compromise of fees or costs and Attorneys are unwilling to agree to the waiver, partial waiver or compromise. Client understands that this agreement to pay ==the reasonable value of Attorneys' statutory fees== may limit, or even nullify Client's recovery, and dissuade her from agreeing to a settlement with the defendants. ==For that reason, and others, Attorneys and Client both prefer to have Client damages and Attorneys' fees determined separately in any judgment or settlement, and both prefer to avoid "lump sum" settlement offers.== Client has been advised of the option of seeking additional legal counsel on the topic. Client expressly agrees to this provision because she knows that otherwise Attorneys would be unwilling to enter into this agreement.

Plaintiffs' counsel is willing to modify the agreement with these terms, and proceed with plaintiffs' claims in the litigation, if such terms resolve the issues identified by the Court. Plaintiffs have reviewed the proposed revised agreement, both are interested in pursuing their claims under a modified agreement, and both wish to know whether the proposed agreement satisfies the Court's concerns. Plaintiff Gamble has consented to the proposed agreement. Plaintiff Kennedy is reviewing the terms further with independent counsel, and intends to complete that review before the August 29 compliance hearing. Plaintiffs' counsel will supplement this statement when that has been completed.

## ADEQUACY OF PUTATIVE CLASS COUNSEL

Counsel is aware of the Court's admonitions regarding adequacy of counsel, and – pursuant to the Court's May 24, 2019, Order (ECF 112) – he has undertaken responsibility to remedy the issues identified by the Court. He has also intended to fulfill duties of putative class counsel, and ultimately to obtain additional legal resources to do so. He cannot change the fact that he is a sole practitioner with responsibilities in other cases, or that a plaintiffs' practice often requires work on multiple cases with little prediction as to the ebb and flow of work. Counsel has tried to schedule work, and ask for time adjustments, so that focused time can be spent to complete substantial briefing and argument that constitute the practice of law. In this case, he has sought stipulations, and he has filed contested extension requests before the due date. He has received extensions of time, and he has been denied extensions, but has complied with the Court's orders either way.

From the start, plaintiffs' counsel has contemplated that additional legal resources would be needed to prosecute the case through class certification, and that adequacy of class counsel would be an issue in that proceeding. Counsel anticipated that, initially, he would be able to meet substantial litigation responsibilities without additional legal resources, including superior court litigation, opposing motions to dismiss and strike, initial disclosures, Rule 16 motion, discovery plan and preparations for the discovery conference. At the same time, it was (and is) conceivable the parties might resolve the case by settling plaintiffs' individual claims in conference with Magistrate Judge Spero. As such, counsel thought plaintiffs would have until the time of the class certification motion to bring on additional lawyers, when counsel would seek certification as class counsel.

Since the Court's May 24 Order, however, counsel has undertaken efforts to associate additional counsel forthwith. Despite significant progress in that regard, the efforts have been complicated by the advent of the Court's order staying the action, and the prospect for settlement at a conference initially scheduled for August 29 (but now vacated). Plaintiffs' counsel has scheduled additional conferences to occur in the near future, and will continue his efforts to obtain additional legal resources until the litigation is complete.

Plaintiffs suggest that the Court leave in place the stay until the matter of the proposed revised retainer agreement is resolved. Thereafter, if those issues are resolved, plaintiffs suggest that the Court hold a status conference with the parties to determine whether the stay should remain while the parties reschedule their conference with Magistrate Judge Spero. Either way, plaintiffs request that the Court defer the question of adequacy of counsel as class counsel until the class certification motion.

In the event that the Court finds the case not suitable as a class action then, or at this juncture, putative class members would face the restart of their statutes of limitations, and would have to decide whether to seek to intervene here, or file separate lawsuits. In the event that the case is dismissed due to a settlement, putative class members still would have the option of filing their own lawsuits elsewhere.

## CONCLUSION

Plaintiffs have reviewed the Court's July 19, 2019, Order, have been advised to seek advice from independent counsel, and are interested in pursuing the litigation under a revised retainer agreement, if it satisfies the concerns raised by the Court regarding conflict of interests. Plaintiffs' counsel intends to associate additional lawyers to work on this case, and requests that the issue of adequacy of counsel – as class counsel – be deferred until the time of class certification. Plaintiffs suggest that the Court maintain the stay until the matter of the retainer agreement is resolved, and that thereafter the Court hold a status conference with the parties to address case scheduling and lifting of the stay.

Respectfully submitted,

Dated: August 23, 2019     LAW OFFICE OF JEREMY L. FRIEDMAN

By:   /s/Jeremy L. Friedman
Jeremy L. Friedman
Attorney for plaintiff Lunell Gamble

## DECLARATION OF COUNSEL

I, Jeremy L. Friedman, declare and state:

1. I am attorney of record for named plaintiffs and the putative class in this case. I make this declaration in response to the Court's July 19, 2019, Order requiring certification of compliance after ruling on plaintiffs' Rule 16 motion. This declaration is based upon my own personal knowledge. If called as a witness, I would and could testify competently to the following matters.

2. On the day that I received notice of the Court's July 19 Order, I spoke to both plaintiffs about it, and within a day or so thereafter was able to send them a copy of the order. Both plaintiffs were advised to seek advice from independent counsel regarding the order and the retainer agreement.

3. It is not my desire or intention to go forward representing any client if my contract puts me in a conflict. It was my desire to avoid potential conflicts during settlement discussions that prompted me to bring the Rule 16 motion in the first instance. At the same time, I have no intention of abandoning the plaintiffs in this case. Instead, I want to continue

representing them – with their consent, obviously – under a retainer agreement that meets the Court's concerns and protects my rights as permitted by law and rules of ethics.

4. Since the time of the order, I have had several communications with plaintiffs, in person, through texts and over the telephone. Both indicated to me that they too would like to continue pursuing the litigation under a revised retainer agreement, if such an agreement satisfies the concerns raised by the Court.

5. I have prepared a proposed revised retainer agreement for the plaintiffs to review, in a redline version so that they can see what edits and additions have been made. The terms of the initial agreement and revised proposed agreement recounted in this statement – with additions in highlight – are true and accurate of my own knowledge. I have reviewed the Order and the proposed agreement with both plaintiffs. Plaintiff Gamble has signed the agreement. Plaintiff Kennedy has reviewed it favorably, but intends to continue reviewing it with independent counsel as soon as possible, before August 29. I intend to file a supplement to this statement with that information before the compliance hearing, and I will be prepared to attend on that date if the compliance hearing is not vacated by the Court.

6. From the start of the case, I have discussed possible association of attorneys at times. I redoubled my efforts to obtain additional legal resources after the Court's May 24, 2019, Order. One set of discussions was close to completion, but was complicated after ruling on the Rule 16 motion, as well as by the prospect of individual plaintiff settlements in August. It is my intention to continue to search for additional legal resources; I have scheduled conferences with lawyers to occur in the coming days and weeks; and I believe that I would be able to associate additional attorneys prior to the bringing of a class certification motion in this case.

7. Since the start of the case, I have received several telephone calls from other African American employees or former employees of defendant seeking legal counsel over their terminations or failure to promote. It is my understanding that several individuals would be interested in intervening in this action if class certification is denied, or if the class allegations were dropped.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 23rd day of August, 2019.

/s/Jeremy L. Friedman
Jeremy L. Friedman

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed with the Clerk of the Court for the Northern District of California, by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Jeremy L. Friedman
Jeremy L. Friedman