Jeremy L. Friedman, CA Bar No. 142659
LAW OFFICE OF JEREMY L. FRIEDMAN
2801 Sylhowe Road
Oakland, CA 94610
Tel: (510) 530-9060
Fax: (510) 530-9087
jlfried@comcast.net

Attorney for plaintiffs and putative class

Merri A. Baldwin, CA Bar No. 141957
ROGERS JOSEPH O'DONNELL, a PLC
311 California Street, 10th floor
San Francisco, CA 94104
Tel: (415) 956-2828
Fax: (415) 956-6457
mbaldwin@rjo.com

Counsel for Responding Attorney Jeremy L. Friedman

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUNELL GAMBLE, and SHEILA KENNEDY, on behalf of themselves as well as a class of similarly situated individuals,<br><br>    Plaintiffs<br><br>vs.<br><br>KAISER FOUNDATION HEALTH PLAN, INC; KAISER FOUNDATION HOSPITALS, INC.; and THE PERMANENTE MEDICAL GROUP; all doing business as KAISER PERMANENTE MEDICAL CARE PROGRAM<br><br>    Defendants | Case No. 4:17-cv-06621-YGR<br><br>**ATTORNEY RESPONSE TO ORDER TO SHOW CAUSE**<br><br>Date: September 17, 2019<br><br>Hon. Yvonne Gonzalez Rogers |

Responding Attorney Jeremy L. Friedman, represented by ethics counsel Merri A. Baldwin, responds to the Court's August 30, 2019, Order to Show Cause (ECF 140) (OSC).

**RESPONSE**

## I. This Matter Should Not Be Referred to the State Bar for Discipline

The first section of the OSC ordered Mr. Friedman to show cause "why this Court should not refer the matter of Counsel Jeremy Friedman's retainer agreement with plaintiffs herein to the California State Bar for a determination of whether the retainer agreement violates the Rules of Professional Conduct of the State Bar of California or the California Business and Professions Code . . ." (OSC at 2-3)  Since the State Bar does not issue advisory guidance in particular cases, Mr. Friedman understands from this that the Court seeks to refer him for possible disciplinary action in connection with his use of the retainer agreement between the plaintiffs here and his law office.[1]

This matter should not be referred to the State Bar for discipline. First, the question of the enforceability of the fee agreement here is a legal question for this Court or some other tribunal to determine if there is an action on the contract, rather than a situation that should give rise to possible disciplinary action.  If the Court determines that the settlement clause is not enforceable, it should hold the clause voidable at the clients' option, as with retainer agreements that violate B&PC §6148. Going forward, plaintiffs would be informed that, if they have a dispute with counsel regarding wavier of statutory fees, they could void the settlement clause, and counsel would be paid "reasonable fees" under the Code or on the basis *quantum meruit* basis. Second, the terms of this fee agreement, rather than creating a potential conflict, are a standard way for attorneys to try to avoid the potential conflict that arises when defendants insist on a lump sum settlement offers in cases involving statutory fee-shifting. This is demonstrated in the case law, as well as the opinion of experts.

---

[1]Another option is to make a request to the State Bar's Committee on Professional Responsibility and Conduct (COPRAC) for a formal opinion addressing generally the issues raised by the Court's OSC.  Ethics opinions are nonbinding advisory opinions that are issued by the State Bar after approval by the Board of Trustees.  *See* http://www.calbar.ca.gov/Attorneys/Conduct-Discipline/Ethics/Committees/COPRAC/Opinion-Requests  Such a request could be addressed to the ethical propriety of attorney contracts for authority to negotiate a statutory fee during settlement, and steps that members of the bar should take to protect against conflict of interests during simultaneous settlement negotiations.

Attorney Response to OSC – Page 1

**A. The Question of the Enforceability of the Settlement Provisions of the Fee Agreement Is A Legal Question for This Court to Decide**

The question of the attorneys' fees to be awarded in this case, including the enforceability of the settlement provision in the retainer agreement, is a legal question to be decided by the Court or some other tribunal in the event that a dispute arises on the contract. It is unnecessary (and certainly premature, in the absence of an actual conflict) for the Court to refer this matter to the State Bar for consideration of possible disciplinary action, which would be unjustified in any event, as set forth herein. If the Court determines that the settlement clause in the retainer agreement is unenforceable, rather than holding that it is "void," the Court should consider holding it "voidable" at the client's option, just as what would happen if the agreement failed to comply with the code section governing retainer agreements based on statutory fees. *See* B&PC §6148(c) ("failure to comply with any provision of this section [governing written contracts for statutory fees] renders the agreement voidable at the option of the client, and the attorney shall, upon the agreement being voided, be entitled to collect a reasonable fee"). With that remedy, the client would be informed that, if a dispute arises regarding settlement of statutory fees, the client will have the option to void the settlement clause, and fees will be determined pursuant to Code or on the basis of *quantum meruit*. This is not an appropriate matter for disciplinary review by the State Bar, where counsel is using a standard fee structure and obtained his client's informed consent to that arrangement, and where the potential conflict the Court is concerned about has not yet materialized (and may not.)

