1  [Counsel listed on next page.]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUNELL GAMBLE, and SHEILA KENNEDY, on behalf of themselves as well as a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>KAISER FOUNDATION HEALTH PLAN, INC; KAISER FOUNDATION HOSPITALS, INC.; and THE PERMANENTE MEDICAL GROUP, INC.; all doing business as KAISER PERMANENTE MEDICAL CARE PROGRAM,<br><br>Defendants. | Case No. 17-cv-06621-YGR<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge      Hon. Yvonne Gonzalez Rogers<br>Courtroom:  1 |

JEREMY L. FRIEDMAN (SB# 142659)
LAW OFFICE OF JEREMY L. FRIEDMAN
2801 Sylhowe Road
Oakland, CA 94602
Telephone: (510) 530-9060
Facsimile: (510) 530-9087

Attorney for Plaintiffs and Putative Class

HEATHER A. MORGAN (SB# 177425)
AMANDA BOLLIGER (SB# 250292)
TARA M. DUESTER (SB# 265622)
heathermorgan@gbgllp.com
amandabolliger@gbgllp.com
taraduester@gbgllp.com
GBG LLP
633 West 5th Street, Suite 3330
Los Angeles, CA 90071
Telephone: (213) 358-2810
Facsimile: (213) 358-2820

Attorneys for Defendants
KAISER FOUNDATION HEALTH PLAN, INC.;
KAISER FOUNDATION HOSPITALS; and
THE PERMANENTE MEDICAL GROUP, INC.

Pursuant to the Court's Order Vacating Stay and Setting Case Management Conference (Dkt. 161) ("Order"), Plaintiffs LUNELL GAMBLE ("Gamble") and SHEILA KENNEDY ("Kennedy") (together, "Plaintiffs") and Defendants KAISER FOUNDATION HEALTH PLAN, INC. ("KFHP"); KAISER FOUNDATION HOSPITALS ("KFH"); and THE PERMANENTE MEDICAL GROUP, INC. ("TPMG") (collectively, "Defendants") (together, "the Parties"), by and through their undersigned counsel, submit this Joint Case Management Statement.

**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**

### A. Plaintiffs' Statement

Plaintiffs address status and progress since the case has been stayed, with respect to (1) pleadings, and in particular, the passage of AB 749, codified at Code of Civil Procedure §1002.5, and its possible impact on the order striking the Fifth Claim of the Third Amended Complaint, involving "no re-hire" agreements; (2) plaintiffs' discovery plan for proof of Kaiser's pattern and practice of race discrimination, including facts supporting recent race discrimination multi-party and class litigations against Kaiser; (3) the scheduling of a settlement conference by Magistrate Judge Spero for November 18, 2021, following the State Bar's action on the Court's referral, and the lifting of the stay; and (4) scheduling of a date for plaintiffs' class certification motion.

#### 1. Pleadings

On December 18, 2018, the Court entered an Order on Kaiser's motion to dismiss the Third Amended Complaint, including denial as to "failure to exhaust the disparate impact claim, class-wide claims, claims as to each defendant, Gamble's claims based upon promotion and race-plus-gender, Kennedy's claims as to promotion and age discrimination in promotion; and failure to allege the class claims and disparate impact claims sufficiently." ECF 78, at 2.

In an Order following ruling at the April 22, 2019 Case Management Conference, the Court struck plaintiffs' Fifth Claim, based on the *Noerr-Pennington* doctrine. ECF 95; see ECF 78, at 22-25. In plaintiffs' Fifth Claim, they alleged Kaiser engaged in certain "sham settlement tactics," including insistence on "no rehire" provisions in settlement agreements that essentially barred employees who complained about discrimination from ever working at Kaiser in the

future. The Court held that plaintiffs had not alleged facts with sufficient particularity as required under the doctrine.

Subsequent to the Court's ruling, California passed Assembly Bill 749, Stats 2019 ch 808 § 1 (AB 749), codified at CCP §1002.5, effective January 1, 2020. The law upends Kaiser's practice of including no-rehire clauses in its settlement agreements. It states:

> (a) An agreement to settle an employment dispute shall not contain a provision prohibiting, preventing, or otherwise restricting a settling party that is an aggrieved person from obtaining future employment with the employer against which the aggrieved person has filed a claim, or any parent company, subsidiary, division, affiliate, or contractor of the employer. A provision in an agreement entered into on or after January 1, 2020, that violates this section is void as a matter of law and against public policy.