In this case, in response to the Court's July 19 Order, the counsel and the plaintiffs have already agreed to submit to the Court pursuant to its supplemental jurisdiction any dispute over attorneys fees, after a settlement has been reached, in the event one arises in connection with a waiver of statutory fees. Should the Court decline to exercise its supplemental jurisdiction, the parties would resolve any potential future fee dispute before a neutral third party, with the parties' consent, or a superior court. As explained in *United States ex rel. Depace v. Cooper Health System*, 940 F.Supp.2d 208, 212 (D.N.J. 2013), even though fee arrangements are governed by state law, the federal court's interest in "fully and

fairly resolving the controversies before it" requires exercise of supplemental jurisdiction over fee disputes related to the main action.

> "[T]he federal forum has a vital interest in [attorneys' fee arrangements] because they bear directly upon the ability of the court to dispose of cases before it in a fair and reasonable manner." *Id* (citation omitted).[2]

In this matter, if the Court determines that the settlement clause is unenforceable for reasons of conflicts or otherwise. If it does so, and if a dispute later arises, the plaintiffs will be able to void the contract term. With that knowledge, if a dispute over the contract arises, plaintiffs and counsel will understand their options, and will likely be able to resolve any dispute over fees without resorting to the courts.

The question of whether to refer this matter to the State Bar for possible discipline is at best premature, and certainly unnecessary, given the Court's authority to hold the settlement clause to be unenforceable, and the parties' agreement to submit any future dispute to the Court. The potential conflicts identified by the Court in its July 19, 2019 Order have not become actual, where there has not yet been any actual dispute between counsel and his client over a lump-sum settlement offer by defendant.. This matter came to the Court's attention as a result of proactive action by counsel, not because the events that would trigger application of the assignment and related provisions had actually occurred.[3]

In *Venegas v. Mitchell*, 495 U.S. 82, 88 (1990), the court noted that it had implicitly accepted that "statutory awards of fees can coexist with private fee arrangements." Citing *Evans v. Jeff D.*, the court noted that it is the client's right to waive, settle or negotiate attorney fee eligibility, reasoning that if plaintiffs can waive their claims altogether, they

---

[2] *See also Alvarado v. Young*, 436 Fed. Appx. 746 (9th Cir. 2011) (supplemental jurisdiction exists to decide fee dispute, including *quantum meruit*); *Kenneally v. Bosa Cal. LLC*, 2011 U.S. Dist. LEXIS 29831, *5-8 (S.D. Cal. 2011) (ancillary jurisdiction over charging lien as it relates to the settlement in the action); *Phillips v. AWH Corp.*, 2007 U.S. Dist. LEXIS 102251 (D. Colo. 2007) (reviewing cases and explaining supplemental jurisdiction); *Vasquez v. Jim Aartman, Inc.*, 2005 U.S. Dist. LEXIS 49003 (E.D. Cal. 2005) (jurisdiction over charging lien under California law); *In re Air Passenger Computer Reservations Systems Antitrust Litigation*, 724 F. Supp. 744, 746 (C.D. Cal. 1989) (discussing Ninth Circuit cases).

[3] It is difficult to accept the notion that an attorney could be referred to the State Bar for discipline for agreeing to provisions in a retainer agreement that he affirmatively brought to the court's attention for review in an effort to avoid or minimize the possibility of a conflict with his client that had not yet materialized. There is no ethical rule or other authority prohibiting attorneys from contracting with clients to receive statutory fees (when available), whether awarded or waived.

certainly should be able to "assign part of their recovery to an attorney." *Id.*, Moreover, the Court stated, there was no bar in its prior decisions or in the statutory scheme that "protects plaintiffs from having to pay what they have contracted to pay." *Id.,* at 89. In short, the Court concluded, while §1988 controls what a losing defendant must pay, it says nothing about a plaintiff's contractual payment obligations to a lawyer.

As explained by the one commentator after a thorough review of the ethical problems raised by *Evans v. Jeff D.*, when the plaintiff seeks a monetary recovery, attorneys may effectively protect their claim to statutory fees in settlement. "There is no reason that *Venegas* and subsequent court rulings following *Venegas* would not apply to settlement as well. The upshot is that the Court views plaintiffs' rights to statutory attorneys' fees and their contractual obligations to their lawyers as two separate questions. The plaintiff may contract to pay her lawyer a fee related to her monetary recovery. If she does, she must fulfill that promise, regardless of whether she has collected – or waived the right to – statutory attorneys' fees from the defendant." Carle, "The Settlement Problem in Public Interest Law," 29 *Stanford Law & Policy Review* 1, 22-30 (2018).