This law supports plaintiffs' stricken allegations that Kaiser's insistence of "no re-hire" settlement provisions constitutes "sham" litigation tactics not protected by the *Noerr-Pennington* doctrine. Plaintiffs therefore hope to address this change in law and its potential impact on a limited portion of the Court's Order striking the Fifth Claim.

## 2. Pattern and Practice Discrimination

Proof of the merits of plaintiffs' claims and appropriateness for class certification in this case both go to the same questions, involving Kaiser's systemic race discrimination and retaliation, its centralized practices and centralized responsibility to self-analyze statistical patterns and police its own discrimination, and its corporate culture that disenfranchises African American employees from decisions that directly impact their work. Evidence of a pattern and practice of race discrimination by Kaiser will provide underlying proof of plaintiff's claims as well as a basis for class certification.

During the initial Case Management Conference, after referring the parties to Magistrate Judge Hixson for discovery issues, the Court informed counsel of the "pattern and practice" jury instructions which the Court had filed in *Slaight* (Case No. 4:15-cv-01696-YGR, ECF 668). Counsel became familiar with the Court's jury instructions in *Slaight*, and based on statistical data and other information gained in the Hill litigation, drafted a discovery plan designed to investigate and prove this pattern and practice. That plan was fully briefed before Magistrate

Judge Hixson at the time of the stay. See ECF Nos. 119 and 132. Among other issues, plaintiffs' plan includes specific requests for information in connection with (a) complaints made by African American employees; (b) Kaiser's EEO Compliance Efforts, including self-audits and reports to EEOC, Department of Fair Employment and Housing (DFEH) and the Office of Federal Contractor Compliance Programs (OFCCP); (c) Centralized Human Resources and Labor Management Policies and Procedures; and (d) Region-wide labor data and self-analyses.

While this class action has been stayed, several other legal actions have been filed against Kaiser for systemic race discrimination in employment. These actions include a multi-party complaint filed in Alameda County Superior Court, Abdi *et al*. v. Kaiser Foundation Hospitals *et al*., Alameda County Superior Court, Case No. RG-21-086907; and a class action over race wage disparities and denial of promotion schedules, in San Francisco Superior Court, Stewart v. Kaiser Foundation Health Plan *et al*., San Francisco Superior Court, Case No. CGC-21-590966. Putative class members' rights in this case may be impacted by the settlement in *Stewart*. Class certification in *Stewart*, and the evidence of widespread employment discrimination and race wage disparities presented there, demonstrate the falsity of Kaiser's assertion here that plaintiffs will be unable to certify a class action. The facts in those cases, as well as the many others Kaiser has seen and secretly settled, will be subjects of the discovery plan before Judge Hixson.

### 3.     Settlement Conference

The Court has entered an order of reference to Magistrate Judge Spero for settlement purposes. After the Court lifted the stay, Magistrate Judge Spero held a zoom conference with the attorneys. ECF 164. After the conference, the magistrate judge directed the parties to confer within 30 days regarding production of plaintiffs' medical records, and he scheduled a Settlement Conference to take place on November 18, 2021.[1]

Plaintiffs' counsel previously brought up the question of Kaiser's settlement tactic of trying to pit plaintiffs against their counsel, and its claim during settlement negotiations that

---

[1] In its portion of the statement, defendants purport to represent the matters stated to and by Magistrate Judge Spero during the May 12, 2021 phone call. They omit, however, that the magistrate judge heard the defendants out on all of their stated concerns, and he thereafter explained to the parties that the Court had ways to address and resolve these concerns, including appropriate separate negotiations over component parts of damages and fees.

counsel's ethical obligations require agreement to a waiver of statutory fees. Guided by *Panola Land Buying Asso. v. Clark*, 844 F.2d 1506, 1518-20 (11th Cir. 1988) (citation omitted) (Clark, dissenting) and *Moore v. Nat'l Asso. of Sec. Dealers, Inc.*, 762 F.2d 1093, 1104 (1985), counsel suggested that Rule 16 was an appropriate vehicle to address this settlement tactic. The Court directed the filing of a motion under Rule 16 addressing the issue. Plaintiffs' counsel complied, and to rebut Kaiser's opposition and demonstrate its tactic, counsel filed under seal confidential communications with the mediator.