Moreover, the Court's concern that the assignment and related provisions constitute an impermissible restraint on a client's ability to make settlement decisions is not supported by the case law or professional rules. *See* State Bar of California Formal Opin. 1994-136 (attorneys not prohibited from contracting with clients rights to obtain attorneys fees in section 1983 cases.): State Bar of California Formal Opin. Interim 98-0001 ("while the attorney does not have the right to veto a settlement the client wishes to accept (under *Hall v. Orloff*), and the client always has the right to determine whether or not to accept a settlement offer, the attorney is not required against his wishes to waive his right, if any, to fees. Accordingly, the Committee concludes that Attorney A's refusal to agree not to claim fees from the client or the opposing party, and not to sue them for the fees, does not violate any rule of professional conduct, whether or not it causes the settlement to fail"). As explained further by State Bar Interim Opin. 98-0001: ,. although the committee concluded that the portion of the agreement that conveyed exclusive right to accept a lump sum settlement was invalid, it also held "an attorney whose retainer agreement assigns to the

attorney the exclusive right to seek fees from the defendant has no ethical obligation to surrender the right in order to effectuate a settlement. Were the rule otherwise, the attorney in every case could be found to have an obligation, if demanded by his client and the opposing party, to reduce or eliminate his fee to permit a settlement on terms agreed to by the client and the opposing party. To state the proposition is to refute it."[4]

This is not a case that violates the rule expressed in *Nehad v.Mukasey,* 535 F.3d 962, 970–71 (9th Cir. 2008), because it does not "ratchet up the cost of representation" – in fact, it imposes the reasonable cost of that representation as agreed by the parties, and in an amount determined to be reasonable by the Court. Nor is this a case like *Pony v. County of Los Angeles*, 433 F.3d 1138 (9th Cir. 2006), where the attorney had a complete assignment of the right to claim attorneys' fees, such that it would have precluded the client from directing a settlement of fees notwithstanding the unyielding right of clients to settle claims. Moreover, the decision in *Pony* does not apply to fees incurred under FEHA, where the Supreme Court stated it would merely "reconcile [the public policy favoring client control over settlement of FEHA cases" with those underlying FEHA's attorney fee provision and FEHA generally." *See Flannery v. Prentice*, 26 Cal. 4th 572, 582-583 (2001).

Equally distinguishable is the case of *Estate of Falco*, 188 Cal. App. 3d 1004 (1987), where the issue was not whether certain terms improperly interfered with a client's right to settle, but, instead, whether the client's rejection of settlement constitutes a basis for an attorney's withdrawal. Here, the agreement specifies the attorney will abide by the client's settlement decision, and any dispute over fees would be determined after consummation. The court in *Falco* noted in passing the existence of a fee dispute between the lawyer and clients, but did not find that to impact the client's right to make settlement decisions.

---

[4]In one case, the district court found "no merit" to the argument that the retainer agreements violated Pennsylvania Rules of Professional Conduct on assignment of claims, saying "Courts within this Circuit have found retainer agreements in IDEIA cases assigning a plaintiff's right to attorneys' fees to be permissible." *I.W. v. Sch. Dist. of Phila.*, 2016 U.S. Dist. LEXIS 4441, at *11-15 (E.D. Pa. 2016) (citing *Charles O. v. Sch. Dist. of Philadelphia*, 2014 U.S. Dist. LEXIS 135919, at *1 n.3 (E.D. Pa. 2014) (representation agreements assigning the right to attorney's fees awarded by a court or by virtue of settlement have been "deemed valid") and others. The court "conclude[d] that the assignment of fees and costs is consistent with public policy." *Id*.

In the absence of an actual conflict, this Court should not undertake the step of a referral to the State Bar. To refer the matter at this point would achieve nothing in terms of resolving the issue of the rights of plaintiff here and the means by which attorneys fees are to be determined if a dispute develops. The Court and the Court alone is in a position to resolve those issues – along with any others going to counsel's reasonable fees – if and when they arise.

**B. Agreements Authorizing Attorneys to Claim, Negotiate and Recover Statutory Fees During Settlement Are Standard and Necessary to Effectuate Statutory Purposes and Protect the Interests of the Client**

Under fee-shifting provisions of FEHA, Title VII and §1988, Supreme Court authority interpreting those provisions, and formal ethics opinions of the California State Bar, plaintiffs' attorneys may ethically and legally enter into agreements with their clients, such that, during settlement negotiations, the attorney may claim, negotiate and recover statutory attorneys' fees to be paid out of any global monetary settlement.