Plaintiffs' Rule 16 motion was denied by the Court, and counsel was required to file responses on the question of whether the terms of his retainer agreement with plaintiffs violated state Rules of Professional Conduct. After briefing, the Court determined that the State Bar should, in the first instance, determine whether counsel's fee agreement was in violation of those rules, and the Court referred the matter to the State Bar. After an investigation, the State Bar determined that no prosecution or discipline was warranted, and it closed the file on the referral.

Plaintiffs' counsel had two goals in bringing up the Rule 16 motion issues. First, counsel asked the Court to issue an order that would prevent Kaiser from engaging in this tactic – with the ultimate hope the Court determines reasonable statutory fees if the parties want to settle plaintiffs' claims but cannot reach an agreement on fees. Second, counsel desired to bring to the Court's attention the claim by Kaiser that counsel's ethical obligations required waiver of statutory fees, rather than have this claim made in a setting shrouded in the secrecy of a mediation.[2]

Plaintiffs do not seek reconsideration of the Court's ruling with respect to either of these goals. Although the Court denied the relief requested in the Rule 16 motion, plaintiffs and their counsel believe that, under the orders of Magistrate Judge Spero, any issues over the tactic will be handled and resolved during the settlement conference. Moreover, with respect to the second goal, the Court's referral to the State Bar alone was precisely responsive to counsel's concerns. The Bar appropriately investigated the matters raised by the referral and the mediator's

---

[2] Not understanding the purpose of the Court's referral to the bar, nor the implications of the Bar's determination, Kaiser repeats this tactic again in its portion of this joint statement, citing to substance of the mediator's correspondence (which was filed under seal only to exemplify Kaiser's tactic) and arguing over the conflict of interest it had hoped to create between plaintiffs and their counsel during settlement negotiations.

correspondence, and the Bar's action confirms that counsel is not in breach of his ethical duties when he insists on good faith negotiations over the amount of statutory fees during settlement negotiations.³

Plaintiffs and their counsel therefore had not intended to request the court revisit the Rule 16 motion at this time, unless the Court directs counsel to brief any of the issues decided by the Court, or the impact of the Bar's determination on the Court's prior orders. Similarly, plaintiffs' counsel would address these issues to the extent that the Court takes them up in connection with the motion now threatened by Kaiser seeking an order restricting the manner in which plaintiffs' counsel engages in settlement.⁴

### 4. Scheduling of Class Certification Motion

Assuming the parties are able to get back on a schedule with Magistrate Judge Hixson, and in light of the settlement conference scheduled for November 2021, plaintiffs suggest that the deadline for filing the class certification motion in this case be set in August, 2022. In the event the Court addresses issues raised by Kaiser that delays discovery into Kaiser's pattern and practice of discrimination, plaintiffs request that the class certification motion deadline be set at approximately 15 months following resolution of any contested motion.⁵

---

³Although lost on defendants, *see supra,* note 2, plaintiffs' counsel is confident that, after the Court referred the matter to the Bar and included the mediator's correspondence, and with the closing of the Bar's file, Kaiser's continued attempted use of a false argument over plaintiffs' counsel's ethical obligations to extract some sort of bargaining concession will be to no avail. Its insinuation below that the Bar lacked the resources to investigate or discipline counsel disrespects the seriousness in which counsel and the State Bar consider Judicial Referrals.

⁴ In response to Kaiser's argument, below, that the amount of reasonable fees should not be for the Court to decide after a settlement, plaintiffs' counsel notes that during the stay in this case, counsel settled a FEHA/Title VII case before Hon. Susan Illston, and the Court determining counsel's reasonable statutory fees in a subsequent motion, filed after the parties tried but failed to settle on the amount of fees. *See Polee v. Central Contra Costa Transit Authority* **Error! Main Document Only.***(CCCTA)*, No. 18-cv-5405-SI-[SK], 2021 U.S. Dist. LEXIS 17753 (N.D. Cal. Jan. 29, 2021).