Statutory fee-shifting provisions were enacted to attract counsel to undertake plaintiffs' civil rights claims that would otherwise go unrepresented in the private marketplace using the traditional percentage contingency fee model in personal injury tort actions. Contract provisions for payment of statutory fees recovered by way of judgment or settlement are common and expected ways to protect the attorneys' right to agreed-upon compensation, and thus fulfill statutory purposes. More important, agreements which authorize attorneys to claim, negotiate and recover statutory fees out of "lump sum" settlement offers are necessary to protect the clients' interests: they (a) allow the clients to bargain from a position of strength, using all of their weapons in their arsenals, including the "bargaining chip" of statutory fees; (b) increase the recovery of the clients, who do not have to pay fees out of their otherwise "make-whole" damages; (c) enable the clients to make informed decisions on lump sum settlement offers; and (d) avoid conflicts that might otherwise arise during settlement discussions, by putting the question of counsel's fees to negotiations with defense counsel or determination by the Court.

As the Supreme Court made clear in *Evans v. Jeff D.*, attorney fees under the Fees Act, 42 U.S.C. §1988, are a "'bargaining chip' useful to plaintiffs as well as defendants."

475 U.S. 717, 731 n.20 (1986) (quoting Judge Wald in *Moore v. National Assn. of Security Dealers, Inc.*, 762 F.2d 1093, 1112 (1985)). *See* State Bar of California Standing Committee on Professional Responsibility and Conduct, Formal Opinion Interim No. 98-0001. If statutory fees are to be a useful weapon in the plaintiff's arsenal, it is incumbent upon the attorney to document and claim those fees during settlement discussions. In "lump sum" negotiations, the plaintiff must ascertain with some certainty the extent to which attorneys' fees have been incurred.

> At the time an offer is made, the plaintiff knows the amount in damages caused by the challenged conduct. The plaintiff also knows, or can ascertain, the costs then accrued. A reasonable determination whether to accept the offer can be made by simply adding these two figures and comparing the sum to the amount offered. [*Marek v. Chesny*, 473 U.S. 1, 7 (1985).

In determining whether to accept a lump sum settlement offer, and/or in authorizing an aggregated counter-demand, the client must also know how much the attorney is seeking as part of that settlement. The case of *Gordon v. City of New York*, 2015 U.S. Dist. LEXIS 44271 (E.D.N.Y. 2015) is illustrative. In *Gordon*, the district court recognized the federal rule (consistent with *Evans v. Jeff D.*) that prevailing *parties* – not counsel – are entitled to seek fees, but it still went on to hold: "this principle does not preclude plaintiff from granting her attorney the authority to negotiate both the amount of her damages and the counsel's fees to which he would be entitled. Plaintiff is entitled to attorney's fees solely for the purpose of compensating her attorney." *Id.*, at *12-13

In *Gordon*, the court was notified that the parties had reached an agreement in principle on all of plaintiff's claims, including $20,000 in compensatory damages and approximately $25,500 in attorney's fees. *Id.*, at *2. That settlement came into question after the plaintiff stated that she was unhappy with the $20,000, and had signed the agreement in duress. The defendant made an offer of judgment in the amount of $20,000.01, "plus reasonable attorneys' fees incurred to date." *Id.*, at *3. Plaintiff rejected that offer, but told her attorney that she would accept $25,000, and to make a counter-demand at $27,000. *Id.*

After the counter-demand, the defendant made a counter-offer, raising the offer by $1,500. At that point, the attorney agreed to reduce the statutory fee demand by $5,500,

such that the plaintiff would recover $27,000, and the case could settle. That was agreed to by the attorneys, but the plaintiff ultimately refused to sign, telling her attorney that "she did not want his money." The matter was then referred to the magistrate for a report and recommendation on whether an enforceable settlement had been reached. Relying on the principle that statutory attorneys' fees belong to the client, the magistrate found there was no authority in the attorney to waive or compromise fees, and no therefore no enforceable settlement was reached. *See Gordon v. City of New York*, 2014 U.S. Dist. LEXIS 183473, *28 (E.D.N.Y., 2014).

On objections, the district court rejected the concept that attorneys could not negotiate the recovery of statutory fees with opposing counsel.

> [I]n the usual course, the stipulation of settlement provides – as it did in this case – for the payment of the entire amount of the settlement to the attorney, and directs him to deliver payment to the plaintiff in the amount she agreed to accept. As the Supreme Court observed in [*Astrue v. Ratliff*, 560 U.S. 586 (2010)] "attorneys are the beneficiaries, and, almost always, the ultimate recipients of the fees that the statute awards to 'prevailing parties.'" This is particularly true where, as here, the attorney is entitled to payment under a retainer agreement. Consequently, this line of cases does not preclude a plaintiff from authorizing her attorney to enter into an agreement to settle her claims for a set amount of damages and attorney's fees that he separately negotiates. [*Gordon*, 2015 U.S. Dist. LEXIS 44271, at *13 (citation omitted).]

As the court recognized, the attorney's willingness to reduce the fee claim was consistent with idea that such fees can be a "bargaining chip" to benefit the plaintiff.