⁵ Plaintiffs suggest that any issues over the adequacy of class counsel be determined with class certification. Defendants waited until 2:45 p.m. on the day this joint statement was due to provide their position statement, which departed greatly from the initial draft after hours on May 10. This included the argument that "Mr. Friedman likewise should not represent Plaintiffs in this matter." No basis exists for this extraordinary request, and certainly none are presented under Rule 16. Moreover, defendants falsely represent that the magistrate judge thought it "likely" the Court would address adequacy of counsel within 60 days. Defense counsel raised the issue, but the magistrate judge said the Court may decide to take up that issue later, with class certification.

B. **Defendants' Statement**

Local Rule 16-10(d) provides:

> Unless otherwise ordered, no fewer than 7 days before any subsequent case management conference, the parties must file a Joint Case Management Statement, reporting progress or changes since the last statement was filed and making proposals for the remainder of the case development process. Such statements must report the parties' views about whether using some form of ADR would be appropriate.

Here, the Court's Order states: "Counsel shall file an updated joint case management statement no later than May 17, 2021." Accordingly, Defendants provide the below statement pursuant to Local Rule 16-10(d).

1. **Developments Since Initial Case Management Conference**

Plaintiffs have never articulated a tenable unifying theory for this case. Indeed, this Court told Plaintiffs' counsel at the April 2019 initial Case Management Conference that "I don't know how you are going to try this case. And I don't know how you are even going to certify a class given *Dukes vs. Wal-Mart*." Dkt. 124 at 8:25-9:2; *see also* Dkt. 78 at 7, n.3 (characterizing Plaintiffs' theory as "challenging"). It is Defendants' position that *Dukes* and its progeny foreclose Plaintiffs' central theory here—i.e., that Defendants have a common policy or practice of delegating discretionary decision making to local supervisors charged with making highly individualized promotion, termination and other employment personnel decisions. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 355 (2011); *see also Moussouris v. Microsoft Corp.*, No. 18-35791, 2019 WL 7176331, *1 (9th Cir. Dec. 24, 2019) (affirming denial of class certification in promotion and pay discrimination case alleging disparate impact and disparate treatment theories of liability on behalf of a putative class of 8,600 women; as to their disparate impact claim, plaintiffs did not present common questions across this broad alleged class and "failed to identify a common mode of discretion throughout Microsoft because the individual managers had broad discretion" in making promotion and pay decisions). The Parties filed their initial Joint Case Management Conference Statement on April 15, 2019 (Dkt. 91). The Court held an Initial Case Management Conference on April 22, 2019, where it set deadlines for Plaintiffs' to file a Fourth

Amended Complaint, and for discovery, class certification, dispositive motions and other matters covered by Fed. R. Civ. P. 16. (Dkt. 92). At the Initial Case Management Conference, the Court also set a subsequent Case Management Conference to take place on November 15, 2019. *Id.*

On April 23, 2019, the Court issued an Order granting Defendants' motion to dismiss or strike portions of Plaintiffs' Third Amended Federal Class Action Complaint. Defendants do not agree with Plaintiffs' assertion above that Assembly Bill 749, Stats 2019 ch 808 § 1 (AB 749), codified at CCP §1002.5, "supports plaintiffs' stricken allegations that Kaiser's insistence of 'no re-hire' settlement provisions constitutes 'sham' litigation tactics not protected by the *Noerr-Pennington* doctrine." By its terms, CCP § 1002.5 does not apply to settlement agreements predating the January 1, 2020 effective date. Plaintiffs do not – and cannot – allege any violation of CCP § 1002.5 by any of the Defendants. Defendants' position is that there is no basis for the Court to reconsider its prior ruling on Defendants' motion to dismiss/strike the "Settlement Tactics" claim.

Plaintiffs filed their Fourth Amended Federal Class Action Complaint ("4AC") (Dkt. 101) on April 29, 2019. Defendants timely answered the 4AC on May 6, 2019 (Dkt 105).

Also on April 23, 2019, the Court referred this case for discovery to Magistrate Judge Thomas S. Hixson, who set a Discovery Hearing to take place on June 27, 2019 (Dkt. 104). Plaintiffs filed their Discovery Conference Statement on June 4, 2019 (Dkt. 119). Plaintiffs' Discovery Plan targeted a never-defined "Northern California Region" during an eight-year discovery period. Because the Discovery Plan admittedly and purposefully made no distinctions by job, location, department, or management-level, it sought discovery of information regarding tens of thousands of employees. Defendants timely responded to Plaintiffs' Discovery Conference Statement on June 18, 2019 (Dkt. 126). Defendants explained that assuming the "Northern California Region" refers to the geographic classification that Defendants use to conduct their business and personnel practices, more than 117,000 individuals were employed in the Northern California Region during the past eight years, and that the current workforce of this region encompassed approximately 1,600 different jobs, scattered across 400 different work locations and 840 different departments, and included almost 6,000 different managers.