> More significantly, because [plaintiff's counsel's] fees were reduced in order to increase the amount of plaintiff's recovery, upholding the settlement agreement in this case would be consistent with *Evans v. Jeff D.*, in which the Supreme Court upheld a settlement agreement that conditioned relief on the waiver of all attorney's fees, [475 U.S. 717, 720] (describing attorney's fees as a "bargaining chip" that is part of "the arsenal of remedies available to combat violations of civil rights"), and with the underlying purpose of § 1988. [*Id*, at *14.]

Thus, the assignment of rights to claim, negotiate and recover statutory attorneys' fees in settlement is the "usual course" for litigants and their attorneys when bringing suit under a fee-shifting statute. Responding attorney previously testifies that such assignments were standard, because his fee agreements here were modeled after the practice of firms and lawyers with whom counsel has worked over three decades of practice. In response to the

Attorney Response to OSC – Page 8

Court's Order to Show Cause, responding attorney submits consistent testimony by seasoned experts Barret Litt and Michael Hirst.

> I am generally familiar with fee agreements between attorneys and their clients in cases involving statutory fee-shifting, especially in FCA cases. In my experience, it is a standard practice for attorneys in cases brought under statutes that provide for fees to discuss in the retainer agreement the payment of attorneys' fees if the case is settled. In such cases, a contract for payment of statutory fees in settlement is usually not determined as a percentage of the total recovery. Instead, it is standard practice to (1) assign to the attorney the right to claim and negotiate statutory fees during settlement discussions, if defendants insist on negotiating such fees as part of a single, lump sum settlement, and (2) if unable to be resolved in settlement discussions, to authorize counsel to apply for and obtain payment of statutory fees as may be ordered by the court. [Hirst Decl., ¶8.]

> I am familiar with fee agreements in which attorneys in statutory fee cases contract that the client will not settle without some means of ensuring the attorney receives a reasonable fee in contingent cases. (I have not reviewed, and express no opinion on, the specifics of the particular agreement at issue here. I am merely addressing whether an arrangement of this type is reasonable and consistent with the objectives of fee statutes.). I believe such agreements are commonly reached between civil rights plaintiffs' attorneys and their clients, particularly in cases that are brought or resolved on an individual basis. In the words of [ [*Flannery v. Prentice*, 26 Cal. 4th 572, 587 (2001)], such agreements do not confer "exclusive possession of the right to collect attorney's fees" "such as might compromise public policy favoring client control over settlement of FEHA cases." [] Instead, it "merely reconcile(s) that policy with those underlying FEHA's attorney fee provision and FEHA generally." *Id*. [Litt Decl., ¶26.]

Assignment of rights to negotiate and collect statutory fees obtained in settlement is necessary to meet statutory purposes. As Attorney Hirst testifies:

> In my opinion, permitting attorneys to contract for the right to claim, negotiate and potentially compromise statutory fees during global settlement is necessary to fulfill the Legislative purposes underlying an award of statutory fees for certain cases. In enacting statutory fee provisions such as those contained in the False Claims Act, Congress intended to attract attorneys to take on cases of important public policies even when the amount of the plaintiffs' monetary recovery is small (relative to the amount of fees and costs that might be required to litigate). Such statutes encourage meaningful litigation where the traditional private marketplace using a traditional percentage contingency fee model would fail to provide representation. Since the vast majority of litigation is resolved through settlement, and Congress wanted to encourage attorneys to take on these cases that might settle, it is both reasonable and expected that

attorneys would contract with their clients to determine how statutory fees will be handled in a case that is settled. A rule that prohibits the attorney from entering into such an agreement would result in attorneys declining to take on low-value cases, or cases where the fees are otherwise expected to outpace the amount of damages, even when those cases embody significant public interests. [Hirst Decl., ¶14.]

Similarly, civil rights fees expert Litt testifies that the fee-shifting statutes are essential component of the legislative scheme under both FEHA and federal civil rights statutes. *See* Litt Decl., ¶¶20, 21. "In light of the purposes behind statutory fee provisions, it is both reasonable and expected that attorneys will contract with their clients 'based on the statutory assurance that he will be paid a reasonable fee' [*Flannery*] if the case is successful. Although the Court in *Flannery* did not address "what limits the rules of professional conduct may place on attorneys' freedom to contract with clients regarding ownership of statutory attorney fees," 26 Cal. 4th at 587, it recognized that plaintiffs and their attorneys could reach enforceable agreements between them." Litt Decl., ¶23.

> In general, "allowing lawyers to contract with their clients for an assignment of the right to fees should enhance the public's access to competent counsel." [*Flannery*, 26 Cal. 4th at 587 (quoting State Bar Standing Com. on Prof. Responsibility and Conduct, Formal Opn. No. 1994-136, at p. 3 (1994)].

In light of these statutory provisions and purposes, it is clear that attorneys can contract with their clients to be paid out of any settlement a reasonable fee commensurate with the value of the statutory fees incurred.