1  Defendants argued that instead of the full-blown merits discovery proposed by Plaintiffs,
2  discovery should proceed in a proportionate manner that is focused on evidence that will inform
3  whether Plaintiffs can certify a class.  Plaintiffs filed a Reply on June 25, 2019 (Dkt. 132).  The
4  Parties also exchanged initial disclosures and engaged in written discovery efforts and related
5  conferral, including Plaintiffs' failure to produce documents/information and Plaintiffs'
6  threatened motion to quash subpoenas for their medical/mental health records.

7       On April 25, 2019, the Court referred this case for settlement to Magistrate Judge Joseph
8  C. Spero, who set a Settlement Conference to take place on August 29, 2019 (Dkt. 113).

9       On May 3, 2019, the Court set a deadline for Plaintiffs' counsel, Jeremy Friedman, to file
10 a motion regarding his fee agreement that he previously had discussed at the Initial Case
11 Management Conference (Dkt. 103).  In setting that deadline, the Court noted (1) statements in
12 Plaintiffs' section of the Case Management Conference Statement discussing Mr. Friedman's
13 intention to file a motion under Federal Rule of Civil Procedure 16 regarding Defendants'
14 settlement negotiation posture, and for an early determination regarding Plaintiffs' counsel's fee
15 agreement, including an assignment of rights with respect to fees (Dkt. No. 91 at 33:28-34:6); and
16 (2) Mr. Friedman's indications at the Initial Case Management Conference that (a) Defendants'
17 insistence in settlement negotiations on a waiver of attorneys' fees would result in his clients
18 being obligated to pay him twice his lodestar directly, under the terms of his fee agreement with
19 them; and (b) he would not want to continue the case if the Court determined that his fee
20 agreement would put him in conflict with his clients (Dkt. 103).

21      The Court ordered Plaintiffs' counsel to file the motion regarding his fee agreement no
22 later than May 21, 2019.  Dkt. 103 at 1:22-23.  On May 21, 2019, the day the motion was due,
23 Plaintiffs filed an unopposed motion to extend that deadline (Dkt. 109), which the Court granted
24 on May 24, 2019 (Dkt. 112).  On May 22, 2019, Plaintiffs filed their Rule 16 Motion for Order
25 Addressing Settlement Posture and Potential Conflict of Interests.  Defendants filed their
26 Opposition to that Motion on June 5, 2019 (Dkt. 120).  Plaintiffs filed their Reply on June 12,
27 2019.

28

1        On July 19, 2019, the Court issued an Order – discussed further below – denying Plaintiff's motion for an order requiring attorneys' fees to be separately negotiated or determined by the Court in connection with a settlement (Dkt. 134 at 2) (the "Rule 16 Order"). The Court ordered that "all proceedings herein, including any pending discovery are STAYED." Accordingly, the discovery conference and settlement conference were taken off calendar. (Dkts. 134 and 148). On August 23, 2019, Plaintiffs filed a "Statement of Compliance with July 19, 2019 Order on Plaintiff's Rule 16 Motion" (Dkt. 137) ("Statement") stating that Plaintiffs "wish to continue in the litigation if possible under a revised retainer agreement that will satisfy the Court's Order concerning the potential conflict during settlement negotiations" (*id*. at 137:6-8). On August 30, 2019, the Court issued Plaintiffs' counsel an Order to Show Case re Referral to State Bar on August 30, 2019 (Dkt. 140) ("OSC") stating that the Court "finds the Statement inadequate to address the concerns raised in the [Rule 16] [O]rder, in particular because Mr. Friedman ignores much of the substance discussed therein." (Dkt. 140). Plaintiffs' counsel responded to the OSC on September 16, 2019 (Dkt. 142).