> It is my understanding that plaintiffs' attorneys and their clients may therefore reach agreements for the disposition of statutory fees, so long as those agreements are not otherwise unenforceable, for example, because they produce "an unconscionable or illegal fee" under Rule 1.5(a) of the Rules of Professional Conduct. It is my opinion that it is consistent with the purpose of statutory fees to permit attorneys to contract with their clients for payment of their fees at agreed hourly rates, so long as those rates are reasonable under a lodestar analysis, **in the absence of counsel's concurrence to accept less than the reasonable value of the fee**. In my opinion, an agreement which allows attorneys to recover the reasonable value of their statutory fees would not result in an unconscionable or illegal fee. [Litt Decl., ¶24 (emphasis supplied).]

Barring attorneys from entering into agreements for payment of statutory fees at amounts either agreed to by counsel in settlement, or awarded by the Court, would force

statutory fee cases into the percentage contingency fee model, with significant potential negative consequences to the client-plaintiffs' interests. Such a rule would:

1. **Restrict representation to high-value cases (leaving victims of employment discrimination without an attorney)**

As explained by the Supreme Court in *City of Riverside v. Rivera*, 477 U.S. 561, 576-78 (1986), and recounted in the expert testimony (Litt Decl., ¶¶21, 22; Hirst Decl., ¶14), one of the underlying purposes of fee-shifting statutes is to correct for the flaws in the private marketplace for legal services. Without the statutory claim to attorneys' fees, lawyers will take on the litigation claims of plaintiffs who cannot afford to pay on an hourly basis only under the model of a pure percentage contingent fee arrangement. In such cases, the plaintiff will only obtain representation if the value of their damages is sufficient in relation to the amount of legal work expected, such that a contingency fee percentage is likely to result in a reasonable fee. Congress and the legislature provided for statutory fees independent of the plaintiff's damages for the very reason of getting them to take the case. Forcing attorneys to accept a percentage of the client's damages in settlements would undermine the very purpose of the statute.

Attorney Litt (at ¶29) explains:

> An illustration may help clarify the issue. Suppose a client presents a case in which s/he was the victim of police excessive force but had no broken bones or serious injuries, no long-term physical injury and no evidence of great emotional distress. The attorney assesses the value of the client's claim at $100,000-$200,000. The attorney has dealt with the defendant and knows that this defendant almost never settles cases of this type, and if it does, it usually does so only on the eve of trial. Thus, the attorney assesses that s/he will likely have to put at least $500,000 of work (without a multiplier) to resolve the case (and more if it goes to trial). Unless the attorney has a mechanism to protect his or her fee, economics indicate that the attorney would need to decline the case. If the client can settle the case even for the high end of the value of the damages - $200,000 – and the attorney has a 40% contingency, the attorney would receive $80,000, which is approximately 16% of the lodestar. Essentially, the attorney cannot undertake such cases on an ongoing basis if that is the fee the attorney will receive. Most attorneys would not handle such a case absent the protection in some form of a statutory attorney's fee, which is precisely why such fees are provided under a wide range of civil rights statutes.

### 2. Devalue plaintiffs' global claims, by removing statutory fees – often the largest component of the plaintiff's demands – from settlement consideration

If counsel's statutory fees are to be a bargaining chip during settlement negotiations, the party with the interest in receiving those statutory fees must claim them at the mediation or settlement conference, with documentation and necessary support. More importantly, defendants will need to know that the plaintiff is taking those fees into consideration in evaluating whether to accept a settlement offer. A rule that bars plaintiffs' counsel from contracting for the right to claim and negotiate statutory fees during settlement, or a rule that requires attorneys to accept as a fee only a percentage of the recovery, means that the clients will not take into consideration the actual amount of fees incurred. As such, the defendants will not offer funds towards statutory fees, and the entire value of the plaintiffs' claims will be deflated.

### 3. Devalue plaintiff's economic recovery, since fees would be paid out of – and would therefore diminish – the client's make-whole damage recovery

Forcing plaintiffs with claims under fee-shifting statutes into the private tort model of contingency fee agreements would devalue the plaintiffs' ultimate recoveries. Like tort plaintiffs, civil rights plaintiffs would have to reduce their recoveries typically by paying 30% to 40% to their attorneys. In this case, plaintiffs wanted to go into negotiations where their attorney could negotiate statutory fees against the defendant as a separate component of the settlement, for the very reason that they would not have to pay a fee out of their damage recovery. Forcing the plaintiffs into a tort model contingency fee agreement would deprive them of the right to determine and keep their make-whole remedies.