       On March 2, 2020, the Court held a status conference at Defendants' request and advised the Parties that the matter had been referred to the California State Bar and that the case would remain stayed while awaiting a response from the State Bar. On March 31, 2021, the Court vacated the stay and set a case management conference to take place on May 24, 2021. Ex. F (Gamble Dkt. 161). In so ordering, the Court stated the following: "The Court having been notified that the state bar file with respect to Mr. Friedman has been closed, the stay in this matter is VACATED and a case management conference is SET for Monday, May 24, 2021, at 2:00 p.m. Counsel shall file an updated joint case management statement no later than May 17, 2021." *Id*. The Court Order did not state, and Plaintiffs do not provide any evidentiary support, for the following assertions in their portion of this Case Management Statements:

- "After an investigation, the State Bar determined that no prosecution or discipline was warranted, and it closed the file on the Court's referral."
- "The Bar appropriately investigated the matters raised by the referral and the mediator's correspondence, and the Bar's action confirms that counsel is not in

breach of his ethical duties when he insists on good faith negotiations over the amount of statutory fees during settlement negotiations."

Contrary to the above quoted representations, Defendants understood that the State Bar did not articulate any findings or decision when it closed its file. That is what Plaintiffs' counsel represented to Judge Spero at the pre-settlement conference status call discussed further below. *See also California State Bar: It Is Not Effectively Managing Its System for Investigating and Disciplining Attorneys Who Abuse the Public Trust*, Report No. 2020-030, Auditor of the State of California (April 29, 2021), available at http://auditor.ca.gov/reports/2020-030/sections.html, last visited on May 17, 2021 ("Further, the results of a recent audit of the California State Bar processes our analysis indicates that both higher- and lower-priority cases are taking significantly longer to resolve… The State Bar is also disciplining attorneys at a dramatically lower rate for reasons it cannot adequately explain.").

On April 29, 2021, Mr. Friedman sent an email informing Magistrate Judge Spero's clerk that the Court had lifted the stay. Magistrate Judge Spero's clerk set a pre-settlement scheduling conference to take place on May 11, 2021, which Defendants' counsel and Mr. Friedman attended.

In advance of the pre-settlement conference status call with Magistrate Judge Spero, Defendants' counsel advised Mr. Friedman that, "Before our clients can determine their position on whether they believe a settlement conference should be scheduled at this time, we will need at minimum to understand what exactly it is that you propose we attempt to settle at such a settlement conference." *Id.* ("Do you contend that if Defendants make a global settlement offer that requires a waiver of your attorneys' fees, then that will create a conflict of interest between you and your clients? Are you willing to attempt to negotiate a global settlement of claims that would include a settlement or waiver of your attorneys' fees? If so, are you willing to provide a global settlement demand in advance of any such settlement conference?"). Defendants' counsel asked Mr. Friedman to provide his/Plaintiffs' position on these points by the close of business on Thursday May 6th so that Defendants would have sufficient time to factor those responses into Defendants' positions for this Joint Case Management Conference Statement. On April 30, 2021,

Mr. Friedman acknowledged, but did not answer and still has not answered, any of Defendants' aforementioned questions. *Id.* In light of the above, on May 3, 2021, Defendants' counsel informed Mr. Friedman that they would inform this Court that he refused to answer the questions posed and that Defendants intended to discuss with this Court the impact that they believe Mr. Friedman's settlement position has on this litigation. *Id.* ("It is Defendants' position that all of these points are ripe for discussion with Judge Gonzalez Rogers as our Article III judge on the case, and that the outcome of that discussion with Judge Gonzalez Rogers will inform any other activities in this litigation, including the Parties' attendance at any settlement conference.").

During the pre-settlement conference status call, Defendants' counsel advised Magistrate Judge Spero that Defendants' position is as follows:

1. Mr. Friedman cannot satisfy the adequacy requirement for class certification, and Defendants intend to seek an order from the Court ruling on this issue.

2. Whether or not Mr. Friedman is found inadequate, Defendants will not agree to a settlement unless it contemplates a global resolution, including as to any attorneys' fees and costs. Defendants repeatedly have asked Mr. Friedman to answer whether he is willing to negotiate a settlement that includes a waiver of his attorneys' fees and costs, and Mr. Friedman has yet to answer the question. Mr. Friedman's refusal to answer this question causes Defendants to conclude that Mr. Friedman's settlement position has not changed and that a settlement conference will not be fruitful.