As explained by Attorney Litt, at ¶25:

> Where the case is brought under a fee-shifting statute, it is in the interest of the clients to permit agreements with attorneys that authorize attorneys to negotiate statutory fees as a separate component of the plaintiffs' claim during settlement discussions. In the first instance, attorneys are unlikely to enter into representation of the client unless they may contract to protect their right to statutory fees. That is especially true when the value of the clients' claims is low relative to the amount of fees that the clients are likely to incur in the litigation. The statutory fee provisions were intended to make such cases attractive to attorneys, even when the typical tort model percentage contingency fee agreement would be insufficient. Moreover, where attorneys

are permitted to claim, negotiate and compromise their fees as a separate component of the plaintiffs' settlement, the clients' otherwise make-whole monetary recoveries are not diminished, or are diminished to a lesser extent.

### 4. Leave plaintiffs unable to make informed decisions with respect to "lump sum" settlement offers

As illustrated by the Supreme Court decision in *Marek v. Chesny*, a plaintiff under a fee-shifting statute can evaluate a "lump sum" Rule 68 settlement offer by ascertaining the amount of fees and costs incurred to the date of the offer. In statutory fee cases, the attorney will be able to detail those fees, including the number of hours worked, the current market-based hourly rates, and any applicable lodestar adjustment factors. If the attorney is unable to contract for payment of fees in settlement, however, the amount of fees incurred would be indeterminate. The plaintiff-client will not know whether the amount to be deducted from the "lump sum" will be the value of the statutory fees, a "reasonable fee" under the Code, or on the basis of *quantum meruit*. On the other hand, where the contract spells out the precise rates or formula for the statutory fee waiver, the client is in a better place to make the decision whether to accept the lump sum offer.

Informed consent requires that the contract spell out how much the attorney will be paid in fees if the client accepts a settlement with a statutory fee waiver.

> Contract provisions assigning to the attorney the right to claim and negotiate attorneys' fees during settlement discussions – including specifying the means by which fees will be calculated in the event that the client directs the attorney to accept a settlement – are not only necessary to protect the attorneys' interests in fees, but are also necessary for the client to make informed settlement decisions. In the event the defendant makes a "lump sum" settlement offer – such as the Rule 68 Offer made in *Marek v. Chesny*, 473 U.S. 1 (1985) – the client can only evaluate whether to accept the settlement offer by "ascertain[ing] the [fees] then accrued." *Id*., at 7. This is generally done by reference to the number of hours expended by the law firm, along with hourly rates and other adjustment factors applicable to statutory fees or otherwise specified in the retainer agreement. Similarly, when responding to a "lump sum" settlement offer with an aggregate counter-demand, the plaintiff will need to determine the amount of the attorney's fees that will comprise a share of that lump sum. A retainer agreement that specifies how the amount of those fees will be determined thus permits the client to know the exposure on fees and the amounts to offer in any counter-demands. [Hirst Decl., ¶10.]

In my opinion, a contract provision that specifies what will happen if the client chooses to waive the statutory fees does not act as a "veto" on the client's settlement authority. Instead, it clarifies the amount of fees to be paid to the attorney, or the process by which such fees will be determined, if the client wants to discuss and then accept a lump sum settlement that waives statutory fees. This enables both the attorney and the client to know the amount of fees the attorney will be entitled to if the lump sum settlement offer is accepted. That does not create a conflict in my view; rather, it is an attempt to avoid the conflict that would otherwise result in connection with a lump-sum offer. [*Id.*, ¶11.]

### 5. Make attorneys' fees a point of conflict between attorney and client in every settlement negotiation, removed from the arena where statutory fees belong: in negotiation with defense counsel or by motion before the Court

So long as the attorney retains the right to negotiate and settle statutory fees with the defendant, determination of counsel's fees will be effectuated through negotiations between counsel (thus avoiding second major litigations over fees) or motion with the Court. A rule that bars counsel from contracting the right to negotiate and, if appropriate, compromise statutory fees would remove the question of reasonable statutory fees from the parties' negotiations or the Court's purview. Instead, in every settlement discussion, the defendants will offer "lump sum" amounts in the hopes that the attorney and their client will fight it out amongst themselves, with no guidance from the retainer agreement on the measure of fees. On the other hand, allowing for clearly explained language in the retainer agreement would keep the interests of plaintiffs and their attorneys aligned, as they each prosecute their claims against the defendant.

Thus, as explained by expert Litt, the retainer agreement used here protects against the potential conflict that would otherwise arise.

I am also familiar with the practice of plaintiffs' [counsel] to protect against potential conflicts with the clients to negotiate damages separate from negotiations over statutory fees. Such measures can insulate the attorneys' recommendations as to damages from the attorneys' interest in remaining funds to pay fees, and can serve to protect against potential conflicts of interest. Even when the defendants are likely to make "lump sum" settlement offers, it is necessary for attorneys to carefully document the full amount of statutory fees which may reasonably be claimed, and to be clear with the clients as to the extent to which they are willing to compromise those claims to reach a settlement (assuming the contract provides for that). [Litt Decl., ¶27.]