3. Even assuming a settlement conference could be worthwhile at this time, Defendants first would still want to take both Plaintiffs' depositions. In order to properly examine Plaintiffs, Defendants need discovery that Plaintiffs have refused to provide, including Plaintiffs' medical and mental health records.

Magistrate Judge Spero issued the orders as described by Plaintiffs above. In setting the settlement conference to take place on November 18, 2021, the Judge discussed the following: (1) that the timing of the settlement conference anticipates that this Court likely would set briefing on the adequacy of counsel issue and that such briefing likely would resolve that issue within the

next 60 days; (2) the Parties would meet and confer and resolve the dispute about Plaintiffs' medical and mental records within the next 30 days, such that Plaintiffs could be deposed in October 2021.

## 2. Defendants' Position on ADR

Defendants and their counsel of record routinely participate in successful attempts to resolve informally, and through formal mediation or settlement conferences, both individual and putative class claims. Plaintiffs' statement that there has been a "class certification" and that "evidence of widespread employment discrimination and race wage disparities [was] presented" in the *Stewart* case, is not accurate. In fact, the Defendants and plaintiffs' counsel in that threatened pre-litigation matter negotiated for more than two years and ultimately the parties agreed to proceed with the filing of a civil lawsuit complaint and motion preliminary approval of a settlement class – for settlement purposes, only. The court in *Stewart* has not ruled on the motion. At best, the recent *Stewart* settlement illustrates Defendants' practice of settling lawsuits where, despite having good defenses to the alleged claims and to class certification, Defendants can achieve a reasonable global settlement and avoid the costs and uncertainties of litigation.[6] Defendants (including their counsel of record) have never negotiated a settlement other than on a global basis – i.e., one that includes a waiver of attorneys' fees. The *Polee v. Central Contra Costa Transit Authority* (CCCTA), No. 18-cv-5405-SI-[SK], 2021 U.S. Dist. LEXIS 17753 (N.D. Cal. Jan. 29, 2021), case cited by Plaintiffs in their portion of this Statement did not involve any of the Defendants in this case, or their counsel of record and therefore is irrelevant as to what Defendants are willing to negotiate for any settlement of this matter. Insofar as Mr. Friedman's position continues to refuse to negotiate a global settlement, Defendants' position is that any attempt at ADR will be futile. Based on their relevant past experience with Mr. Friedman, Defendants do not believe that any such settlement conference will be a productive use of the Settlement Judge's (or Defendants') time and resources. *See* October 18, 2017 letter from mediator Hon. John True (ret.) to Mr. Friedman, filed under seal and attached as Exhibit A to Mr.

---

[6] While Defendants do not believe that *Stewart* is a related case, Defendants had planned to file a notice of related case with this Court and will do so before the Case Management Conference.

Friedman's Supplemental Declaration ISO Plaintiffs' Rule 16 Motion (Dkt. 123-1) ("True Letter"); *see also* Defendants' Opposition to Plaintiffs' Rule 16 Motion, Section II.C (Dkt. 120).

### 3. Future Case Development Process

Mr. Friedman's conduct in litigating putative class actions against Defendants, including his submissions to the Court in connection with the Rule 16 Motion and his communications thereafter, his historic refusal to negotiate any global settlement inclusive of his fees (a position which Defendants understand has not changed), and his prior conduct litigating the *Hill* case, lead Defendants to conclude that he is not adequate to represent any putative class. Given Mr. Friedman's historic requirement that "settlement of [his] attorneys' fees [must] be negotiated separately from [Plaintiffs'] damages, or else [Plaintiffs] forfeit the ability to pay fees on a contingency basis, instead owing [Mr. Friedman] double his full hourly rate" (Dkt. 134 at 9:20-22), Defendants submit that Mr. Friedman likewise should not represent Plaintiffs in this matter.

Defendants' concerns echo those expressed by the Court in this lawsuit, as well as those stated by the private mediator whom the Parties used in the prior, failed attempt to resolve Ms. Gamble's individual claims. *See, e.g.*, Rule 16 Order, stating:

- "The Court further ORDERS that this action is STAYED and that plaintiffs shall file a statement regarding how they will proceed in light of the Court's determination that putative class counsel would not be adequate due to the inherent conflict of interest created by plaintiff's counsel's retainer agreement." Dtk. 134 at 2:19-22.
- "On its face, the retainer agreement's provisions create a conflict of interest between counsel and plaintiffs, as well as the putative class, which would preclude a finding that counsel is adequate under Rule 23." *Id.* at 7:7-19.
- "The conflict here crystallized in counsel's settlement communications, wherein counsel stated plaintiff Gamble was willing to settle her claim for damages for $190,000, but that any settlement would require defendant to pay counsel's fees at the "compromise" rate of 1.5 times his lodestar (or $240,000) as well. (Dkt. No. 111-1 at 2.)." *Id.* at n.4.