Similarly, Attorney Hirst testifies:

> In my opinion, retainer agreements between attorneys and clients that address the payment of fees in settled cases do not create conflicts between the attorneys and clients. Instead, they are designed to anticipate and try to avoid the conflicts that arise when defendants insist on "lump sum" offers inclusive of both damages and fees. In FCA cases – where the damages are paid to the government, with a share then paid by the government to the whistleblower (called a "relator") – the government will not discuss attorneys' fees and will routinely require separate settlement discussions concerning the amount of damages and the amount of statutory fees. Even where the parties agree to simultaneous or global settlement discussions, with a client's consent, plaintiffs' attorneys can take measures to protect against conflicts between the attorney and client during negotiations, including basing fee claims on time records and other evidence or information going to the value of statutory fees, and presenting aggregate settlement demands that are made expressly on the basis of separate components for damages and fees. [Hirst Decl., ¶9]
>
> For example, assume damages in a case are $100,000 and statutory fees are $300,000. If a defendant insists on a lump sum settlement offer of $120,000 with a waiver of the fees, a rational client will be inclined to accept a higher payment of damages than the client would otherwise obtain. If the lawyer does not discuss with the client and contract for how such a waiver would be handled before the offer is communicated, a conflict would inevitably arise: the lawyer would like to be compensated for his work on the case, but the client would like to maximize his recovery. Avoiding that conflict (that may or may not be intentionally pursued by defense counsel) by addressing this eventuality in the retainer agreement helps preserve the attorney's relationship with the client. [*Id.*, ¶12.]

In light of case authorities permitting attorneys to contract with their clients for recovery of statutory fees, in judgment and in settlement, and in light of the opinions of these expert litigators with extensive experience representing plaintiffs under fee shifting statutes, the Court should not hold that counsel's retainer agreements here are unlawful, or otherwise require counsel to contract on a percentage contingency fee basis. To do so would not only go against the parties' agreement and the purposes of the statute, a rule barring counsel from claiming and negotiating statutory fees during settlement would undermine the interests of the plaintiff-clients, and create a conflict over fees which otherwise would not exist. The contract specifying fees if there is a dispute in settlement does not create a conflict, it keeps plaintiffs and their counsel focused on negotiations against defendant.

## II. The Court Should Not Require Notification of Other Courts

The second section of the OSC ordered Mr. Friedman to show cause why "Counsel Jeremy Friedman should not be ordered to notify the courts in any other pending litigation where his clients have entered into a similar retainer agreement of this Order and of the provisions of the retainer agreement concerning attorney fee assignment and consequences of compromising statutory attorneys' fees." *See* OSC at 3.

Such an extraordinary order would be both unnecessary and inappropriate, given the right and authority of courts to make their own determination about legal issues before them, including issues related to attorney fees. Further, such a sanction does not appear to have any clear basis in statute or rule, including the Court's inherent power, which requires a finding of bad faith. *Chambers v. Nasco*, 501 U.S. 32, 50 (1991) ("court must . . . exercise caution in invoking its inherent power, and it must comply with the mandates of due process"); *Schmude v. Sheehan*, 420 F.3d 645, 650 (7th Cir. 2005) ("Because these inherent powers are potent, they must be exercised with caution and restraint"). Indeed, since the Court's inherent power extends only to the attorneys and parties before it, that jurisdiction by definition should not cause the Court to exert its power of counsel in other courts. In this case, there has been no evidence of bad faith, let alone such a finding.

Requiring such a notice would be extremely punitive and would cause significant potential disruption to counsel's representation of clients in those few matters where he has a similar agreement in place.[5] It is equally clear that ordering disclosure of this court's orders and would threaten client confidentiality of fee arrangements, and potentially arm defendants in other cases with information that will allow them to create circumstances that would give rise to conflicts between counsel and his clients. This is an unnecessary and unfavorable result for both counsel and his clients, who have other means at their disposal to deal with any fee disputes that may develop.

---

[5]Counsel represents plaintiffs at various stages of the litigations. Some are on appeal, where there is no issue of settlement proceedings and no likely disputes over statutory fees. He currently has very few cases pending at the trial level, and only one that is likely to go into settlement discussions in the near future, in a case where counsel expects there to be no dispute over settlement of statutory fees.

For all the reasons discussed herein, counsel respectfully requests that the court dismiss part 2 of the OSC as well.

## CONCLUSION

For the foregoing reasons, responding attorney respectfully requests that the Court's August 30, 2019, Order to Show Cause be dismissed as to both items.

Respectfully submitted,

Dated: September 16, 2019
LAW OFFICE OF JEREMY L. FRIEDMAN
ROGERS JOSEPH O'DONNELL, a PLC

By: /s/Jeremy L. Friedman
Jeremy L. Friedman
Attorney for plaintiff Lunell Gamble

By: /s/Merri A. Baldwin
Merri A. Baldwin
Counsel for Responding Attorney Jeremy L. Friedman

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed with the Clerk of the Court for the Northern District of California, by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Jeremy L. Friedman
Jeremy L. Friedman