- "In addition, as expressed previously, the Court is also concerned that counsel is not adequate due to: (1) a history of requesting extensions based upon the stated insufficiency of his resources and overscheduling; and (2) lack of compliance with the local rules. (See, e.g., Dkt. Nos. 26, 49, 83, 109.)." *Id.* at n.5. Responding to Plaintiffs' footnote 5, it bears noting that Plaintiffs' counsel's delays continued even in the preparation of this Statement. Defendants' counsel provided Mr. Friedman with their portion of this Statement on Monday, May 10, 2021. Defendants' counsel requested that he provide Plaintiffs' portion by close of business on Thursday, May 13, 2021, giving him three full days to provide Plaintiffs' positions. Mr. Friedman instead waited until after 2pm on Friday, May 14, 2021, to provide Plaintiffs' portion of this Statement. Defendants nonetheless were able to provide their edits to the Statement back to Mr. Friedman within one business day of receiving Plaintiffs' portion.

*See also* this Court's OSC stating:

- "[T]he July 19 Order also outlined the conflict created by Mr. Friedman's retainer agreement. Thereupon, the Court stayed the instant action and directed Mr. Friedman to submit a status statement to address his plan to proceed with this action on behalf of the named plaintiffs and of the putative class. (Id.) The Court is in receipt of Mr. Friedman's statement filed in response to Court's July 19 Order. (Dkt. No. 137 ["Statement"].) The Court finds the Statement inadequate to address the concerns raised in the order, in particular because Mr. Friedman ignores much of the substance discussed therein." Dkt. 140 at 1:18-25.

*See also* True Letter, filed under seal; *Hill v. Kaiser Foundation Health Plan*, Civ. 3:10-cv-2833-LB, 2015 WL 5138561, *12 (N.D. Cal.) (addressing the "duplicative," "excessive" and "unnecessary" attorneys' fees that Mr. Friedman attempted to recover from his *Hill* clients based on substantially similar retainer agreements to those apparently used in this case, after entering into a global settlement of Plaintiffs' individual claims that included a fee waiver, and then unsuccessfully suing Defendants and his clients).

For all of these reasons, it is Defendants' position that Mr. Friedman should not continue to represent Plaintiffs in this case and cannot satisfy the adequacy requirement for class certification pursuant to Federal Rule of Civil Procedure ("Rule") 23(a)(4); *see* Fed. R. Civ. P. 23(g)(1)(A) ("In appointing class counsel, the court must consider certain factors, including counsel's work in investigating the claims, experience in handling similar claims and class action, knowledge of the applicable law, and resources counsel will commit to representing the class."); Fed. R. Civ. P. 23(g)(1)(B), (C) (the court may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class"). Defendants respectfully intend to seek an order from the Court so finding, and request that the Court order any briefing that it deems appropriate on this subject before any further discovery or settlement conferences take place in this case. Defendants also seek the Court's assistance in helping to ascertain whether proceeding to a settlement conference is a productive use of time and resources for the Parties and Magistrate Judge Spero. Knowing the answers to these important threshold questions will allow Defendants to construct a proposed case management timeline. At this time, Defendants believe that any motion for class certification should be filed by Plaintiffs no later than June 1, 2022.

DATED: May 17, 2021

LAW OFFICE OF JEREMY L. FRIEDMAN

BY: /s/Jeremy L. Friedman
　　　　JEREMY L. FRIEDMAN

Attorney for Plaintiffs and Putative Class

DATED: May 17, 2021

GBG LLP

BY:　　/s/ Amanda Bolliger
　　　　AMANDA BOLLIGER

Attorneys for Defendants
KAISER FOUNDATION HEALTH PLAN, INC.; KAISER FOUNDATION HOSPITALS; and THE PERMANENTE MEDICAL GROUP, INC.

//